**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>TWENTIETH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>LEE</u>  COUNTY, FLORIDA

<u>Swamp Cat Holdings, LLC</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>American Zurich Insurance Company</u>
Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☒  $50,001- $75,000
☐  $75,001 - $100,000
☐  over $100,000.00

### III.   TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

> **EXHIBIT**
> **Composite 1**

> **EXHIBIT**
> **1-A**

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☒ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.  REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.  NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>1</u>

**VI.  IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.  HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.
    <u>0</u>

**VIII.  IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.  DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Carlos L Santi</u>      Fla. Bar # <u>70529</u>
    Attorney or party          (Bar # if attorney)

<u>Carlos L Santi</u>         <u>04/03/2023</u>
 (type or print name)        Date



**null / ALL**
**Transmittal Number: 26779404**
**Date Processed: 04/20/2023**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Arnold D'Angelo<br>Zurich North America<br>1299 Zurich Way<br>Schaumburg, IL 60196-1056 |
| **Electronic copy provided to:** | Hank Russell |

| | |
|---|---|
| **Entity:** | American Zurich Insurance Company<br>Entity ID Number  2746773 |
| **Entity Served:** | American Zurich Insurance Company |
| **Title of Action:** | Swamp Cat Holdings LLC vs. American Zurich Insurance Company |
| **Matter Name/ID:** | Swamp Cat Holdings LLC vs. American Zurich Insurance Company (13955215) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Lee County Circuit Court, FL |
| **Case/Reference No:** | 23-CA-005362 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 04/20/2023 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL Chief Financial Officer on 4/19/2023 |
| **How Served:** | Electronic SOP |
| Sender Information: | Property & Casualty Law Group<br>305-961-1038 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**EXHIBIT**
**1-B**

*23-000170186*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

SWAMP CAT HOLDINGS LLC

PLAINTIFF(S)

VS.

AMERICAN ZURICH INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

**CASE #:** **23-CA-005362**
**COURT:** **20TH JUDICIAL CIRCUIT**
**COUNTY:** **LEE**
**DFS-SOP #:** 23-000170186

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, April 19, 2023 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, April 20, 2023 to the designated agent for the named entity as shown below.

AMERICAN ZURICH INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

CARLOS SANTI
PROPERTY & CASUALTY LAW GROUP
2307 DOUGLAS ROAD
SUITE 302
MIAMI, FL 33145

DR1

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.: 23-CA-005362

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

**American Zurich Insurance Company**
**c/o The Florida Chief Financial Officer as RA**
**200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiff's Attorney, to wit:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service, and to file the original of the defenses with the clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON 04/18/2023

Kevin C. Karnes
As Clerk of Said Court

Court Seal

By: _____
As Deputy Clerk

## IMPORTANT

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

Plaintiff's attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

DATED ON

As Clerk of said Court

By:_____
As Deputy Clerk

(Court Seal)

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Swamp Cat Holdings, LLC, (the "Insured"), hereby sues Defendant, American Zurich Insurance Company (the "Insurance Company"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.  This is an action for damages that is more than $30,000.00 exclusive of interest, costs and attorney's fees.

2.  The Insured is an individual who at all times material hereto has resided in LEE COUNTY, Florida.

3.  The Insurance Company is qualified to do business in Florida and has, at all times material hereto, been conducting business in LEE COUNTY, Florida.

4.  Venue is proper in LEE COUNTY, Florida because the contract, which forms the subject matter of this lawsuit, was executed in LEE COUNTY County, Florida.

5.  All conditions precedent to the filing of this lawsuit have occurred, have been

EXHIBIT
1-C

waived or have been performed.

## GENERAL ALLEGATIONS

6.   At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of ER74033179 (the "Policy"). The Policy is attached hereto as Exhibit A and incorporated into the Complaint by reference herein. The Insured reserves the right to file a complete copy of the policy once secured through discovery.

7.   Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property pursuant to the terms of the policy. The damaged property is located at 1943 Fowler Street, Fort Myers, Florida 33901 (the "Property").

8.   On or about 09/28/2022, while the Policy was in full force and effect, the Property sustained a covered loss as a result of Hurricane Ian (the "Loss").

9.   The Insurance Company assigned claim number 5630086260 to the Loss.

10. Subsequently, the Insurance Company informed the Insured that although coverage existed, the costs to repair the damaged property did not exceed $18,484.59. See Exhibit B. After diligent inspection of the Loss, it was obvious that the Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy but which the Insurance Company failed to indemnify for.

11. As a result of the foregoing, the Insurance Company has breached the Policy.

12. The Insured has suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

13. The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

The Insured reincorporates paragraphs 1 through 13 as if fully set forth herein.

14. It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

15. The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing her obligations under the Policy.

16. The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

17. Furthermore, at all times material hereto, the Insured has satisfied all post-loss obligations to the best of her ability in accordance with the Policy.

18. In contrast, the Insurance Company has failed to: (i) acknowledge coverage for a portion of the Loss; and/or (ii) pay Insured a sufficient amount for the loss. As a result of the foregoing, the Insurance Company has breached the Policy.

19. As a direct and proximate result of the Insurance Company's breach of the policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court, enter judgment against the Insurance Company for damages, plus pre-judgment interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## JURY TRIAL DEMAND

The Insured hereby demands a trial by jury on all issues so triable.

Dated April 3, 2023

Respectfully submitted,

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

# BUILDERS RISK COVERAGE DECLARATIONS

The Declarations, Supplemental Declarations, Common Policy Conditions, Commercial Inland Marine Conditions, Coverage Form(s) And Endorsement(s), if any, issued to and forming a part thereof, complete the Commercial Insurance Policy numbered as follows:

**American Zurich Insurance Company**
**A Stock Company**
Administrative Office: **1299 Zurich Way**
**Schaumburg, IL 60196  Phone: 800-382-2150**

**THIS IS A COINSURANCE CONTRACT**

Please read your policy.

[X] **New Policy**   **ER74033179**
[ ] **Renewal of**
[ ] **Rewrite of**

In return for the payment of the premium, and subject to all terms of this policy, we agree with you to provide the insurance as stated in this policy.

1. **Named Insured and Mailing Address:**

   Swamp Cat Holdings LLC
   1943 Fowler St
   Fort Myers, FL 33901

2. **Producer Information:**

   A  Name: US ASSURE INSURANCE SERVICES OF FLORIDA, INC.
       P.O. BOX 10197
       JACKSONVILLE, FL 32247-0197
   B  Telephone #
   C  Fax #
   D  Zurich Producer # A0209259
   E  Field Office Name
   F  Field Office Code

3. **Policy Period – From:** 07/20/2022  **To:** 01/20/2023
   12:01 a.m. at your mailing address above.

4. **Form of Business:** [ ] Individual  [ ] Partnership  [ ] Corporation  [ ] Joint Venture  [X] Other LLC

5. **Limits of Insurance (*either* One-Shot *or* Reporting Form *as indicated below*)**

[X] SUPPLEMENTAL DECLARATIONS
(If this box is checked, Supplemental Declarations is attached to and forms a part of this policy)

| | |
|---|---|
| [ ] **Reporting Form (continuous policy)**<br>[ ] **Annual Rate**   [ ] **Monthly Rate (HBIS – 4)** | [X] **One-Shot (non-reporting form/single structure policy)**<br>[ ] **1-4 Family Dwelling**   [X] **Commercial Structure**<br>Property Location |
| | 1943 Fowler St<br>Fort Myers, FL 33901 |

| | | |
|---|---|---|
| A) Any one building or structure | $ | |
| B) All covered property at all locations | $ | |
| C) Rate | Per Report | |
| D) Premium | Per Report | |
| E) Total Taxes and Surcharges<br>(per attached endorsement – N/A in NY) | Per Report | |
| F) **Total Fully Earned Policy Premium** | Per Report | |

**New Construction**
A)  Any one building or structure                         $
B)  All covered property at all locations          $
    (same as A unless otherwise noted)

**Remodeling**
D)  Renovations and improvements          $          400,000
E)  Existing buildings or structures             $          775,000

F)  Rate                                                           $              0.499
G)  Premium                                                   $          5,863.00
H)  Total Taxes and Surcharges                 $              117.26
    (per attached endorsement)

I)   **Total Fully Earned Policy Premium**  $          5,980.26
     (minimum premium applicable)

6. **Deductible:** [ ] $500  [ ] $1,000  [ ] $2,500  [ ] $5,000  [X] Other $1,500

7. **Forms Applicable To This Coverage Part:**
   **SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

Countersigned: _____  By: _____
                              Date                                              Authorized Representative


EXHIBIT A

U-170001-C (04-10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| ER74033179 | From 07/20/2022 to 01/20/2023 | American Zurich Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Swamp Cat Holdings LLC<br>1943 Fowler St<br>Fort Myers, FL 33901 | US ASSURE INSURANCE SERVICES OF FLORIDA, INC.<br>P.O. BOX 10197<br>JACKSONVILLE, FL 32247-0197 |

**COVERAGE PARTS AFFECTED**

Builders Risk Coverage

**CHANGES**

2022 FIGA Regular Assessment: 0.7%   $41.04
2022-2023 FIGA Regular Asmt: 1.3%   $76.22

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85                                                                    Page 1  of  1



## BUILDERS RISK COVERAGE SUPPLEMENTAL DECLARATIONS

**Policy Number:** ER74033179
**Policy Type:** ☐ Reporting Form (continuous policy) OR ☒ One Shot (non-reporting form/single structure policy)

| ADDITIONAL COVERAGES (COVERAGE FORM) | | LIMIT OF INSURANCE |
|---|---|---|
| a. | Collapse | Included |
| b. | Scaffolding, Construction Forms And Temporary Structures | $ 50,000 |
| | Re-erection Of Scaffolding | $ 25,000 |
| c. | Debris Removal | $ 50,000 |
| d. | Back-Up Or Overflow Of Sewers, Drains Or Sumps | $ 25,000 |
| e. | Fire Department Service Charge | $ 25,000 |
| f. | Valuable Papers And Records | $ 50,000 |
| g. | Pollutant Clean-Up And Removal | $ 25,000 |
| h. | Ordinance Or Law – Direct Damage | |
| | Loss To The Undamaged Portion Of The Building | Not Covered |
| | Demolition Cost | $ Not Covered |
| | Increased Cost Of Construction | $ Not Covered |
| | Combined Aggregate For Demolition Cost And Increased Cost Of Construction | $ Not Covered |
| i. | Preservation Of Property | Included |
| j. | Rewards | $ 25,000 |
| k. | Property At A Temporary Storage Location | $ 58,750 |
| l. | Property In Transit | $ 58,750 |
| m. | Claim Preparation Expense | $ 10,000 |
| n. | Contract Penalties | $ 25,000 |

**OPTIONAL ADDITIONAL COVERAGES (ENDORSEMENTS)**

☐ **Business Income (HBIS-95)**                                    $
  Anticipated Project Completion Date
  Monthly Limit Of Indemnity                                       (fraction)
  Deductible Period                                                days
  Civil Authority

☐ **Business Income And Extra Expense (HBIS-82)**                   $

  Anticipated Project Completion Date
  Monthly Limit Of Indemnity                                       (fraction)
  Deductible Period                                                days
  Business Income
  Extra Expense
  Civil Authority

☐ **Development Or Subdivision Fences, Walls And Signs (HBIS-58)**   $
☐ **Expediting Expense (HBIS-93)**                                  $
☐ **Extra Expense (HBIS-92)**                                       $
☐ **Marine Model Home Contents Coverage (☐ HBIS-52 – OR -- ☐ HBIS-77)**   $
☐ **Soft Costs Coverage (HBIS-88)**                                 $

  Anticipated Project Completion Date
  Deductible Period                                                days
  Expense To Mitigate Loss
  Civil Authority

☐ **Builders Risk Green Building (HBIS-96)**

  Limit Of Liability                                               $
  "LEED® Building Rating"



EXHIBIT A

HBIS-91 (01 20)

**Policy Number** ER74033179

## SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured: Swamp Cat Holdings LLC

Effective Date: 07/20/2022
12:01 A.M., Standard Time

Agent Name: US ASSURE INSURANCE SERVICES OF FLORIDA, INC.     Agent No.: A0209259

FM170001(04/10), IL1201(11/85), HBIS-91(01/20), U-GU-619-A CW(10/02), U-GU-319-F(01/09), 40471(01/20), HBIS-37(04/09), HBIS-79(04/09), HBIS-43(01/20), HBIS-67(01/20), HBIS-65(04/09), HBIS-83(06/17), HBIS-84(04/09), HBIS-30(06/17), U-GU-630-E CW(01/20), U-GU-767-B CW(01/15), IL0003(09/08), CM0001(09/04), IL0175(09/07), CM0116(05/22), IL0017(11/98), IL0255(03/16), 1001NR(01/20), U-GU-1191-A CW(03/15)

U-GU-619-A CW (10/02)

EXHIBIT A



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

[                        ]        [                        ]

President                              Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

EXHIBIT A

# Builders Risk Coverage Form



Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Words and phrases that appear in quotation marks have special meaning.  Refer to Section **F. DEFINITIONS**.

Coverage provided by Coverage Form is also subject to all Conditions in the Common Policy Conditions and Commercial Inland Marine Conditions forms.

## A. COVERAGE

We will pay for direct physical loss or damage to Covered Property from a Covered Cause of Loss described in this Coverage Form.

1. **Covered Property**, as used in the Coverage Form, means:

   Property which has been installed or is to be installed in any "commercial structure" or any one to four family dwelling, private garage or other structure that will be used to service the "commercial structure" or one to four family dwelling at the location which you have reported to us. This includes:

   **a.** Your property;

   **b.** Property of others for which you are legally responsible;

   **c.** Paving, curbing, fences and outdoor fixtures;

   **d.** Trees, shrubs, plants, grass, lawns and landscaping materials installed by you or on your behalf;

   **e.** Completed single family dwelling which is being used as a model home when reported to us as such on monthly reports with an amount shown; and

   **f.** Foundations of buildings and foundations of structures in the course of construction.

2. **Property Not Covered**

   Covered Property does not include:

   **a.** Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

   **b.** Plans, blueprints, designs or specifications, except as provided in paragraph **A.4. Additional Coverage** of this Coverage Form;

   **c.** Land and water;

   **d.** "Existing inventory", unless specifically endorsed;

   **e.** Contractors' tools, equipment, machinery and property of a similar nature not designated to be a permanent part of the location which you have reported to us; and

   **f.** Outdoor trees, shrubs, plants, grass, lawns and landscaping materials that existed prior to the policy's effective date at a location which you have reported to us.

EXHIBIT A



3. **Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

4. **Additional Coverages**

a. **Collapse**

We will pay for direct physical loss or damage to Covered Property, caused by "collapse" of all or part of a building or structure insured under this Coverage Form, if the "collapse" is caused by one or more of the following:

**(1)** Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riots; civil commotion; vandalism; breakage of glass; falling objects; weight of snow, ice or sleet;

**(2)** "Water damage", but only if the causes of loss are otherwise covered in this Coverage Form;

**(3)** Hidden decay;

**(4)** Hidden insect or vermin damage;

**(5)** Weight of people or personal property;

**(6)** Weight of rain that collects on a roof; or

**(7)** Use of defective materials or methods in construction, remodeling or renovation if the "collapse" occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in the Coverage Form.

b. **Scaffolding, Construction Forms And Temporary Structures**

**(1)** We will pay for direct physical loss or damage caused by or resulting from a Covered Cause of Loss to scaffolding, construction forms and temporary structures, including fully enclosed office and tool trailers, but only while they are at a construction site you have reported to us. The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Scaffolding, Construction Forms And Temporary Structures.

**(2)** We will also pay for the cost of re-erection of the scaffold if the loss or damage of the scaffolding is caused by or results from a Covered Cause of Loss. The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Re-erection Of Scaffolding.

No deductible applies to this Additional Coverage.

c. **Debris Removal**

We will pay your expenses to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss under this Coverage Form. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage. If the sum of the loss or damage and debris removal expenses exceeds the Limit of Insurance applicable to the property, we will pay an additional amount of debris removal expenses you incur in excess of the Limit of Insurance applicable to the property up to, but not exceeding the Limit of Insurance shown in the Supplemental Declarations for Debris Removal.

This Additional Coverage does not apply to costs to:

**(1)** Extract "pollutants" from land or water; or



**(2)** Remove, restore or replace polluted land or water.

No deductible applies to this Additional Coverage.

**d. Back-Up Or Overflow Of Sewers, Drains Or Sumps**

We will pay for loss or damage to Covered Property caused by water that backs up or overflows from a sewer, drain or sump from within the reported location.

The most we will pay for all loss or damage caused by or resulting by back-up or overflow of sewers, drains or sumps is the Limit of Insurance, for any one occurrence, shown in the Supplemental Declarations for Back-Up Or Overflow Of Sewers, Drains Or Sumps.

No deductible applies to this Additional Coverage.

**e. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges which are:

**(1)** Assumed by contract or agreement prior to loss or damage; or

**(2)** Required by local ordinance or law.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Fire Department Service Charge.

No deductible applies to this Additional Coverage.

**f. Valuable Papers And Records**

We will pay for direct physical loss or damage to "valuable papers and records" caused by or resulting from a Covered Cause of Loss.

When there is a duplicate, we will pay for the blank materials for reproducing the records and labor to transcribe or copy the records.  When there is no duplicate, we will pay the costs to research, replace, restore or reproduce the lost information on lost or damaged "valuable papers and records".

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Valuable Papers And Records.

No deductible applies to this Additional Coverage.

**g. Pollutant Clean-Up And Removal**

We will pay your expense to extract "pollutants" from land or water at locations reported to us if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

The most we will pay for this Additional Coverage is the Limit of Insurance shown on the Supplemental Declarations for Pollutant Clean-Up And Removal  during each separate 12 month period from the effective date of the policy.



4017 (01-20)
Page 13 of 16

No deductible applies to this Additional Coverage.

**h.  Ordinance Or Law – Direct Damage**

**(1)** Coverage For Loss To Undamaged Portion Of The Building Or Structure

**(a)** If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for loss or damage to the undamaged portion of the property as a consequence of enforcement of any ordinance or law that:

**(i)** Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

**(ii)** Regulates the construction or repair of property, or establishes zoning or land use requirements at the construction site; and

**(iii)** Is in force at the time of loss or damage.

**(b)** Coverage for loss or damage to the undamaged portion of the structure is included within the applicable Limit of Insurance for that location.  This is not additional insurance.

**(2)** Demolition Cost Coverage

**(a)** If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay the cost to demolish and clear the construction site of undamaged parts of the property, as a consequence of enforcement of building, zoning or land use ordinance or law.

**(b)** The most we will pay for Demolition Cost Coverage is the amount of loss or damage or the Limit of Insurance shown in the Supplemental Declarations for Demolition Cost, whichever is less.

**(3)** Increased Cost Of Construction Coverage

**(a)** If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for the increased cost necessary to repair, rebuild or reconstruct the damaged portions of that Covered Property when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law. If the Covered Property is repaired or rebuilt, it must be intended for the same occupancy as the property prior to the loss or damage, unless otherwise required by zoning land use ordinance or law.

**(b)** If the ordinance or law requires relocation to another site, we will pay the increased cost of construction at the new site as set forth below in paragraph **(c)** below.

**(c)** The most we will pay for Increased Cost of Construction Coverage is the amount of loss or damage or the Limit of Insurance shown in the Supplemental Declarations for Increased Cost Of Construction, whichever is less.

**(d)** We will not pay under this coverage for costs associated with the enforcement of any ordinance or law that was in effect prior to the start of the construction at the location you have reported to us.

**(4)** The most we will pay in total for Demolition Cost Coverage and Increased Cost of Construction Coverage for loss or damage from any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Combined Aggregate For Demolition Cost And Increased Cost Of Construction.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(5)** We will not pay under this Additional Coverage for costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**(6)** We will not pay under this Additional Coverage for costs associated with the enforcement of any ordinance or law for existing buildings or structures.

**i.** **Preservation Of Property**

If it is necessary to move Covered Property from the location reported to us or described on the Declarations, to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

This Additional Coverage is part of, and not in addition to, the Limit of Insurance applicable to the Covered Property.

**j.** **Rewards**

At our option, we may reimburse you for rewards you pay, other than to you, your partners or officers, for information which leads to the conviction of any one or more persons responsible for loss or damage covered under this Coverage Form.    Payment and the amount of any reimbursement will be at our sole discretion.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Rewards.

**k.** **Property At A Temporary Storage Location**

We will pay for direct physical loss or damage caused by a Covered Cause of Loss to Covered Property while temporarily in storage at a location other than a location which you have reported to us.

We will not pay under this Additional Coverage for property in storage if the property has not been specifically allocated to or otherwise identified with a covered building or structure.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Property At A Temporary Storage Location.

**l.** **Property In Transit**

We will pay for direct physical loss or damage caused by a Covered Cause of Loss to Covered Property while in transit.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Property In Transit.

**m.** **Claim Preparation Expense**

We will reimburse your actual costs for reasonable and necessary claim preparation expenses, as requested by us for determining the amount of loss or damage, prior to finalizing a claim adjustment, as a result of a Covered Cause of Loss.

**(1)** Claim preparation expense means the expense incurred by you for:



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **(a)** Your employees to produce or certify any particulars or details contained within your books or documents, or such other proofs, information or evidence required by us;

    **(b)** Taking inventory, conducting independent appraisals, or gathering and preparing other data to substantiate the amount of loss or damage; and

    **(c)** Services provided by accountants, auditors, contractors, architects and engineers or other professionals solely for the purpose of determining the amount of loss or damage.

**(2)** Claim preparation expense does not mean the expense incurred for:

    **(a)** Negotiating or presenting any claim that we have disputed or denied;

    **(b)** Attorneys, public adjusters, loss appraisers or loss consultants; or

    **(c)** Examinations under oath, even if requested by us.

This Additional Coverage does not apply until a claim for covered loss or damage to Covered Property has been submitted to and accepted by us. In the event that the amount of covered loss or damage does not exceed the applicable Deductible, no coverage will apply under this Additional Coverage.

The most we will pay for this Additional Coverage in any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Claim Preparation Expense.

No deductible applies to this Additional Coverage.

**n. Contract Penalties**

If the first Named Insured is a general contractor, we will pay contractual penalties the first Named Insured is legally liable to pay under the provisions of a written construction contract signed prior to the start of construction for late or non-completion of construction due to direct physical loss or damage to Covered Property from a Covered Cause of Loss at the location which you have reported to us.

The most we will pay for this Additional Coverage in any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Contract Penalties.

No deductible applies to this Additional Coverage.

Paragraph **2.e.** of Section **B. EXCLUSIONS** does not apply to this Additional Coverage.

## B. EXCLUSIONS

**1.** We will not pay for loss or damage caused directly or indirectly by or resulting from any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**a. Governmental Action**

Seizure or destruction of property by order of any governmental authority. But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if that fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But if nuclear reaction or radiation contamination results in fire, we will pay for the loss or damage caused by that fire.

**c. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d. Earth Movement**

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(2)** Volcanic Action

Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion does not apply to Covered Property while in transit.

**e. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not;

**(2)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(3)** Mudslide or mudflow;

**(4)** Water that backs up or overflows from a sewer, drain or sump, except as provided in the **Back-Up Or Overflow Of Sewers, Drains Or Sumps** Additional Coverage;

**EXHIBIT A**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(5)** Water under the ground surface pressing on, or flowing or seeping through Covered Property;

**(6)** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing unless you:

**(a)** Do your best to maintain heat in the building or structure; or

**(b)** Drain the equipment and shut off the supply if the heat is not maintained.

But if water, as described in **e.(1)** through **e.(5)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for a loss or damage caused by or resulting from any of the following:

**a.** Delay, loss of use, or loss of market. This does not include "profit" if reported in compliance with the **Reporting Provisions** Additional Condition.

**b.** Dishonest or criminal acts by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

This exclusion applies:

**(1)** While acting alone or in collusion with others; and

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of physical destruction by your employees or leased employees.

This exclusion does not apply to Covered Property while it is entrusted to others who are carriers for hire.

**c.** Unexplained or mysterious disappearance except for property in custody of a carrier for hire.

**d.** Shortage of property found upon taking inventory.

**e.** Penalties for noncompliance with contract conditions, except as provided in the Contract Penalties Additional Coverage.

**f.** "Collapse", except as provided in the **Collapse** Additional Coverage.

**g. (1)** Wear and tear.

**(2)** Any quality in the property itself that causes it to damage or destroy itself; or that causes gradual deterioration.

**(3)** Insects, vermin, rodents.

**(4)** Corrosion, rust, fungus, mold, mildew, rot.

**(5)** Dampness, changes in or extremes of temperatures, all whether atmospheric or not.

**(6)** Settling, cracking, shrinking, or expansion of any Covered Property.

**h.** Rain, snow, sleet, sand or dust that damages Covered Property that is in the open awaiting installation at the location reported to us. This does not apply to Covered Property in the custody of a carrier for hire.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **i.** Artificially generated electrical current; mechanical breakdown; rupturing or bursting caused by centrifugal force.

    **j.** Testing, start-up, commissioning, examination or trial of Covered Property such as boilers, ovens, stoves, turbines, pumps, process equipment or equipment of a similar nature to prove their ability or function. This includes any form of testing making use of feedstock, including operational tests, performance tests, or other tests performed in conjunction with such testing. This exclusion does not apply to "electrical testing", "mechanical testing", "pneumatic testing" or "hydrostatic testing" used in the start-up and testing of building systems that are intended to service a building.

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

    **a.** Weather conditions which contribute in any way to a cause or event excluded in paragraph **1.** above to produce the loss or damage.

    **b.** Acts or decisions, including the failure to act or decide, of any person, group, or organization representing a governmental, regulatory or controlling body.

    **c.** Faulty, inadequate or defective:

      **(1)** Planning, zoning, development, surveying, siting;

      **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      **(3)** Materials used in repair, construction, renovation or remodeling; or

      **(4)** Maintenance;

    of all or part of any Covered Property wherever located.

    **d.** The discharge, dispersal, seepage, migration, release or escape of "pollutants", except as provided under **Pollutant Clean-Up And Removal** Additional Coverage.

## C. LIMITS OF INSURANCE

The most we will pay for loss or damage to any one building or structure is the lesser of the Limit of Insurance shown in the Declarations for that one building or structure or the "total estimated completed value" that was reported to us for that one building or structure. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for all Covered Property at all locations.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of covered loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of the covered loss or damage which exceeds the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Inland Marine Conditions:

**1. Coverage Territory**

    The coverage territory is United States of America (including its territories and possessions).



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2. Where Coverage Applies**

This coverage applies to Covered Property while within the coverage territory while:

**a.** At any construction site you have reported;

**b.** Temporarily at other premises, if the property has been designated to be installed at a location you have reported to us; or

**c.** In transit except imports or exports while ocean marine coverage applies.

**3. When Coverage Begins And Ends**

We will cover risk of loss or damage from the time when you are legally responsible for the Covered Property on or after the effective date of this policy if all other conditions are met. Coverage will end at the earliest of the following:

**a.** Once your interest in the Covered Property ceases;

**b.** Ninety days after initial occupancy of the Covered Property unless:

   **(1)** That building is being used as a model home;

   **(2)** That building is being remodeled and is a single family dwelling; or

   **(3)** That building is being used as a "model home leaseback".

**c.** When the Covered Property is leased to or rented to others:

   **(1)** For a single family dwelling, when the building is leased or rented to others;

   **(2)** For a two, three or four family dwelling, when 50% or more of the units in the structure are leased to or rented to others; or

   **(3)** For a "commercial structure", when 75% or more of the square footage space is leased to or rented to others.

This does not apply to pre-leases established prior to construction.

**d.** When you abandon the reported location with no intention to complete it;

**e.** At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the **Reporting Provisions** Additional Condition. You have the option to report the same location a third time at the end of the second 12 month period, provided the required additional premium is paid. Coverage for this third 12 month term will end at the end of 12 months from the month you re-reported the location for a third term; or

For coverage on existing buildings or structures that are being or have been remodeled, at the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below. There is no option to report a third year.

**f.** When permanent property insurance applies, whether procured by an insured hereunder or by the owner or purchaser; or



**g.** Once the Covered Property is accepted by the owner or buyer and:

**(1)** The contractor has been paid in full; or

**(2)** The transfer of ownership has taken place.

**4.  Reporting Provisions**

**a.** Each month you must report to us the "total estimated completed values" of all Covered Property for each location started during the previous month. This report must be made on the form we provide.

For the purpose of these reports, a location is started when you first put any building materials (including the foundation) on the construction site.

If your policy is endorsed to provide coverage for existing structures that you are renovating or adding onto and for which you seek coverage, a location is started on the earlier of the following:

**(1)** When you first put any building materials, which includes any new, altered or expanded foundation, on the site; or

**(2)** When you acquire title to the existing structure.

**b.** You must pay premiums based on the "total estimated completed value" of the Covered Property using the rate we furnish. You must send your premium payment with the report for the reported locations to be covered. We must receive your report and the accompanying premium payments at the address designated in our form by the last business day of the month in which the report is due, or the report is late.

**c.** If a report is received late, coverage begins on the day the report is received, and there is no coverage for any loss or damage that occurred before that report was received. Our acceptance of a report of values and premium payment does not waive or change any part of this policy or stop us from asserting any right we have under the terms of this policy.

**d.** The premium charged is fully earned and no refund is due you when coverage ends.

**e.** A dwelling being used as a model home must be reported and should be identified as a model home.

**f.** You will keep accurate construction records regarding property we cover under this policy. This includes the "total estimated completed value" of the Covered Property and a record of all contracts of sale dealing with the Covered Property.

**g.** If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. If at the end of the second 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a third time.

For coverage on existing buildings or structures that are being or have been remodeled, if at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. There is no option to report a third time.

**h.** Cancellation of this policy will not affect the insurance in force on any location which you have reported to us or on any location which started before the effective date of the cancellation notice if that location is reported on the report due and premium payment is made. However, you cannot report any location currently in your inventory a second time after the effective date of cancellation.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, coverage may be canceled on any location if notice is given in writing in accordance with the cancellation provision in the Common Policy Conditions, or state amendatory endorsements.

**5. Mortgage Holders Clause**

**a.** The term mortgage holder includes trustees.

**b.** We will pay for covered loss or damage to Covered Property to each mortgage holder shown on a Certificate of Insurance issued by the current Agent of Record.

**c.** The mortgage holder has the right to receive payment for loss or damage even if the mortgage holder has started foreclosure or similar action on the Covered Property.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive payment for loss or damage to Covered Property if the mortgage holder:

  **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

  **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

  **(2)** The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** We will not notify the mortgage holder if:

  **(1)** You cancel this policy, or

  **(2)** Coverage ends for any reason other than if we cancel the policy.

**6. Waiver Of Coinsurance**

If there is loss or damage to Covered Property and the cost to repair or replace such property is less than or equal to $25,000, we will adjust the loss or damage without regard to the **Coinsurance** Additional Condition.

**7. Coinsurance**



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If the reported value is less than the "total estimated completed value", you will bear a portion of any loss or damage. The amount we will pay is determined by the following steps:

**a.** Divide the reported value by the "total estimated completed value" of the Covered Property;

**b.** Multiply the total amount of the covered loss or damage before the application of any deductible by the percentage determined in paragraph **a.**; and

**c.** Subtract the deductible from the figure determined in paragraph **b.**

**Example No. 1**

(This example assumes there is <u>no</u> penalty for underinsurance.)

Deductible                                                $1,000

Reported Value                                      $100,000

"Total Completed Estimated Value"     $100,000

Amount of loss or damage                      $60,000

**a.** Reported value divided by "total estimated completed value"

$100,000/$100,000 = 1.00

**b.** Amount of loss or damage multiplied by percentage in paragraph **a.**

$60,000 x 1.00 = $60,000

**c.** Deductible amount subtracted from result of paragraph **b.**

$60,000 - $1,000 = $59,000

**Example No. 2**

(This example assumes there <u>is</u> a penalty for underinsurance)

Deductible                                                $1,000

Reported Value                                      $100,000

"Total estimated completed value"       $120,000

Amount of loss or damage                      $60,000

**a.** Reported value divided by "total estimated completed value"

$100,000/$120,000 = .833

**b.** Amount of loss or damage multiplied by percentage in paragraph **a.**

$60,000 x .833 = $49,980

**c.** Deductible amount Subtracted from result of paragraph **b.**

$49,980 - $1,000 = $48,980

**8. Liberalization Clause**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



If we adopt any revision which would broaden the coverage under this Coverage Form without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Form.

**9. Interest Of Subcontractors, Sub-Subcontractors, Suppliers**

We cover the interest which your subcontractors, your sub-subcontractors and your suppliers have in the Covered Property, but only while such property is situated at a construction site you have reported to us. This condition does not impair any right of subrogation we would otherwise have.

**10. Unintentional Failure To Disclose Hazards**

Your failure to disclose all hazards existing as of the inception date of the policy shall not affect the coverage afforded by this policy, provided such failure to disclose all hazards is not intentional and the hazard is reported to us as soon as practicable after you learn about it.

**F. DEFINITIONS**

1. "Collapse" means the abrupt falling down or the caving in of a building or structure or a part of a building or structure with the result that the building or structure cannot be occupied for its intended use:

   a. A part of a building or structure that is in danger of falling down or caving in is not considered to be in a state of collapse;

   b. A part of a building or structure that is standing is not considered to be in the state of collapse even if it is separated from another part of a building or structure;

   c. A building or structure that is standing or any part of a building or structure that is standing is not considered to be in the state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. "Commercial structure" means any structure other than a one to four family dwelling.

3. "Electrical testing" means the testing of systems that are operated by electricity, excluding service equipment and service conductors, electrical systems greater than 600 volts nominal and electrical systems that are greater than single phase.

4. "Existing inventory" means buildings or structures where construction was started and more than 30% of the "total estimated completed value" was completed prior to the inception date of this policy.

5. "Hydrostatic testing" means testing through the use of water or other fluids, which are processed through the machinery or system being tested.

6. "Mechanical testing" means testing of moving parts of equipment and components, which are part of the buildings or structures insured, by operation of such equipment or components.

7. "Model home leaseback" means a dwelling purchased from the Insured and is then leased back to the Insured, by the purchaser, to be used by the Insured as a model home until the purchaser occupies the dwelling as a residence.

8. "Overhead" means those business expenses, other than materials and labor, incurred either directly or indirectly due to the construction of a dwelling or structure.

9. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

10. "Pneumatic testing" means testing through the use of compressed air or other gas to fill test cavities which is processed through the machinery or system being tested.

11. "Profit" means the difference between the selling price of the land and completed structure and your cost of the land and the completed structure. If you do not have a signed contract for the sale of the completed structure and land, the allowance for "profit" will not exceed 20%.

12. "Total estimated completed value" means all costs associated with the building and designing of the Covered Property including labor, "overhead" and materials and if included, "profit".

13. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages. However, "valuable papers and records" does not mean:

   a. Money or securities;

   b. Converted data; or

   c. Programs or instructions used in your data processing operation, including the materials on which the data is recorded.

14. "Water damage" means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Remodeler Coverage

**ZURICH**®

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

The following is added to Section **A. COVERAGE**, Paragraph **4. Additional Coverages**

**Remodeler Coverage**

**(1)** We will pay for loss or damage due to a Covered Cause of Loss to "existing buildings or structures" described in the Declarations to which "renovations and improvements" are being made.

**(2)** Paragraph **a.** in **Property Not Covered** does not apply to this Additional Coverage.

**(3)** The most we will pay under this Additional Coverage for loss or damage to "existing buildings or structures" is the amount shown in the Declarations for Existing Buildings Or Structures. The most we will pay under this Additional Coverage for loss or damage to "renovations and improvements" is the amount shown in the Declarations for Renovations And Improvements.

**(4)** The **Valuation** Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage:

**Valuation**

In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.

**(a)** The value of "existing buildings or structures" will be "actual cash value".

**(b)** The value of the "renovations and improvements" will be the lesser of the cost to repair or the cost to replace with like kind and quality to the same point of completion that had been achieved immediately before the loss or damage.

**(5)** **Additional Condition**

The following Additional Condition applies to this Additional Coverage:

**Ongoing Construction Activity**

During the policy period when no "construction activity" has been performed within 60 consecutive days before the loss or damage occurs:

**(a)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

  **(i)** Vandalism;

  **(ii)** Sprinkler leakage, unless you have protected the system against freezing;

  **(iii)** Building glass damage;

  **(iv)** "Water damage";

  **(v)** Theft; or

  **(vi)** Attempted theft.

EXHIBIT A

PRS157 (04-20)
Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** With respect to Covered Causes of Loss other than those listed in **(1)** through **(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**(6) Additional Definitions**

The following Additional Definitions apply to this Additional Coverage

**(a)** "Actual cash value" means the cost to repair or replace the lost or damaged Covered Property reduced by each of the following:

**(i)** Physical deterioration;

**(ii)** Depreciation;

**(iii)** Obsolescence;

**(iv)** Depletion;

**(v)** Non-conformity to codes, regulations, or statutes; and

**(vi)** The cost to reconstruct or remodel undamaged portions of property.

But in no event will "actual cash value" be more than the market value of the property excluding land as determined by the price which the property excluding land might be expected to realize prior to loss or damage if offered for sale in a fair market on the date of the loss or damage.

**(b)** "Construction activity" means repair, replacement, or installation, including painting.

**(c)** "Existing buildings or structures" means a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation. "Existing buildings or structures" only includes those parts of standing buildings or structures that are intended to become a permanent part of buildings or structures during renovation or rehabilitation. This does not include "renovations and improvements".

**(d)** "Renovations and improvements" means your additions, alterations, improvements or repairs to the property location specified in the Declarations including materials and supplies, attachments, and fixtures which have been installed, or will be installed in the "existing buildings or structures". This does not include "existing buildings or structures".

**(e)** "Remodelers total estimated completed value" means the "actual cash value" of the "existing buildings or structures", plus the estimated cost of your "renovations and improvements" at the conclusion of the project. This does not include "overhead" or "profit".

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.


EXHIBIT A

# Remodelers Non-Reporting Endorsement



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

**A.** Section **E. ADDITIONAL CONDITIONS** is amended as follows:

**1.** Paragraph **e.** in Additional Condition **3. When Coverage Begins And Ends** is replaced by the following:

**e.** Upon expiration of the policy period.

**2.** Additional Condition **4. Reporting Provisions** is deleted.

**3.** Additional Condition **6. Waiver Of Coinsurance** is deleted.

**4.** Additional Condition **7. Coinsurance** is replaced by the following:

**Coinsurance**

If the sum of the Renovations and Improvements limit of insurance plus the Existing Buildings or Structures limit of insurance is less than the "remodelers total estimated completed value" of the property insured, you will bear a portion of any loss or damage.  The amount we will pay is determined by the following steps:

**a.** Add the Renovations and Improvements limit of insurance to the Existing Buildings or Structures limit of insurance;

**b.** Divide the sum of paragraph **a.** by the "remodelers total estimated completed value" of the Covered Property;

**c.** Multiply the amount of the covered loss or damage, before the application of any deductible, by the percentage determined in paragraph **b.**;

**d.** Subtract the deductible from the figure determined in paragraph **c.**

**Example No. 1**

(This example assumes there is <u>no</u> penalty for underinsurance)

| | |
|---|---|
| Renovations and Improvements Limit | $200,000 |
| Existing Buildings or Structures Limit | $100,000 |
| "Remodelers total estimated completed value" | $300,000 |
| Deductible | $1,000 |
| Amount of "renovations and improvements" covered loss or damage | $50,000 |
| Amount of "existing buildings or structures" covered loss or damage | $40,000 |

**a.** Renovations and Improvements Limit plus Existing Buildings or Structures Limit

$200,000 + $100,000 = $300,000

**b.** Sum from paragraph **a.** divided by "remodelers total estimated completed value

EXHIBIT A

BRS175 (04-19)
Page 1 of 8

Includes copyrighted material of Insurance Services Office, Inc. with its permission.


$300,000/$300,000 = 100\%$

c.  Amount of covered loss or damage multiplied by the percentage determined in paragraph **b.**

$50,000 + $40,000 = $90,000  x 100\% = $90,000

d.  Subtract the deductible from the amount of covered *loss*

$90,000 - $1,000 = $89,000

Total amount of loss or damage payable = $89,000.

**Example No. 2**

(This example assumes there <u>is</u> a penalty for underinsurance)

| | |
|---|---|
| Renovations and Improvements Limit | $200,000 |
| Existing Buildings or Structures Limit | $50,000 |
| "Remodelers total estimated completed value" | $300,000 |
| Deductible | $1,000 |
| Amount of "renovations and improvements" covered loss or damage | $50,000 |
| Amount of "existing buildings or structures" covered loss or damage | $40,000 |

a.  Renovations and Improvements Limit plus the Existing Buildings or Structures Limit

$200,000 + $50,000 = $250,000

b.  Sum from paragraph **1.** divided by the "remodelers total estimated completed value"

$250,000/$300,000 = 83\%

c.  Amount of covered loss or damage multiplied by the percentage determined in paragraph **2.**

$50,000 + $40,000 = $90,000 x 83\% = $74,700

d.  Subtract the deductible from the amount of covered *loss*

$74,700 - $1,000 = $73,700

Total amount of loss or damage payable = $73,700.

**B.**  The following are added to Section **F. DEFINITIONS**:

"Actual cash value" means the cost to repair or replace the lost or damaged Covered Property reduced by each of the following:

a.  Physical deterioration;

b.  Depreciation;

c.  Obsolescence;

d.  Depletion;

e.  Non-conformity to codes, regulations, or statutes; and

f.  The cost to reconstruct or remodel undamaged portions of property.

But in no event will "actual cash value" be more than the market value of the property excluding land as determined by the price which the property excluding land might be expected to realize prior to loss or damage if offered for sale in a fair market on the date of the loss or damage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT A

"Existing buildings or structures" means a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation.  "Existing buildings or structures" only includes those parts of standing buildings or structures that are intended to become a permanent part of buildings or structures during renovation or rehabilitation.  This does not include "renovations and improvements".

"Renovations and improvements" means your additions, alterations, improvements or repairs to the Property Location specified in the Declarations including materials and supplies, attachments, and fixtures which have been installed, or will be installed in the "existing buildings or structures".  This does not include "existing buildings or structures".

"Remodelers total estimated completed value" means the "actual cash value" of the "existing buildings or structures", plus the estimated cost of your "renovations and improvements" at the conclusion of the project.  This does not include overhead or profit.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT A

# Windstorm Deductible

**ZURICH**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Marine Model Home Contents Coverage Form**
**Miscellaneous Property Coverage Form**

| Schedule | | |
|---|---|---|
| 1 | 1943 Fowler St, Fort Myers, FL 33901 | |
| Loc. # | Address | |
| Windstorm Deductible Percentage: | 3 %, subject to a minimum Deductible of $ 1,500 | |

For loss or damage caused by windstorm, Section **D. DEDUCTIBLE** is replaced by the following:

The Windstorm Deductible applies to loss or damage to Covered Property caused directly or indirectly by windstorm. If loss or damage from a covered weather condition other than windstorm occurs, and that loss or damage would not have occurred but for the windstorm, such loss or damage shall be considered to be caused by windstorm and, therefore, part of the windstorm occurrence.

**WINDSTORM DEDUCTIBLE CLAUSE**

1. **Non Reporting Form**

   **a.** The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the Limit of Insurance applicable to the property described in the Declarations that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above. This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure, if two or more buildings or structures sustain loss or damage.

   **b.** We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible, up to the "total estimated completed value" for the building or structure that sustained loss or damage. In no event will we pay more than the Limit of Insurance in the Declarations. If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

2. **Reporting Form**

   **a.** The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the "total estimated completed value" of the location reported to us that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above. This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure reported to us, if two or more buildings or structures sustain loss or damage.

   **b.** We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible, up to the "total estimated completed value" reported to us for that Covered Property. If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

3. **Deposit Premium Form**



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT A

**a.**  The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the "total estimated completed value" of the location that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above.  This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure, if two or more buildings or structures sustain loss or damage.

**b.**  We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible up to the "total estimated completed value" for the building or structure that sustained loss or damage. In no event will we pay more than the Limit of Insurance in the Declarations.  If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

All other terms, conditions, provisions and exclusions of this policy remain the same.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Deductible Amendatory Endorsement

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Miscellaneous Property Coverage Form**

Section **D. DEDUCTIBLE** is replaced by the following:

**D.  DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of covered loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of covered loss or damage which exceeds the Deductible, up to the Limit of Insurance. This Deductible applies separately to each building or structure, described in the Declarations or reported to us, if two or more buildings or structures sustain loss or damage.

All other terms, conditions, provisions and exclusions of this policy remain the same.

**EXHIBIT A**

Includes Copyrighted material of Insurance Services Office, Inc., with its permission



# Florida Notice To Policyholder – Coinsurance Contract



**THIS IS A COINSURANCE CONTRACT:**

The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.

EXHIBIT A



# Changes In Cancellation Condition

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Common Policy Conditions**

Section **A. Cancellation**, Paragraph **5.** is replaced with the following:

The premium for this coverage is fully earned and no refund is due when the policy is cancelled.

All other terms, conditions, provisions and exclusions of the policy remain the same.

EXHIBIT A

EDGE 07 06 10
Page 1 of 1


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Changes In Valuation Condition



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

The **Valuation** General Condition in Commercial Inland Marine Conditions is replaced by the following:

**Valuation**

In the event of loss or damage, the value of the property will be determined as of the time of the loss or damage.

1. The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the loss or damage.

2. If the loss or damage involves building materials which have not been installed, the value of the property will not be more than the amount necessary to replace the materials with like kind and quality.

All other terms, conditions, provisions and exclusions of the policy remain the same.

EXHIBIT A





# Mortgage Holders Clause – Non Reporting Form

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**

<div align="center">

**Schedule**

**Mortgage Holder**

</div>

Sanibel Captiva Community Bank ISAOA

PO Box 187

Sanibel, FL 33957

Section **E. ADDITIONAL CONDITIONS**, **5.b.** is replaced with the following:

We will pay for covered loss or damage to Covered Property to the mortgage holder(s) designated in the Schedule above.

All other terms, conditions, provisions and exclusions of this policy remain the same.

EXHIBITA

LDS 131 06 (7)
Page 1 of 1

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Insured Name:
Policy Number:
Effective Date:



**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| **$0** |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, the United States Government may pay up to 80% of insured losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.



No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT A



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
|  |  |  |  |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.  Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.  To be an act of terrorism;

2.  To be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.  Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT A

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was com-
puted based on rates in effect at the time the policy
was issued. On each renewal, continuation, or anni-
versary of the effective date of this policy, we will
compute the premium in accordance with our rates
and rules then in effect.

          © ISO Properties, Inc., 2007

Wolters Kluwer Financial Services | Uniform Forms™

EXHIBIT A

COMMERCIAL INLAND MARINE
CM 00 01 09 04

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

**1.** Notify the police if a law may have been broken.

**2.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**3.** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**4.** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**5.** You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**6.** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**7.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**8.** Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**9.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

**10.** Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

**1.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**2.** We will not pay you more than your financial interest in the Covered Property.

**3.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**4.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**5.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of the loss; or

**b.** An appraisal award has been made.

Copyright, ISO Properties, Inc., 2003



EXHIBIT A

**6.** We will not be liable for any part of a loss that has been paid or made good by others.

**F. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**G. Pair, Sets Or Parts**

**1. Pair Or Set**

In case of loss or damage to any part of a pair or set we may:

**a.** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

**b.** Pay the difference between the value of the pair or set before and after the loss or damage.

**2. Parts**

In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**H. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**I. Reinstatement Of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

**J. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property.

**2.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance; or

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you.

This will not restrict your insurance.

**GENERAL CONDITIONS**

**A. Concealment, Misrepresentation Or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all the terms of this Coverage Part; and

**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

Copyright, ISO Properties, Inc., 2003 CM 00 03 09 04


EXHIBIT A

**2.** The cost of reasonably restoring that property to its condition immediately before loss or damage; or

**3.** The cost of replacing that property with sub-stantially identical property.

In the event of loss or damage, the value of prop-erty will be determined as of the time of loss or damage.

Copyright, ISO Properties, Inc., 2003


EXHIBIT A

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

 CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
 COMMERCIAL INLAND MARINE COVERAGE PART
 COMMERCIAL PROPERTY COVERAGE PART
 EQUIPMENT BREAKDOWN COVERAGE PART
 FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

Wolters Kluwer Financial Services | Uniform Forms™


EXHIBIT A

COMMERCIAL INLAND MARINE
CM 01 16 05 22

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.** Paragraph **5.** of Loss Condition **E. Loss Payment** in the Commercial Inland Marine Conditions is replaced by the following:

  **5.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage within:

    **a.** 20 days after we receive the sworn proof of loss and reach written agreement with you; or

    **b.** 30 days after we receive the sworn proof of loss and:

      **(1)** There is an entry of final judgment; or

      **(2)** There is a filing of an appraisal award with us.

Paragraph **A.** does not apply to the Mail Coverage Form.

**B.** The following provisions are added to Loss Condition **C. Duties In The Event Of Loss** in the Commercial Inland Marine Conditions:

  **1.** A claim or reopened claim for loss or damage caused by any peril is barred unless notice of claim is given to us in accordance with the terms of this Coverage Part within two years after the date of loss. A reopened claim means a claim that we have previously closed but that has been reopened upon an insured's request for additional costs for loss or damage previously disclosed to us.

A supplemental claim is barred unless notice of the supplemental claim was given to us in accordance with the terms of the Policy within three years after the date of loss. A supplemental claim means a claim for additional loss or damage from the same peril which we have previously adjusted or for which costs have been incurred while completing repairs or replacement pursuant to an open claim for which timely notice was previously provided to us.

For claims resulting from hurricanes, tornadoes, windstorms, severe rain or other weather-related events, the date of loss is the date that the hurricane made landfall or the tornado, windstorm, severe rain or other weather-related event is verified by the National Oceanic and Atmospheric Administration.

This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Coverage Part under the Legal Action Against Us Condition, including any amendment to that condition.

  **2.** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

 © Insurance Services Office, Inc., 2021


EXHIBIT A

EXHIBIT A

EXHIBIT A

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

    © Insurance Services Office, Inc., 2015

Wolters Kluwer Financial Services | Uniform Forms™

EXHIBIT A

**C.** The following is added to the **Cancellation Common Policy Condition:**

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

**(2)** 45 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

**(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

**(3)** 120 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

**(b)** This policy covers a residential structure or its contents.

**c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.;** or

**b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;



EXHIBIT A

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

   **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

   **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** Material misstatement or fraud related to the claim;

   **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

   **(4)** We have paid the policy limits.

   If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

 © Insurance Services Office, Inc., 2015





# Non-Renewal Notice

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk And Installation Coverage Form**
**Builders Risk Coverage Form**
**Marine Model Home Contents Coverage Form**
**Miscellaneous Property Coverage Form**

Due to the specialized nature of the risk insured and the limited term of the coverage provided under this policy, it is agreed that this policy expires on date specified.  A nonrenewal notice will not be sent to you.  Any requests to extend the policy period must be made in writing prior to the expiration date.  However, we have no obligation to extend the policy period.

All other terms, conditions, provisions and exclusions of this policy remain the same.

1001NR (01-20)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT A



# SANCTIONS EXCLUSION ENDORSEMENT



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

EXHIBIT A

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

| | | | |
|---|---|---|---|
| Insured: | Swamp Cat Holdings | Business: | (305) 961-1038 |
| Property: | 1943 Fowler Street | E-mail: | caponte@pclawgroup.com |
| | Fort Myers, FL 33901 | | |
| Home: | 1943 Fowler Street | | |
| | Fort Myers, FL 33901 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Leonard Cooper | Cellular: | (630) 222-3471 |
| Business: | 1740 S. Bell School Road | E-mail: | lcooper@racadj.com |
| | Cherry Valley, IL 61016 | | |

| | | | |
|---|---|---|---|
| Estimator: | Leonard Cooper | Cellular: | (630) 222-3471 |
| Business: | 1740 S. Bell School Road | E-mail: | lcooper@racadj.com |
| | Cherry Valley, IL 61016 | | |

| | | | |
|---|---|---|---|
| Reference: | Kim Swoboda | | (214) 866-1184 |
| Company: | Zurich North America Insurance | | |
| Business: | 1299 Zurich Way | | |
| | Schaumburg, IL 60196 | | |

**Claim Number:** 5630086260          **Policy Number:** 74033179          **Type of Loss:** Hurricane

| | | | |
|---|---|---|---|
| Date Contacted: | 10/31/2022 12:00 AM | | |
| Date of Loss: | 9/28/2022 12:00 AM | Date Received: | 10/24/2022 12:00 AM |
| Date Inspected: | 11/2/2022 12:00 AM | Date Entered: | 10/24/2022 12:36 PM |
| Date Est. Completed: | 11/5/2022 12:19 PM | | |

| | |
|---|---|
| Price List: | FLFL8X_NOV22 |
| | Restoration/Service/Remodel |
| Estimate: | SWAMP_CAT_HOLDINGS |

NOTICE:  This is a repair estimate only and not an authorization to repair.  The insurance policy may contain provisions that will reduce any payment that might be made.  Authorization to repair or guarantee of payment must come from the owner of the property.  Neither your insurance company nor this firm guarantee the quality of the work performed by any contractor for the repairs that might be made.

Depreciation, if taken in this estimate, is based on the age, condition and useful life of the item.

# EXHIBIT B

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

### SWAMP_CAT_HOLDINGS

**Main Level**



**Adjacent building lower roof**

| | | |
|---|---|---|
| 805.62 Surface Area | | 8.06 Number of Squares |
| 217.36 Total Perimeter Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Tear off modified bitumen roofing (no haul off) | 8.06 SQ | 51.21 | 0.00 | 412.75 | <0.00> | 412.75 |
| 2. R&R Insulation - ISO board, 2" | 8.06 SQ | 444.52 | 58.91 | 3,641.74 | <299.22> | 3,342.52 |
| 3. Modified bitumen roof | 8.06 SQ | 620.26 | 69.61 | 5,068.91 | <3,749.48> | 1,319.43 |
| 4. Drip edge/gutter apron | 86.00 LF | 4.58 | 7.49 | 401.37 | <168.81> | 232.56 |
| **The below line items are for the section of termination bar and parapet of the lower adjacent building roof where it connects with the main building** | | | | | | |
| 5. R&R Aluminum termination bar / flashing for membrane roofs | 25.00 LF | 4.89 | 1.14 | 123.39 | <43.50> | 79.89 |
| 6. R&R Flash parapet wall only - up to 3' | 20.00 LF | 22.15 | 2.33 | 445.33 | <290.10> | 155.23 |
| **Totals: Adjacent building lower roof** | | | **139.48** | **10,093.49** | **4,551.11** | **5,542.38** |
| **Total: Main Level** | | | **139.48** | **10,093.49** | **4,551.11** | **5,542.38** |

**Fascia - Trim**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| **The below line item is for the right front fascia damaged** | | | | | | |
| 7. R&R Fascia - metal - 8" | 30.00 LF | 6.17 | 6.12 | 191.22 | <10.26> | 180.96 |
| **The below line item is for the right side quarter round damaged** | | | | | | |
| 8. R&R Quarter round - 3/4" | 20.00 LF | 2.41 | 1.27 | 49.47 | <4.34> | 45.13 |
| **Totals: Fascia - Trim** | | | **7.39** | **240.69** | **14.60** | **226.09** |

**Siding**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| **The below line items are for the rear gable siding** | | | | | | |
| 9. R&R Underlayment - 1/2" particle board | 220.00 SF | 4.60 | 14.01 | 1,026.01 | <253.00> | 773.01 |

**EXHIBIT B**

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

## CONTINUED - Siding

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| The above line item is for water to the under siding after the siding was blown off - the structure was built in 1953 | | | | | | |
| 10.  House wrap (air/moisture barrier) | 220.00 SF | 0.31 | 2.57 | 70.77 | <9.09> | 61.68 |
| 11.  R&R Siding - aluminum (.024 thickness) | 220.00 SF | 8.97 | 90.09 | 2,063.49 | <731.28> | 1,332.21 |
| **Totals:  Siding** | | | **106.67** | **3,160.27** | **993.37** | **2,166.90** |

### Window glass

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 12.  Reglaze window, 1 - 9 sf | 5.00 EA | 89.76 | 13.74 | 462.54 | <359.04> | 103.50 |
| **Totals:  Window glass** | | | **13.74** | **462.54** | **359.04** | **103.50** |

### Main Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| There was no storm damage observed to the main roof | | | | | | |
| 13.  Tree - removal - per hour (Labor only) | 3.00 HR | 63.77 | 0.00 | 191.31 | <0.00> | 191.31 |
| The above line item is to remove the branch off of the rear right roof. I could not move it as a section is still attached to the tree and needs to be cut | | | | | | |
| **Totals:  Main Roof** | | | **0.00** | **191.31** | **0.00** | **191.31** |

### Fence

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| The following line items are for the falling tree branches and damaged fencing from the wind and falling tree branch damage | | | | | | |
| 14.  R&R Chain link fence w/posts & top rail - 4' high | 120.00 LF | 22.90 | 78.08 | 2,826.08 | <1,836.48> | 989.60 |
| 15.  Tree - removal - per hour (Labor only) | 5.00 HR | 63.77 | 0.00 | 318.85 | <0.00> | 318.85 |
| **Totals:  Fence** | | | **78.08** | **3,144.93** | **1,836.48** | **1,308.45** |

# EXHIBIT B



**RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

### General

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 16. Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00 EA | 450.00 | 0.00 | 450.00 | <0.00> | 450.00 |
| **Totals: General** | | | **0.00** | **450.00** | **0.00** | **450.00** |

### Labor Minimums Applied

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 17. Roofing labor minimum* | 1.00 EA | 741.36 | 0.00 | 741.36 | (0.00) | 741.36 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **741.36** | **0.00** | **741.36** |
| **Line Item Totals: SWAMP_CAT_HOLDINGS** | | | 345.36 | 18,484.59 | 7,754.60 | 10,729.99 |

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling | |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter | |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter | |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area | |
| 335.37 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | | |
| 805.62 Surface Area | 8.06 Number of Squares | 217.36 Total Perimeter Length | |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | | |

# EXHIBIT B

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

### Summary for Builders Risk Existing

| | | |
|---|---|---:|
| Line Item Total | | 18,139.23 |
| Material Sales Tax | | 345.36 |
| **Replacement Cost Value** | | **$18,484.59** |
| Less Non-recoverable Depreciation | | <7,754.60> |
| **Actual Cash Value** | | **$10,729.99** |
| Less Deductible | [Full Deductible = 35,250.00] | (10,729.99) |
| **Net Claim** | | **$0.00** |

_____
Leonard Cooper

EXHIBIT B

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

## Recap of Taxes

| | Material Sales Tax (6.5%) | Cleaning Mat Tax (6.5%) | Total Cleaning Tax (6.5%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (6.5%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 345.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | |
| | **345.36** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

EXHIBIT B

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

## Recap by Room

**Estimate: SWAMP_CAT_HOLDINGS**

**Area: Main Level**

| | | |
|---|---|---|
| **Adjacent building lower roof** | **9,954.01** | **54.88%** |
| **Area Subtotal:  Main Level** | **9,954.01** | **54.88%** |
| **Fascia - Trim** | **233.30** | **1.29%** |
| **Siding** | **3,053.60** | **16.83%** |
| **Window glass** | **448.80** | **2.47%** |
| **Main Roof** | **191.31** | **1.05%** |
| **Fence** | **3,066.85** | **16.91%** |
| **General** | **450.00** | **2.48%** |
| **Labor Minimums Applied** | **741.36** | **4.09%** |
| **Subtotal of Areas** | **18,139.23** | **100.00%** |
| **Total** | **18,139.23** | **100.00%** |

# EXHIBIT B

 **RAC**

RAC Adjustments, Inc.
1740 S Bell School Road
Cherry Valley, Illinois 61016
877-240-0180
Fed Tax ID 36 - 3694468

### Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---|---|---|
| GENERAL DEMOLITION | 3,119.00 | | 3,119.00 |
| FLOOR COVERING - VINYL | 550.00 | 253.00 | 297.00 |
| FENCING | 2,295.60 | 1,836.48 | 459.12 |
| FINISH CARPENTRY / TRIMWORK | 43.40 | 4.34 | 39.06 |
| ROOFING | 9,615.03 | 4,551.11 | 5,063.92 |
| SIDING | 1,896.40 | 740.37 | 1,156.03 |
| SOFFIT, FASCIA, & GUTTER | 171.00 | 10.26 | 160.74 |
| WINDOW REGLAZING & REPAIR | 448.80 | 359.04 | 89.76 |
| Subtotal | 18,139.23 | 7,754.60 | 10,384.63 |
| Material Sales Tax | 345.36 | | 345.36 |
| Total | 18,484.59 | 7,754.60 | 10,729.99 |

Please be advised that this estimate was created based on visible damages only. There are times where damages are hidden from view until repairs have been started or are found after the inspection has been made. If you determine that there are other damages that you would wish to claim under this policy please contact the claim professional assigned to your loss immediately for further instructions.

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

EXHIBIT B

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Plaintiff, Swamp Cat Holdings, LLC, (the "Insured"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, hereby requests that Defendant, American Zurich Insurance Company (the "Insurance Company"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Florida Rules of Civil Procedure or by order of the Court.

I    DEFINITIONS AND INSTRUCTIONS

1. The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company " means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2. The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

EXHIBIT
1-D

3.    The "Complaint" means the Complaint filed by the Insured in this action.

4.    The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.    The term "all documents" means every document or group of documents *as* above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.    The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.    The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.    As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.   The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The terms "each" and "every" means "each and every," the term "including" means "including without limitation.

10. The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11. The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12. The term "to date" shall mean the date on which you respond to this request,

13. When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14. When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15. In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16. The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside

their scope.

17. If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

(a)    furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

(b)    state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

(c)    describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19. Unless otherwise indicated, all requests include the time period from the date of the Loss

to the date you receive this request.

20. The term "Insured" shall refer to the Petitioner(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.    LOST/DESTROYED DOCUMENTS

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.    DOCUMENTS REQUESTED

1.    A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.    Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.    Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

4.      Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

5.      Any and all correspondence or written communications from the Insured, or their representatives to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.      Any and all photographs taken by the Insurance Company of the Property.

7.      All documents containing information regarding any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insured. If you claim privilege over any of these documents, please provide redacted documents showing only any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss

8.      Any and all bills or estimates for repairs to the Property submitted to the Insurance Company.

9.      Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

10.     All reports which in any manner pertain to the Insured's loss, including reports by any expert retained by the insurance company.

11.     All Proof of Loss forms pertaining to the subject loss that were sent or received by you or your representatives to or from the Insured or the Insured's representative.

12.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

13.     All applications for insurance submitted by or on behalf of the Insured to you or your representatives in connection with obtaining or renewing the subject Policy.

14.     All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

15.     The complete underwriting file for the Insured.

16.     A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

17.     All affidavits or sworn statements in your possession pertaining to the subject loss.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: American Zurich Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

### PLAINTIFF'S NOTICE OF SERVING FIRST SET OF INTERROGATORIES

Plaintiff, Swamp Cat Holdings, LLC, pursuant to the applicable rule of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, American Zurich Insurance Company (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: American Zurich Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**
_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

**EXHIBIT
1-E**

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, Swamp Cat Holdings, LLC, pursuant to the applicable rule of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, American Zurich Insurance Company (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: American Zurich Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

/s/ **Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

## DEFINITIONS AND INSTRUCTIONS

1.      Insert your answers in the space provided following each question. If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf. The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, upon which Plaintiff demands that he/she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.      The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.      The term "contract" means the insurance contract between the parties.

9.      The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.     The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and

output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.     The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.     The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.     The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.     The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof

16.     The term "to date" shall mean the date on which you answer these interrogatories.

18.     The term "including" means "including but not limited to".

19.     "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

20.     The term "Identify," when used with reference to a natural person, means state:

    (a)     his full name and address (or, if the present address is not known, his last known address).

    (b)     the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

    (c)     his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

    (d)     such other information sufficient to enable Plaintiff to identify the person.

21.     "Identify," when used with reference to any entity other than a natural person, means:

    (a)     state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

22.     "Identify," when used with reference to a document or written communication, means state:

    (a)     its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

    (b)     the identity of each signer to the document or communication;

    (c)     the title or heading of the document or communication;

    (d)     its substance;

    (e)     its present (or, if the present is not known, the last known) location and custodian.

    (f)     the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of

such document or communication and each copy thereof;

    (g)    the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

23.   "Identify," when used with reference to an oral transaction or oral communication, means state:

    (a)    its nature (e.g., telephone call, conversation in person, etc.)

    (b)    the date and place thereof.

    (c)    the identity and address of each person participating therein, present during or witness to any part thereof.

    (d)    identify each document in which such transaction or communication was recorded, described or referred to.

24. "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

25. You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories, On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

26. Identify each Document produced pursuant to an interrogatory by the paragraph number of

the interrogatory in response to which it is produced and by the file from which the document was produced.

27. If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

28.       If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

29. If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

(a)    set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

(b)    state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

(c)    describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

## INTERROGATORIES

1.  Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

2.  Please state the date that the Insurance Company first received notice from the Insureds for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit and how that noticed was received.

3.    In reference to the Insurance Company's coverage determination of the Insured's claim for benefits under the Policy, please state:

a.    The date the coverage determination was made.

b.    Identify each person who participated in the coverage determination.

c.    Describe each and every fact upon which you relied in forming the basis for your coverage determination.

d.    Identify each document sent by the Insurance Company to the Insured detailing the reasons for the coverage determination.

e        State the location, including, page(s), line(s) and paragraph number(s), and the exact language contained in the Policy, which you used to base your coverage determination.

4.        Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured Property in reference to the claim for benefits under the Policy, including his or her field of expertise and the date of each inspection.

5.     Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company in reference to the Insured's claim for benefits under the Policy.

6.     Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

7.    Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

8.    Please describe all requests made by the Insurance Company upon the Insured, (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

9.     With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.


_____
American Zurich Insurance Company


By: _____


Title: _____


STATE OF FLORIDA                    }

COUNTY OF _____              }

BEFORE ME, the undersigned authority, personally appeared, _____, who is personally known to me or who has produced as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my office; in the County and State last aforesaid, this_____day of _____ ,202_.


_____
Notary Public


My Commission Expires:

4/10/2023 7:03 AM FILED LEE COUNTY CLERK OF COURTS

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                              CIVIL ACTION

                                        CASE NO: 23-CA-005362

Swamp Cat Holdings LLC
    Plaintiff
vs
American Zurich Insurance Company
    Defendant
_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE
## TWENTIETH JUDICIAL CIRCUIT

    PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial
Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of
this Circuit, the parties are ordered to adhere to the following information and procedures
applicable to civil lawsuits:

    1. **SERVICE OF THIS ORDER.**  The Plaintiff is directed to serve a copy of this order
with each Summons issued in this case.  One copy of this Order is to be filed with the Clerk of
the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's
fees on copies for each Standing Order issued and attached to the Summons.

    2. **CIVIL CASE MANAGEMENT SYSTEM.**  The Supreme Court of Florida has
established guidelines for the prompt processing and resolution of civil cases.  This Court has
adopted a case management system to help meet those guidelines.  In contested cases (other than
residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary
Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are
required to participate in the case management system.  The Court will issue a Case Management
Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed
Case Management Plan that has been approved by the Court.  However, if it becomes necessary
to amend the court-issued Case Management Plan, the parties may submit an Agreed Case
Management Plan, subject to approval by the Court, or if the parties cannot agree on an
Amended Plan, the parties may request a case management conference.  The form of the Agreed
Case Management Plan may be accessed at the Court's website at:
https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case
management conference is scheduled, attendance by trial counsel and those parties who are not
represented by counsel is mandatory.  Agreed Case Management Plans are to be submitted
to Lee County Civil Case Management by email in Word format to
LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County
Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the
Clerk of Court.

    3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).**  ADR provides parties with an

Rev. 9/28/21

EXHIBIT
1-F

out-of-court alternative to settling disagreements.  The Court requires the parties to participate in ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR.  Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties. The Court, at its discretion, may order the case be referred to Non-Binding Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to Fla.R.Civ.P. 1820(h).

4. **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a case if there is no record of activity within a ten (10) month period of time.

5. **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

**DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.

/s/Alane C. Laboda
Administrative Circuit Judge

****Original on file in the office of the Circuit Court Administrative Judge, Lee County**



## JAMES R. SHENKO

#### CIRCUIT JUDGE TWENTIETH JUDICIAL CIRCUIT OF FLORIDA

LEE COUNTY JUSTICE CENTER                                    TELEPHONE (239) 533-9154
    1700 MONROE STREET                                    FAX (239) 485-2589
FORT MYERS, FLORIDA 33901

Notice of Pending Insurance Claim

Pursuant to Florida Supreme Court Judicial Ethics Advisory Opinion 2023-01 issued on February 1, 2023, the undersigned judge hereby gives notice that said judge has filed Hurricane Ian related insurance claims with insurance companies, none of those companies are the insurance company in this case.

*s/ James R. Shenko (Electronically Signed)*
Circuit Judge

EXHIBIT
1-G



CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

| | |
|---|---|
| SWAMP CAT HOLDINGS LLC | **CASE #:** 23-CA-005362 |
| | **COURT:** 20TH JUDICIAL CIRCUIT |
| PLAINTIFF(S) | **COUNTY:** LEE |
| | **DFS-SOP #:** 23-000170186 |
| VS. | |
| AMERICAN ZURICH INSURANCE COMPANY | |
| DEFENDANT(S) | |
| _____ / | |
| SUMMONS, COMPLAINT, DISCOVERY | |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, April 19, 2023 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, April 20, 2023 to the designated agent for the named entity as shown below.

AMERICAN ZURICH INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

CARLOS SANTI
PROPERTY & CASUALTY LAW GROUP
2307 DOUGLAS ROAD
SUITE 302
MIAMI, FL 33145

DR1

**EXHIBIT
1-H**

Office of the General Counsel - Service of Process Section
200 East Gaines Street • Tallahassee, Florida 32399-0390 • (850)413-4200
eFiled Lee County Clerk of Courts Page 1

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

        Plaintiff,

                              CASE NO.:   23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

        Defendant.

_____/

**DEFENDANT'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

        COMES NOW**,** AMERICAN ZURICH INSURANCE COMPANY ("Zurich"), by and through its undersigned attorneys and pursuant to Florida Rule of Civil Procedure 1.090(b), files its Motion for Extension of Time to Respond to Plaintiff's Complaint. In support thereof, Zurich states as follows:

        1.     On April 20, 2023, Plaintiff[1] served a Summons and Complaint upon Zurich, making the response to the Complaint due on May 10, 2023.

        2.     Zurich seeks a thirty (30) day extension of time to respond to Plaintiff's Complaint, making the response to the Complaint due June 9, 2023.

        3.     The undersigned counsel was recently retained.

        4.     It is within the Court's discretion to grant an extension of time for cause shown, if the motion requesting the enlargement of time is made before the expiration of the period of the time originally prescribed.  *See* Fla. R. Civ. P. 1.090(b); *Khambaty v.*

---

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

**EXHIBIT
1-I**

*Lepine*, 734 So. 2d 1183 (Fla. 2d DCA 1999).

5.     An extension of time is necessary in order to afford counsel for Zurich sufficient time to respond to the Complaint.  This Motion is not made for purposes of delay and should this Motion be granted, no parties will be unduly prejudiced.

6.     Zurich reserves all defenses to this action, both mandatory and discretionary, provided under Florida law, including but not limited to the defense of (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a cause of action; and (7) failure to join indispensable parties.

WHEREFORE, AMERICAN ZURICH INSURANCE COMPANY, respectfully requests this Honorable Court grant this Motion for Extension of Time to Respond to Plaintiff's Complaint.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary:   ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
                      nsahadeo@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
*Counsel for Defendant, American Zurich Insurance Company*

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

      Carlos L. Santi, Esq.
      Property & Casualty Law Group
      2307 Douglas Road, Suite 302
      Miami, Florida 33145
      CSanti@pclawgroup.com
      *Counsel for Plaintiff*

by ePortal on May 10, 2023.

KRISTINA F. HARRIS, ESQ.

3

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

       Plaintiff,

                            CASE NO.:   23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

       Defendant.

_____/

**DEFENDANT'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY**

COMES NOW, AMERICAN ZURICH INSURANCE COMPANY ("Zurich"), by and through its undersigned attorneys and pursuant to Florida Rule of Civil Procedure 1.090(b), files its Motion for Extension of Time to Respond to Plaintiff's First Request for Production and Plaintiff's First Set of Interrogatories. In support thereof, Zurich states as follows:

1.     On April 3, 2023, Plaintiff[1] filed its First Request for Production and First Set of Interrogatories with its Complaint, making the responses to the Interrogatories and Request for Production due on June 5, 2023.

2.     The undersigned counsel have been working on responses to the requests, including the collection and identification of responsive documents, but needs additional time to respond to the requests.

3.     Zurich seeks a twenty (20) day extension of time to respond to Plaintiff's

---

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

EXHIBIT
1-J

First Set of Interrogatories and First Request for Production, making the responses to the Interrogatories and Request for Production due June 25, 2023.

    4.    It is within the Court's discretion to grant an extension of time for cause shown, if the motion requesting the enlargement of time is made before the expiration of the period of the time originally prescribed. *See* Fla. R. Civ. P. 1.090(b); *Khambaty v. Lepine*, 734 So. 2d 1183 (Fla. 2d DCA 1999).

    5.    An extension of time is necessary in order to afford counsel for Zurich sufficient time to respond to the Complaint. This Motion is not made for purposes of delay and should this Motion be granted, no parties will be unduly prejudiced.

    6.    Zurich reserves all defenses and objections to the Interrogatories and Request for Production.

    WHEREFORE, AMERICAN ZURICH INSURANCE COMPANY, respectfully requests this Honorable Court grant this Motion for Extension of Time to Respond to Plaintiff's Discovery.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary:   ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
              nsahadeo@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Counsel for Defendant, American Zurich Insurance Company*

2

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

> Carlos L. Santi, Esq.
> Property & Casualty Law Group
> 2307 Douglas Road, Suite 302
> Miami, Florida 33145
> CSanti@pclawgroup.com
> *Counsel for Plaintiff*

by ePortal on May 31, 2023.

KRISTINA F. HARRIS, ESQ.

3

Case 2:23-cv-00739-JLB-K D    Document 1-1    Filed 09/15/23    Page 101 of 252 PageID 111

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

        Plaintiff,

                                   CASE NO.:   23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

        Defendant.

_____/

### DEFENDANT'S NOTICE OF SERVING
### <u>FIRST SET OF INTERROGATORIES TO PLAINTIFF</u>

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY, by and through its undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.340, requests that the Plaintiff[1] answer the attached Interrogatories numbered one (1) through two (2), inclusive, within thirty (30) days after service hereof.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   ttyler@butler.legal
                 nsahadeo@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900

---

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

EXHIBIT
1-K

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served to:

      Carlos L. Santi, Esq.
      Property & Casualty Law Group
      2307 Douglas Road, Suite 302
      Miami, Florida 33145
      CSanti@pclawgroup.com
      *Counsel for Plaintiff*

by ePortal on May 10, 2023.

          KRISTINA F. HARRIS, ESQ.

2

## **INSTRUCTIONS**

1.  You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Interrogatory. Documents are to be produced in full and unexpurgated form.

2.  If any documents covered by this Interrogatory are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (e.g., letter, memorandum, etc.) together with the following information with respect to any such document withheld:  author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Interrogatory to which such document relates.

3.  If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

4.  In the event that any document called for by this Interrogatory has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

5.  All objections to any category of documents to be produced pursuant to this Interrogatory or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

6.  Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

7.  Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiff, if any.

## **DEFINITIONS**

1.  "Plaintiff", means Plaintiff, its affiliates, agents, employees and representatives.

2.  "ZURICH" means Defendant, AMERICAN ZURICH INSURANCE COMPANY, its agents, employees and representatives.

3.  The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

4.  The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded. It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

5.  The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

6.  The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

4

7.    "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

8.    The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

9.    All other words have their plain and ordinary meaning.

5

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

                                         CASE NO.:   23-CA-005362

 vs.

AMERICAN ZURICH INSURANCE COMPANY,

      Defendant.

_____/

**DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF[2]**

1.    Please identify all of the former and current members of SWAMP CAT HOLDINGS COMPANY, LLC, since the purported date of loss of September 28, 2022.  Please also identify each member's current primary residential address.

      **ANSWER:**

2.    Please state with specificity the total amount of the damages that you are seeking in this action.

      **ANSWER:**

---

[2] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

6

SWAMP CAT HOLDINGS COMPANY, LLC

By: _____

Print Name: _____

Title: _____

## **ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared _____ on behalf of SWAMP CAT HOLDINGS COMPANY, LLC, who is personally known to me **OR** who has produced _____* as identification, and who, after first being duly sworn, deposes and says that he/she has read the foregoing Answers to said Interrogatories which were propounded to him/her by the Defendant and are true and correct.

SWORN TO AND SUBSCRIBED before me, this _____ day of _____, 2023.
   *List type of identification produced or "N/A," whichever is applicable.*

(SEAL)

_____
NOTARY PUBLIC

State of _____ at Large

My Commission Expires:

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDINGS, LLC,

        Plaintiff,

                                    CASE NO.:  23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

        Defendant.

_____/

## ANSWER, AFFIRMATIVE DEFENSES, AND DEMAND FOR JURY TRIAL

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY ("Zurich"), by and through its undersigned counsel, and responds to the Complaint, as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Admitted for jurisdictional purposes only, otherwise denied.

2.    Denied.

3.    Admitted that Zurich is a foreign profit corporation with headquarters located at 1299 Zurich Way, Schaumburg, Illinois 60196, and is authorized to conduct business in Florida. Otherwise, denied.

4.    Admitted for jurisdictional and venue purposes only, otherwise denied.

5.    Denied.  *See* affirmative defenses, below.

## GENERAL ALLEGATIONS

6.    Admitted that in exchange for insurance premiums paid by Plaintiff, Zurich issued a policy of insurance numbered ER74033179 to Swamp Cat Holdings Company,

EXHIBIT
**1-L**

LLC[1] for property located at 1943 Fowler Street, Fort Myers, Florida 33901 (the "Property") for the policy term of July 20, 2022 through January 20, 2023, subject to its terms, conditions, and limitations (the "Policy"). *See* **Exhibit 1** attached hereto which is a true and correct copy of the Policy.

7.      The terms, conditions, and limitations of the Policy speak for themselves. Further admitted that Plaintiff reported a claim for damage to the Property. All averments not expressly admitted are denied.

8.      Admitted only that Plaintiff's representative reported a loss to Zurich on October 15, 2022 for damage that occurred on September 28, 2022. Further admitted that Zurich determined a portion of Plaintiff's claimed damages were covered under the Policy. Otherwise, denied.  *See* First and Second Affirmative Defenses, below.

9.      Admitted that Zurich acknowledged Plaintiff's claim and assigned claim number 5630086260 to the claim.

10.     Admitted that Zurich acknowledged partial coverage for the claim of damage to the Property and tendered a payment of the claim based on its estimate of damages. Denied that there is coverage for all of the damage claimed by Plaintiff. *See* Affirmative Defenses, below.

11.     Denied.

12.     Denied.

13.     Zurich is without knowledge as to Plaintiff's agreement with its counsel of record. Further, denied that Plaintiff is entitled to an award of attorney fees and costs

---

[1] The Policy was originally with Plaintiff's corporate name identified as "Swamp Cat Holdings LLC", which later was amended by endorsement to Plaintiff's correct legal corporate name, "Swamp Cat Holdings Company, LLC".  Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

2

pursuant to Florida Statute § 627.428.

## **COUNT I BREACH OF CONTRACT**

Zurich re-alleges and incorporates herein by reference its responses set forth in paragraphs 1 through 13, above.

14.    Admitted that in exchange for insurance premiums paid by Plaintiff, Zurich issued the Policy to Plaintiff for the Property, subject to its terms, conditions, and limitations.

15.    Admitted only that Plaintiff has paid the premiums under the Policy. Otherwise, denied. *See* Affirmative Defenses, below.

16.    Admitted only that Plaintiff's representative reported a loss to Zurich on October 15, 2022 for damage from Hurricane Ian that reportedly occurred on September 28, 2022. Further admitted that Zurich determined a portion of Plaintiff's claimed damages were covered under the Policy. All averments not expressly admitted are denied.

17.    Denied. *See* Affirmative Defenses, below.

18.    Denied.

19.    Denied.

All allegations not heretofore specifically admitted or denied as part of Plaintiff's Complaint, including allegations in the WHEREFORE clause, are hereby denied.

## **AFFIRMATIVE DEFENSES**

COMES NOW, AMERICAN ZURICH INSURANCE COMPANY ("Zurich") by and through its undersigned counsel and pursuant to Fla. R. Civ. P. 1.110(d), and asserts the following Affirmative Defenses to Plaintiff's Complaint. If an affirmative defense below is more appropriately a denial, then Zurich will defend accordingly. Zurich does not intend to assume or shift the burden of proof on a denial by raising an affirmative defense. Also,

Zurich reserves the right to supplement or add additional affirmative defenses.  The Policy is attached hereto as **Exhibit 1**.  Where stated, Zurich relies on the Policy for its affirmative defenses, and Zurich incorporates it for all purposes herein.

<u>**FIRST AFFIRMATIVE DEFENSE**</u>
**(Valuation)**

To the extent additional coverage is found to exist, the following Policy provision applies to any claim under the "existing buildings or structures" coverage and any claim under the "renovations and improvements" coverage".

**Remodeler Coverage**
[HBIS-37 (04-09)]
* * *

**SECTION I - CONDITIONS**
* * *

**(4)**  The **Valuation** Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage:

**Valuation**

In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.

**(a)**  The value of "existing buildings or structures" will be "actual cash value."

**(b)**  The value of the "renovations and improvements" will be the lesser of the cost to repair or the cost to replace with like kind and quality to the same point of completion that had been achieved immediately before the loss or damage.
* * *

<u>**SECOND AFFIRMATIVE DEFENSE**</u>
**(Debris Removal)**

Plaintiff's claim for Debris Removal is subject to the following Policy provision:

**Builders Risk Coverage Form**
[40471 (01-20)]
* * *

**A.  COVERAGE**
* * *

**4.  Additional Coverages**
* * *

4

c. **Debris Removal**

We will pay your expenses to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss under this Coverage Form. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage. If the sum of the loss or damage and debris removal expenses exceeds the Limit of Insurance applicable to the property, we will pay an additional amount of debris removal expenses you incur in excess of the Limit of Insurance applicable to the property up to, but not exceeding the Limit of Insurance shown in the Supplemental Declarations for Debris Removal.

\* \* \*

## THIRD AFFIRMATIVE DEFENSE
### (Ordinance Or Law – Direct Damage)

To the extent Plaintiff seeks to recover proceeds for Ordinance Or Law – Direct Damage coverage, such claim is not covered pursuant to the Builders Risk Coverage Supplemental Declarations page:

| h. | Ordinance Or Law – Direct Damage | |
|---|---|---|
| | Loss To The Undamaged Portion Of The Building | Not Covered |
| | Demolition Cost | $ Not Covered |
| | Increased Cost Of Construction | $ Not Covered |
| | Combined Aggregate For Demolition Cost And Increased Cost Of Construction | $ Not Covered |

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's demand for coverage is subject to the following Policy language, stated here in pertinent part:

### Builders Risk Coverage Form
[40471 (01-20)]

\* \* \*

**A. COVERAGE**

\* \* \*

**3. Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

\* \* \*

5

### B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by or resulting from any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

* * *

### e. Water

(1) Flood, surface water, waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not;

(2) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

* * *

(5) Water under the ground surface pressing on, or flowing or seeping through Covered Property;

* * *

But if water, as described in e.(1) through e.(5) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

* * *

As part of its investigation into the Plaintiff's Hurricane Ian claim, Zurich retained Rimkus Consulting Group, Inc. ("Rimkus") to provide an opinion as to the origin, cause, and extent of the claimed damage at the property.

Rimkus observed and opined that the moisture stains and wetness on the floor of the west section of the property did not result from windstorm damage, but were instead the result of "infiltration of groundwater through the exterior wall." Rimkus further

6

observed and opined that these moisture issues was not leakage emanating from damage to the roof of the property.

These issues identified Rimkus are excluded by the above Policy terms. Consequently, there is no coverage under the Policy for these moisture issues.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's demand for coverage is subject to the following Policy language, stated here in pertinent part:

**Builders Risk Coverage Form**
[40471 (01-20)]
* * *

**A. COVERAGE**

* * *

**3. Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

* * *

**B. EXCLUSIONS**

* * *

**2.** We will not pay for a loss or damage caused by or resulting from any of the following:

* * *

**g. (1)** Wear and tear.

* * *

**(6)** Settling, cracking, shrinking, or expansion of any Covered Property.

* * *

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

* * *

**c.** Faulty, inadequate or defective:

* * *

**(4)** Maintenance;

of all or part of any Covered Property wherever located.

7

* * *

As part of its investigation into the Plaintiff's Hurricane Ian claim, Zurich retained Rimkus Consulting Group, Inc. ("Rimkus") to provide an opinion as to the origin, cause, and extent of the claimed damage at the property.

Rimkus observed and opined that the "few cracked roof shingles at various locations were the result of the long-term expansion and contraction of the building materials due to normal thermal variations." Rimkus further observed and opined that the "displaced condition of the roof over the west section of the building was due to the long-term deflection of the wood roof framing (creep)." Finally, Rimkus observed and opined that the "fractured condition of the bottom chord of the middle roof truss was the result of long-term and repeated shrinking and swelling of the wood truss[,]" occurring years ago.

These issues identified Rimkus are excluded by the above Policy terms. Consequently, there is no coverage under the Policy for these issues.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's demand for coverage is subject to the following Policy language, stated here in pertinent part:

**Builders Risk Coverage Form**
[40471 (01-20)]
* * *
### A. COVERAGE
* * *
**3. Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

* * *

### B. EXCLUSIONS
* * *
**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss

8

results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

\* \* \*

**c.** Faulty, inadequate or defective:

\* \* \*

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

\* \* \*

of all or part of any Covered Property wherever located.

\* \* \*

As part of its investigation into the Plaintiff's Hurricane Ian claim, Zurich retained Rimkus Consulting Group, Inc. ("Rimkus") to provide an opinion as to the origin, cause, and extent of the claimed damage at the property.

Rimkus observed and opined that the separation between the chimney flashing and the chimney was not the result of windstorm. Rather, the separation was the result of improper construction, as "a kerf [had not been cut] into the side of the chimney to receive the flashing."

This issue identified Rimkus is excluded by the above Policy terms. Consequently, there is no coverage under the Policy for this issue.

## <u>SEVENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's demand for coverage is subject to the following Policy language, stated here in pertinent part:

### Builders Risk Coverage Form
[40471 (01-20)]

\* \* \*

## A. COVERAGE

\* \* \*

### 3. Covered Cause Of Loss

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

9

\* \* \*

## B. EXCLUSIONS

\* \* \*

**2.** We will not pay for a loss or damage caused by or resulting from any of the following:

\* \* \*

**g. (1)** Wear and tear.

\* \* \*

**(3)** Insects, vermin, rodents.

\* \* \*

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

\* \* \*

**c.** Faulty, inadequate or defective:

\* \* \*

**(4)** Maintenance;

of all or part of any Covered Property wherever located.

\* \* \*

As part of its investigation into the Plaintiff's Hurricane Ian claim, Zurich retained Rimkus Consulting Group, Inc. ("Rimkus") to provide an opinion as to the origin, cause, and extent of the claimed damage at the property.

Rimkus observed and opined that the decay and deterioration of the roof trusses were not caused by windstorm, instead were consistent with conditions resulting from insect infestation.

This issue identified Rimkus is excluded by the above Policy terms. Consequently, there is no coverage under the Policy for this issue.

## <u>EIGHTH AFFIRMATIVE DEFENSE</u>
### (Coinsurance)

To the extent additional coverage is found to exist, the following Policy provision applies to payments issued by Zurich.

10

**Remodelers Non-Reporting Endorsement**
[HBIS-79 (04-09)]
* * *

**A.** Section **E. ADDITIONAL CONDITIONS** is amended as follows:

* * *

    4.  Additional Condition **7. Coinsurance** is replaced by the
following:

**Coinsurance**

If the sum of the Renovations and Improvements limit of
insurance plus the Existing Buildings or Structures limit of
insurance is less that the "remodelers total estimated
completed value" of the property insured, you will bear a
portion of any loss or damage. The amount we will pay is
determined by the following steps:

**a.** Add the Renovations and Improvements limit of insurance
to the Existing Buildings or Structures limit of insurance;

**b.** Divide the sum of paragraph **a.** by the "remodelers total
estimate completed value" of the Covered Property;

**c.** Multiply the amount of the covered loss or damage, before
the application of any deductible, by the percentage
determined in paragraph **b.;**

**d.** Subtract the deductible from the figure determined in
paragraph c.

* * *

## NINTH AFFIRMATIVE DEFENSE
### (Deductible)

As Plaintiff claimed a loss from Hurricane Ian, a windstorm, Plaintiff's recovery is

governed and limited by the applicable policy windstorm deductible percentage of 3%,

subject to a minimum deductible of $1,500.00.

## TENTH AFFIRMATIVE DEFENSE
### (Mortgagee)

Plaintiff's recovery, if any, is governed and limited by the following conditions as

set forth in the Policy and stated here in pertinent part:

**Mortgage Holders Clause-Non Reporting Form**
[HBIS-30 (06-17)]

11

\* \* \*

Section **E. ADDITIONAL CONDITIONS, 5.b.** is replaced with the
following:

We will pay for covered loss or damage to Covered Property to
the mortgage holder(s) designated in the Schedule above.

\* \* \*

Specifically, pursuant to the Endorsement, the mortgagee is identified as Sanibel

Captiva Community Bank ISAOA. Therefore, pursuant to the terms of the Policy, any

recovery by Plaintiff will be paid to Plaintiff and Sanibel Captiva Community Bank ISAOA.

WHEREFORE, the Defendant, AMERICAN ZURICH INSURANCE COMPANY,

respectfully requests judgment in its favor, costs of this action, and such other relief as

this Court deems appropriate under the circumstances.  Defendant demands a jury trial

on all issues so triable as a matter of right.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary: ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
              nsahadeo@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for American Zurich Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

      Carlos L. Santi, Esq.
      Property & Casualty Law Group
      2307 Douglas Road, Suite 302
      Miami, Florida 33145
      CSanti@pclawgroup.com
      *Attorneysl for Plaintiff*

by e-Portal on June 8, 2023.

      WILLIAM B. COLLUM, ESQ.

13



# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.



U-GU-873-A CW  (06/11)
Page 1 of 1

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.



# Important Notice to Florida Policyholders

In the event you need to contact someone about this policy, for any reason, please contact your agent.  If you have additional questions, you may contact the Zurich U.S. office at the following address and telephone number:

Customer Inquiry Center

Zurich North America

1299 Zurich Way

Schaumburg, IL 60196

800-382-2150

If you have been unable to contact or obtain satisfaction from your agent or company, you may contact the Florida Office of Insurance Regulation at:

Office of Insurance Regulation

200 East Gaines Street

Tallahassee, Florida 32399

850-413-3140

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

U-GU-395-D (07/09)
Page 1 of 1

# FLORIDA FRAUD STATEMENT

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

HBIP-42



# PAYMENT INSTRUCTIONS

## FOR THE ZURICH BUILDERS RISK INSURED

Thank you for trusting the Builders Risk Plan insured by Zurich for your construction project.

**The following policy is not your invoice. A separate premium invoice for your Zurich Builders Risk policy will be mailed directly to you within 48 hours after being issued by your agent.** The premium invoice will be addressed from US Assure, the exclusive program administrator and services provider for the Builders Risk Plan insured by Zurich.

To help ensure no lapse in coverage occurs, payment for your policy should be remitted to US Assure at the following address by the due date shown on the invoice:

**US Assure**
**P.O. Box 935597**
**Atlanta, GA 31193-5597**

For billing-related support, contact our dedicated team at (855) 872 - 7787 Monday through Friday, 7:30 a.m. to 7:30 p.m. Eastern time.

Your insurance agent or broker continues to be your primary contact for policy servicing and general inquiries.

## BUILDERS RISK COVERAGE DECLARATIONS

| | |
|---|---|
| The Declarations, Supplemental Declarations, Common Policy Conditions, Commercial Inland Marine Conditions, Coverage Form(s) And Endorsement(s), if any, issued to and forming a part thereof, complete the Commercial Insurance Policy numbered as follows: | **American Zurich Insurance Company**<br>**A Stock Company**<br>Administrative Office: **1299 Zurich Way**<br>**Schaumburg, IL 60196  Phone: 800-382-2150** |

☒ **New Policy**   **ER74033179**
☐ **Renewal of**
☐ **Rewrite of**

**THIS IS A COINSURANCE CONTRACT**

Please read your policy.

In return for the payment of the premium, and subject to all terms of this policy, we agree with you to provide the insurance as stated in this policy.

**1. Named Insured and Mailing Address:**

Swamp Cat Holdings LLC
1943 Fowler St
Fort Myers, FL 33901

**2. Producer Information:**

A  Name: US ASSURE INSURANCE SERVICES OF FLORIDA, INC.
P.O. BOX 10197
JACKSONVILLE, FL 32247-0197
B  Telephone #
C  Fax #
D  Zurich Producer # A0209259
E  Field Office Name
F  Field Office Code

**3. Policy Period – From:** 07/20/2022   **To:** 01/20/2023
12:01 a.m. at your mailing address above.

**4. Form of Business:** ☐ Individual ☐ Partnership ☐ Corporation ☐ Joint Venture ☒ Other LLC
**5. Limits of Insurance (*either* One-Shot *or* Reporting Form *as indicated below*)**

### ☒ SUPPLEMENTAL DECLARATIONS
(If this box is checked, Supplemental Declarations is attached to and forms a part of this policy)

| | |
|---|---|
| ☐ **Reporting Form (continuous policy)**<br>☐ **Annual Rate**   ☐ **Monthly Rate (HBIS – 4)** | ☒ **One-Shot (non-reporting form/single structure policy)**<br>☐ **1-4 Family Dwelling**   ☒ **Commercial Structure**<br>Property Location |
| A) Any one building or structure          $<br>B) All covered property at all locations  $<br>C) Rate                         Per Report<br>D) Premium                      Per Report<br>E) Total Taxes and Surcharges   Per Report<br>  (per attached endorsement – N/A in NY)<br>F) **Total Fully Earned Policy Premium**  Per Report | 1943 Fowler St<br>Fort Myers, FL 33901<br><br>**New Construction**<br>A) Any one building or structure          $<br><br>B) All covered property at all locations  $<br>  (same as A unless otherwise noted)<br>**Remodeling**<br>D) Renovations and improvements    $   400,000<br>E) Existing buildings or structures  $   775,000<br><br>F) Rate                      $   0.499<br>G) Premium                   $   5,863.00<br>H) Total Taxes and Surcharges $   117.26<br>  (per attached endorsement)<br><br>I) **Total Fully Earned Policy Premium** $   5,980.26<br>  (minimum premium applicable) |

**6. Deductible:** ☐$500 ☐$1,000 ☐$2,500 ☐$5,000 ☒Other $1,500

**7. Forms Applicable To This Coverage Part:**
### SEE SCHEDULE OF FORMS AND ENDORSEMENTS

Countersigned: _____   By: _____
                          Date                                        Authorized Representative

FM-170001 (04-10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| ER74033179 | From 07/20/2022 to 01/20/2023 | American Zurich Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Swamp Cat Holdings LLC<br>1943 Fowler St<br>Fort Myers, FL 33901 | US ASSURE INSURANCE SERVICES OF FLORIDA, INC.<br>P.O. BOX 10197<br>JACKSONVILLE, FL 32247-0197 |

**COVERAGE PARTS AFFECTED**

Builders Risk Coverage

## CHANGES

2022 FIGA Regular Assessment: 0.7%   $41.04
2022-2023 FIGA Regular Asmt: 1.3%   $76.22

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85                                                                          Page 1  of  1

## BUILDERS RISK COVERAGE SUPPLEMENTAL DECLARATIONS

**Policy Number:** ER74033179
**Policy Type:** ☐ Reporting Form (continuous policy) OR ☒ One Shot (non-reporting form/single structure policy)

| ADDITIONAL COVERAGES (COVERAGE FORM) | | LIMIT OF INSURANCE |
|---|---|---|
| a. | Collapse | Included |
| b. | Scaffolding, Construction Forms And Temporary Structures | $ 50,000 |
| | Re-erection Of Scaffolding | $ 25,000 |
| c. | Debris Removal | $ 50,000 |
| d. | Back-Up Or Overflow Of Sewers, Drains Or Sumps | $ 25,000 |
| e. | Fire Department Service Charge | $ 25,000 |
| f. | Valuable Papers And Records | $ 50,000 |
| g. | Pollutant Clean-Up And Removal | $ 25,000 |
| h. | Ordinance Or Law – Direct Damage | |
| | Loss To The Undamaged Portion Of The Building | Not Covered |
| | Demolition Cost | $ Not Covered |
| | Increased Cost Of Construction | $ Not Covered |
| | Combined Aggregate For Demolition Cost And Increased Cost Of Construction | $ Not Covered |
| i. | Preservation Of Property | Included |
| j. | Rewards | $ 25,000 |
| k. | Property At A Temporary Storage Location | $ 58,750 |
| l. | Property In Transit | $ 58,750 |
| m. | Claim Preparation Expense | $ 10,000 |
| n. | Contract Penalties | $ 25,000 |

**OPTIONAL ADDITIONAL COVERAGES (ENDORSEMENTS)**

☐ **Business Income (HBIS-95)** $
    Anticipated Project Completion Date
    Monthly Limit Of Indemnity (fraction)
    Deductible Period days
    Civil Authority

☐ **Business Income And Extra Expense (HBIS-82)** $
    Anticipated Project Completion Date
    Monthly Limit Of Indemnity (fraction)
    Deductible Period days
    Business Income
    Extra Expense
    Civil Authority

☐ **Development Or Subdivision Fences, Walls And Signs (HBIS-58)** $

☐ **Expediting Expense (HBIS-93)** $

☐ **Extra Expense (HBIS-92)** $

☐ **Marine Model Home Contents Coverage (☐ HBIS-52 – OR -- ☐ HBIS-77)** $

☐ **Soft Costs Coverage (HBIS-88)** $
    Anticipated Project Completion Date
    Deductible Period days
    Expense To Mitigate Loss
    Civil Authority

☐ **Builders Risk Green Building (HBIS-96)**
    Limit Of Liability $
    "LEED® Building Rating"

HBIS-91 (01 20)

**Policy Number** ER74033179

### SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured: Swamp Cat Holdings LLC                Effective Date: 07/20/2022

                                                     12:01 A.M., Standard Time

Agent Name: US ASSURE INSURANCE SERVICES OF FLORIDA, INC.    Agent No.: A0209259

FM170001(04/10), IL1201(11/85), HBIS-91(01/20), U-GU-619-A CW(10/02), U-GU-319-F(01/09), 40471(01/20), HBIS-37(04/09), HBIS-79(04/09), HBIS-43(01/20), HBIS-67(01/20), HBIS-65(04/09), HBIS-83(06/17), HBIS-84(04/09), HBIS-30(06/17), U-GU-630-E CW(01/20), U-GU-767-B CW(01/15), IL0003(09/08), CM0001(09/04), IL0175(09/07), CM0116(05/22), IL0017(11/98), IL0255(03/16), 1001NR(01/20), U-GU-1191-A CW(03/15)

**U-GU-619-A CW (10/02)**



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

[               ]          [               ]

President                              Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**   Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

U-GU-319-F  (01/09)
Page 1 of 1

# Builders Risk Coverage Form



Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Words and phrases that appear in quotation marks have special meaning.  Refer to Section **F. DEFINITIONS**.

Coverage provided by Coverage Form is also subject to all Conditions in the Common Policy Conditions and Commercial Inland Marine Conditions forms.

## A. COVERAGE

We will pay for direct physical loss or damage to Covered Property from a Covered Cause of Loss described in this Coverage Form.

1. **Covered Property**, as used in the Coverage Form, means:

   Property which has been installed or is to be installed in any "commercial structure" or any one to four family dwelling, private garage or other structure that will be used to service the "commercial structure" or one to four family dwelling at the location which you have reported to us. This includes:

   **a.** Your property;

   **b.** Property of others for which you are legally responsible;

   **c.** Paving, curbing, fences and outdoor fixtures;

   **d.** Trees, shrubs, plants, grass, lawns and landscaping materials installed by you or on your behalf;

   **e.** Completed single family dwelling which is being used as a model home when reported to us as such on monthly reports with an amount shown; and

   **f.** Foundations of buildings and foundations of structures in the course of construction.

2. **Property Not Covered**

   Covered Property does not include:

   **a.** Existing buildings or structures to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

   **b.** Plans, blueprints, designs or specifications, except as provided in paragraph **A.4. Additional Coverage** of this Coverage Form;

   **c.** Land and water;

   **d.** "Existing inventory", unless specifically endorsed;

   **e.** Contractors' tools, equipment, machinery and property of a similar nature not designated to be a permanent part of the location which you have reported to us; and

   **f.** Outdoor trees, shrubs, plants, grass, lawns and landscaping materials that existed prior to the policy's effective date at a location which you have reported to us.

40471 (01-20)
Page 1 of 15

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**3. Covered Cause Of Loss**

Covered Cause of Loss means risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section **B. EXCLUSIONS**.

**4. Additional Coverages**

**a. Collapse**

We will pay for direct physical loss or damage to Covered Property, caused by "collapse" of all or part of a building or structure insured under this Coverage Form, if the "collapse" is caused by one or more of the following:

**(1)** Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riots; civil commotion; vandalism; breakage of glass; falling objects; weight of snow, ice or sleet;

**(2)** "Water damage", but only if the causes of loss are otherwise covered in this Coverage Form;

**(3)** Hidden decay;

**(4)** Hidden insect or vermin damage;

**(5)** Weight of people or personal property;

**(6)** Weight of rain that collects on a roof; or

**(7)** Use of defective materials or methods in construction, remodeling or renovation if the "collapse" occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in the Coverage Form.

**b. Scaffolding, Construction Forms And Temporary Structures**

**(1)** We will pay for direct physical loss or damage caused by or resulting from a Covered Cause of Loss to scaffolding, construction forms and temporary structures, including fully enclosed office and tool trailers, but only while they are at a construction site you have reported to us. The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Scaffolding, Construction Forms And Temporary Structures.

**(2)** We will also pay for the cost of re-erection of the scaffold if the loss or damage of the scaffolding is caused by or results from a Covered Cause of Loss. The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Re-erection Of Scaffolding.

No deductible applies to this Additional Coverage.

**c. Debris Removal**

We will pay your expenses to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss under this Coverage Form. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage. If the sum of the loss or damage and debris removal expenses exceeds the Limit of Insurance applicable to the property, we will pay an additional amount of debris removal expenses you incur in excess of the Limit of Insurance applicable to the property up to, but not exceeding the Limit of Insurance shown in the Supplemental Declarations for Debris Removal.

This Additional Coverage does not apply to costs to:

**(1)** Extract "pollutants" from land or water; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Remove, restore or replace polluted land or water.

No deductible applies to this Additional Coverage.

**d. Back-Up Or Overflow Of Sewers, Drains Or Sumps**

We will pay for loss or damage to Covered Property caused by water that backs up or overflows from a sewer, drain or sump from within the reported location.

The most we will pay for all loss or damage caused by or resulting by back-up or overflow of sewers, drains or sumps is the Limit of Insurance, for any one occurrence, shown in the Supplemental Declarations for Back-Up Or Overflow Of Sewers, Drains Or Sumps.

No deductible applies to this Additional Coverage.

**e. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for the fire department service charges which are:

**(1)** Assumed by contract or agreement prior to loss or damage; or

**(2)** Required by local ordinance or law.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Fire Department Service Charge.

No deductible applies to this Additional Coverage.

**f. Valuable Papers And Records**

We will pay for direct physical loss or damage to "valuable papers and records" caused by or resulting from a Covered Cause of Loss.

When there is a duplicate, we will pay for the blank materials for reproducing the records and labor to transcribe or copy the records. When there is no duplicate, we will pay the costs to research, replace, restore or reproduce the lost information on lost or damaged "valuable papers and records".

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Valuable Papers And Records.

No deductible applies to this Additional Coverage.

**g. Pollutant Clean-Up And Removal**

We will pay your expense to extract "pollutants" from land or water at locations reported to us if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

The most we will pay for this Additional Coverage is the Limit of Insurance shown on the Supplemental Declarations for Pollutant Clean-Up And Removal during each separate 12 month period from the effective date of the policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

No deductible applies to this Additional Coverage.

**h.  Ordinance Or Law – Direct Damage**

  **(1)**  Coverage For Loss To Undamaged Portion Of The Building Or Structure

    **(a)**  If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for loss or damage to the undamaged portion of the property as a consequence of enforcement of any ordinance or law that:

      **(i)**  Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

      **(ii)**  Regulates the construction or repair of property, or establishes zoning or land use requirements at the construction site; and

      **(iii)** Is in force at the time of loss or damage.

    **(b)**  Coverage for loss or damage to the undamaged portion of the structure is included within the applicable Limit of Insurance for that location.  This is not additional insurance.

  **(2)**  Demolition Cost Coverage

    **(a)**  If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay the cost to demolish and clear the construction site of undamaged parts of the property, as a consequence of enforcement of building, zoning or land use ordinance or law.

    **(b)**  The most we will pay for Demolition Cost Coverage is the amount of loss or damage or the Limit of Insurance shown in the Supplemental Declarations for Demolition Cost, whichever is less.

  **(3)**  Increased Cost Of Construction Coverage

    **(a)**  If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for the increased cost necessary to repair, rebuild or reconstruct the damaged portions of that Covered Property when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law. If the Covered Property is repaired or rebuilt, it must be intended for the same occupancy as the property prior to the loss or damage, unless otherwise required by zoning land use ordinance or law.

    **(b)**  If the ordinance or law requires relocation to another site, we will pay the increased cost of construction at the new site as set forth below in paragraph **(c)** below.

    **(c)**  The most we will pay for Increased Cost of Construction Coverage is the amount of loss or damage or the Limit of Insurance shown in the Supplemental Declarations for Increased Cost Of Construction, whichever is less.

    **(d)**  We will not pay under this coverage for costs associated with the enforcement of any ordinance or law that was in effect prior to the start of the construction at the location you have reported to us.

  **(4)**  The most we will pay in total for Demolition Cost Coverage and Increased Cost of Construction Coverage for loss or damage from any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Combined Aggregate For Demolition Cost And Increased Cost Of Construction.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(5)** We will not pay under this Additional Coverage for costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**(6)** We will not pay under this Additional Coverage for costs associated with the enforcement of any ordinance or law for existing buildings or structures.

**i.  Preservation Of Property**

If it is necessary to move Covered Property from the location reported to us or described on the Declarations, to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

This Additional Coverage is part of, and not in addition to, the Limit of Insurance applicable to the Covered Property.

**j.  Rewards**

At our option, we may reimburse you for rewards you pay, other than to you, your partners or officers, for information which leads to the conviction of any one or more persons responsible for loss or damage covered under this Coverage Form.  Payment and the amount of any reimbursement will be at our sole discretion.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Rewards.

**k.  Property At A Temporary Storage Location**

We will pay for direct physical loss or damage caused by a Covered Cause of Loss to Covered Property while temporarily in storage at a location other than a location which you have reported to us.

We will not pay under this Additional Coverage for property in storage if the property has not been specifically allocated to or otherwise identified with a covered building or structure.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Property At A Temporary Storage Location.

**l.  Property In Transit**

We will pay for direct physical loss or damage caused by a Covered Cause of Loss to Covered Property while in transit.

The most we will pay for this Additional Coverage is the Limit of Insurance shown in the Supplemental Declarations for Property In Transit.

**m.  Claim Preparation Expense**

We will reimburse your actual costs for reasonable and necessary claim preparation expenses, as requested by us for determining the amount of loss or damage, prior to finalizing a claim adjustment, as a result of a Covered Cause of Loss.

**(1)** Claim preparation expense means the expense incurred by you for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **(a)** Your employees to produce or certify any particulars or details contained within your books or documents, or such other proofs, information or evidence required by us;

    **(b)** Taking inventory, conducting independent appraisals, or gathering and preparing other data to substantiate the amount of loss or damage; and

    **(c)** Services provided by accountants, auditors, contractors, architects and engineers or other professionals solely for the purpose of determining the amount of loss or damage.

**(2)** Claim preparation expense does not mean the expense incurred for:

    **(a)** Negotiating or presenting any claim that we have disputed or denied;

    **(b)** Attorneys, public adjusters, loss appraisers or loss consultants; or

    **(c)** Examinations under oath, even if requested by us.

This Additional Coverage does not apply until a claim for covered loss or damage to Covered Property has been submitted to and accepted by us. In the event that the amount of covered loss or damage does not exceed the applicable Deductible, no coverage will apply under this Additional Coverage.

The most we will pay for this Additional Coverage in any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Claim Preparation Expense.

No deductible applies to this Additional Coverage.

**n. Contract Penalties**

If the first Named Insured is a general contractor, we will pay contractual penalties the first Named Insured is legally liable to pay under the provisions of a written construction contract signed prior to the start of construction for late or non-completion of construction due to direct physical loss or damage to Covered Property from a Covered Cause of Loss at the location which you have reported to us.

The most we will pay for this Additional Coverage in any one occurrence is the Limit of Insurance shown in the Supplemental Declarations for Contract Penalties.

No deductible applies to this Additional Coverage.

Paragraph **2.e.** of Section **B. EXCLUSIONS** does not apply to this Additional Coverage.

## B. EXCLUSIONS

**1.** We will not pay for loss or damage caused directly or indirectly by or resulting from any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**a. Governmental Action**

Seizure or destruction of property by order of any governmental authority. But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if that fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But if nuclear reaction or radiation contamination results in fire, we will pay for the loss or damage caused by that fire.

**c. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d. Earth Movement**

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(2)** Volcanic Action

Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion does not apply to Covered Property while in transit.

**e. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, tsunami, overflow of any body of water or their spray, all whether driven by wind or not;

**(2)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(3)** Mudslide or mudflow;

**(4)** Water that backs up or overflows from a sewer, drain or sump, except as provided in the **Back-Up Or Overflow Of Sewers, Drains Or Sumps** Additional Coverage;

40471 (01-20)
Page 7 of 15

**(5)** Water under the ground surface pressing on, or flowing or seeping through Covered Property;

**(6)** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing unless you:

**(a)** Do your best to maintain heat in the building or structure; or

**(b)** Drain the equipment and shut off the supply if the heat is not maintained.

But if water, as described in **e.(1)** through **e.(5)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for a loss or damage caused by or resulting from any of the following:

**a.** Delay, loss of use, or loss of market. This does not include "profit" if reported in compliance with the **Reporting Provisions** Additional Condition.

**b.** Dishonest or criminal acts by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

This exclusion applies:

**(1)** While acting alone or in collusion with others; and

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of physical destruction by your employees or leased employees.

This exclusion does not apply to Covered Property while it is entrusted to others who are carriers for hire.

**c.** Unexplained or mysterious disappearance except for property in custody of a carrier for hire.

**d.** Shortage of property found upon taking inventory.

**e.** Penalties for noncompliance with contract conditions, except as provided in the Contract Penalties Additional Coverage.

**f.** "Collapse", except as provided in the **Collapse** Additional Coverage.

**g.** **(1)** Wear and tear.

**(2)** Any quality in the property itself that causes it to damage or destroy itself; or that causes gradual deterioration.

**(3)** Insects, vermin, rodents.

**(4)** Corrosion, rust, fungus, mold, mildew, rot.

**(5)** Dampness, changes in or extremes of temperatures, all whether atmospheric or not.

**(6)** Settling, cracking, shrinking, or expansion of any Covered Property.

**h.** Rain, snow, sleet, sand or dust that damages Covered Property that is in the open awaiting installation at the location reported to us. This does not apply to Covered Property in the custody of a carrier for hire.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**i.** Artificially generated electrical current; mechanical breakdown; rupturing or bursting caused by centrifugal force.

**j.** Testing, start-up, commissioning, examination or trial of Covered Property such as boilers, ovens, stoves, turbines, pumps, process equipment or equipment of a similar nature to prove their ability or function. This includes any form of testing making use of feedstock, including operational tests, performance tests, or other tests performed in conjunction with such testing. This exclusion does not apply to "electrical testing", "mechanical testing", "pneumatic testing" or "hydrostatic testing" used in the start-up and testing of building systems that are intended to service a building.

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions which contribute in any way to a cause or event excluded in paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, or organization representing a governmental, regulatory or controlling body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of all or part of any Covered Property wherever located.

**d.** The discharge, dispersal, seepage, migration, release or escape of "pollutants", except as provided under **Pollutant Clean-Up And Removal** Additional Coverage.

## C. LIMITS OF INSURANCE

The most we will pay for loss or damage to any one building or structure is the lesser of the Limit of Insurance shown in the Declarations for that one building or structure or the "total estimated completed value" that was reported to us for that one building or structure. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance shown in the Declarations for all Covered Property at all locations.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of covered loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of the covered loss or damage which exceeds the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Inland Marine Conditions:

## 1. Coverage Territory

The coverage territory is United States of America (including its territories and possessions).

40471 (01-20)
Page 9 of 15

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2. Where Coverage Applies**

This coverage applies to Covered Property while within the coverage territory while:

**a.** At any construction site you have reported;

**b.** Temporarily at other premises, if the property has been designated to be installed at a location you have reported to us; or

**c.** In transit except imports or exports while ocean marine coverage applies.

**3. When Coverage Begins And Ends**

We will cover risk of loss or damage from the time when you are legally responsible for the Covered Property on or after the effective date of this policy if all other conditions are met. Coverage will end at the earliest of the following:

**a.** Once your interest in the Covered Property ceases;

**b.** Ninety days after initial occupancy of the Covered Property unless:

    **(1)** That building is being used as a model home;

    **(2)** That building is being remodeled and is a single family dwelling; or

    **(3)** That building is being used as a "model home leaseback".

**c.** When the Covered Property is leased to or rented to others:

    **(1)** For a single family dwelling, when the building is leased or rented to others;

    **(2)** For a two, three or four family dwelling, when 50% or more of the units in the structure are leased to or rented to others; or

    **(3)** For a "commercial structure", when 75% or more of the square footage space is leased to or rented to others.

This does not apply to pre-leases established prior to construction.

**d.** When you abandon the reported location with no intention to complete it;

**e.** At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the **Reporting Provisions** Additional Condition. You have the option to report the same location a third time at the end of the second 12 month period, provided the required additional premium is paid. Coverage for this third 12 month term will end at the end of 12 months from the month you re-reported the location for a third term; or

For coverage on existing buildings or structures that are being or have been remodeled, at the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below. There is no option to report a third year.

**f.** When permanent property insurance applies, whether procured by an insured hereunder or by the owner or purchaser; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**g.** Once the Covered Property is accepted by the owner or buyer and:

    **(1)** The contractor has been paid in full; or

    **(2)** The transfer of ownership has taken place.

**4. Reporting Provisions**

**a.** Each month you must report to us the "total estimated completed values" of all Covered Property for each location started during the previous month. This report must be made on the form we provide.

For the purpose of these reports, a location is started when you first put any building materials (including the foundation) on the construction site.

If your policy is endorsed to provide coverage for existing structures that you are renovating or adding onto and for which you seek coverage, a location is started on the earlier of the following:

    **(1)** When you first put any building materials, which includes any new, altered or expanded foundation, on the site; or

    **(2)** When you acquire title to the existing structure.

**b.** You must pay premiums based on the "total estimated completed value" of the Covered Property using the rate we furnish. You must send your premium payment with the report for the reported locations to be covered. We must receive your report and the accompanying premium payments at the address designated in our form by the last business day of the month in which the report is due, or the report is late.

**c.** If a report is received late, coverage begins on the day the report is received, and there is no coverage for any loss or damage that occurred before that report was received. Our acceptance of a report of values and premium payment does not waive or change any part of this policy or stop us from asserting any right we have under the terms of this policy.

**d.** The premium charged is fully earned and no refund is due you when coverage ends.

**e.** A dwelling being used as a model home must be reported and should be identified as a model home.

**f.** You will keep accurate construction records regarding property we cover under this policy. This includes the "total estimated completed value" of the Covered Property and a record of all contracts of sale dealing with the Covered Property.

**g.** If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. If at the end of the second 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a third time.

For coverage on existing buildings or structures that are being or have been remodeled, if at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. There is no option to report a third time.

**h.** Cancellation of this policy will not affect the insurance in force on any location which you have reported to us or on any location which started before the effective date of the cancellation notice if that location is reported on the report due and premium payment is made. However, you cannot report any location currently in your inventory a second time after the effective date of cancellation.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, coverage may be canceled on any location if notice is given in writing in accordance with the cancellation provision in the Common Policy Conditions, or state amendatory endorsements.

**5.  Mortgage Holders Clause**

**a.**  The term mortgage holder includes trustees.

**b.**  We will pay for covered loss or damage to Covered Property to each mortgage holder shown on a Certificate of Insurance issued by the current Agent of Record.

**c.**  The mortgage holder has the right to receive payment for loss or damage even if the mortgage holder has started foreclosure or similar action on the Covered Property.

**d.**  If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive payment for loss or damage to Covered Property if the mortgage holder:

**(1)**  Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)**  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)**  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.**  If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)**  The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)**  The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**  If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)**  10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)**  30 days before the effective date of cancellation if we cancel for any other reason.

**g.**  We will not notify the mortgage holder if:

**(1)**  You cancel this policy, or

**(2)**  Coverage ends for any reason other than if we cancel the policy.

**6.  Waiver Of Coinsurance**

If there is loss or damage to Covered Property and the cost to repair or replace such property is less than or equal to $25,000, we will adjust the loss or damage without regard to the **Coinsurance** Additional Condition.

**7.  Coinsurance**

40471 (01-20)
Page 12 of 15

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If the reported value is less than the "total estimated completed value", you will bear a portion of any loss or damage. The amount we will pay is determined by the following steps:

**a.** Divide the reported value by the "total estimated completed value" of the Covered Property;

**b.** Multiply the total amount of the covered loss or damage before the application of any deductible by the percentage determined in paragraph **a.**; and

**c.** Subtract the deductible from the figure determined in paragraph **b.**

**Example No. 1**

(This example assumes there is no penalty for underinsurance.)

Deductible                                $1,000

Reported Value                            $100,000

"Total Completed Estimated Value"         $100,000

Amount of loss or damage                  $60,000

**a.** Reported value divided by "total estimated completed value"

$100,000/$100,000 = 1.00

**b.** Amount of loss or damage multiplied by percentage in paragraph **a.**

$60,000 x 1.00 = $60,000

**c.** Deductible amount subtracted from result of paragraph **b.**

$60,000 - $1,000 = $59,000

**Example No. 2**

(This example assumes there is a penalty for underinsurance)

Deductible                                $1,000

Reported Value                            $100,000

"Total estimated completed value"         $120,000

Amount of loss or damage                  $60,000

**a.** Reported value divided by "total estimated completed value"

$100,000/$120,000 = .833

**b.** Amount of loss or damage multiplied by percentage in paragraph **a.**

$60,000 x .833 = $49,980

**c.** Deductible amount Subtracted from result of paragraph **b.**

$49,980 - $1,000 = $48,980

**8. Liberalization Clause**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If we adopt any revision which would broaden the coverage under this Coverage Form without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Form.

**9. Interest Of Subcontractors, Sub-Subcontractors, Suppliers**

We cover the interest which your subcontractors, your sub-subcontractors and your suppliers have in the Covered Property, but only while such property is situated at a construction site you have reported to us. This condition does not impair any right of subrogation we would otherwise have.

**10. Unintentional Failure To Disclose Hazards**

Your failure to disclose all hazards existing as of the inception date of the policy shall not affect the coverage afforded by this policy, provided such failure to disclose all hazards is not intentional and the hazard is reported to us as soon as practicable after you learn about it.

## F. DEFINITIONS

1. "Collapse" means the abrupt falling down or the caving in of a building or structure or a part of a building or structure with the result that the building or structure cannot be occupied for its intended use:

    a. A part of a building or structure that is in danger of falling down or caving in is not considered to be in a state of collapse;

    b. A part of a building or structure that is standing is not considered to be in the state of collapse even if it is separated from another part of a building or structure;

    c. A building or structure that is standing or any part of a building or structure that is standing is not considered to be in the state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. "Commercial structure" means any structure other than a one to four family dwelling.

3. "Electrical testing" means the testing of systems that are operated by electricity, excluding service equipment and service conductors, electrical systems greater than 600 volts nominal and electrical systems that are greater than single phase.

4. "Existing inventory" means buildings or structures where construction was started and more than 30% of the "total estimated completed value" was completed prior to the inception date of this policy.

5. "Hydrostatic testing" means testing through the use of water or other fluids, which are processed through the machinery or system being tested.

6. "Mechanical testing" means testing of moving parts of equipment and components, which are part of the buildings or structures insured, by operation of such equipment or components.

7. "Model home leaseback" means a dwelling purchased from the Insured and is then leased back to the Insured, by the purchaser, to be used by the Insured as a model home until the purchaser occupies the dwelling as a residence.

8. "Overhead" means those business expenses, other than materials and labor, incurred either directly or indirectly due to the construction of a dwelling or structure.

9. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

40471 (01-20)
Page 14 of 15

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**10.** "Pneumatic testing" means testing through the use of compressed air or other gas to fill test cavities which is processed through the machinery or system being tested.

**11.** "Profit" means the difference between the selling price of the land and completed structure and your cost of the land and the completed structure. If you do not have a signed contract for the sale of the completed structure and land, the allowance for "profit" will not exceed 20%.

**12.** "Total estimated completed value" means all costs associated with the building and designing of the Covered Property including labor, "overhead" and materials and if included, "profit".

**13.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.  However, "valuable papers and records" does not mean:

    **a.** Money or securities;

    **b.** Converted data; or

    **c.** Programs or instructions used in your data processing operation, including the materials on which the data is recorded.

**14.** "Water damage" means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

40471 (01-20)
Page 15 of 15

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Remodeler Coverage



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

The following is added to Section **A. COVERAGE**, Paragraph **4. Additional Coverages**

**Remodeler Coverage**

**(1)** We will pay for loss or damage due to a Covered Cause of Loss to "existing buildings or structures" described in the Declarations to which "renovations and improvements" are being made.

**(2)** Paragraph **a.** in **Property Not Covered** does not apply to this Additional Coverage.

**(3)** The most we will pay under this Additional Coverage for loss or damage to "existing buildings or structures" is the amount shown in the Declarations for Existing Buildings Or Structures. The most we will pay under this Additional Coverage for loss or damage to "renovations and improvements" is the amount shown in the Declarations for Renovations And Improvements.

**(4)** The **Valuation** Condition, found anywhere in the policy, is replaced by the following with respect to this Additional Coverage:

**Valuation**

In the event of loss or damage, the value of the property will be determined as of the time of loss or damage.

**(a)** The value of "existing buildings or structures" will be "actual cash value".

**(b)** The value of the "renovations and improvements" will be the lesser of the cost to repair or the cost to replace with like kind and quality to the same point of completion that had been achieved immediately before the loss or damage.

**(5)** **Additional Condition**

The following Additional Condition applies to this Additional Coverage:

**Ongoing Construction Activity**

During the policy period when no "construction activity" has been performed within 60 consecutive days before the loss or damage occurs:

**(a)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(i)** Vandalism;

**(ii)** Sprinkler leakage, unless you have protected the system against freezing;

**(iii)** Building glass damage;

**(iv)** "Water damage";

**(v)** Theft; or

**(vi)** Attempted theft.

HBIS-37 (04-09)
Page 1 of 2

**(b)** With respect to Covered Causes of Loss other than those listed in **(1)** through **(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**(6) Additional Definitions**

The following Additional Definitions apply to this Additional Coverage

**(a)** "Actual cash value" means the cost to repair or replace the lost or damaged Covered Property reduced by each of the following:

**(i)** Physical deterioration;

**(ii)** Depreciation;

**(iii)** Obsolescence;

**(iv)** Depletion;

**(v)** Non-conformity to codes, regulations, or statutes; and

**(vi)** The cost to reconstruct or remodel undamaged portions of property.

But in no event will "actual cash value" be more than the market value of the property excluding land as determined by the price which the property excluding land might be expected to realize prior to loss or damage if offered for sale in a fair market on the date of the loss or damage.

**(b)** "Construction activity" means repair, replacement, or installation, including painting.

**(c)** "Existing buildings or structures" means a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation. "Existing buildings or structures" only includes those parts of standing buildings or structures that are intended to become a permanent part of buildings or structures during renovation or rehabilitation. This does not include "renovations and improvements".

**(d)** "Renovations and improvements" means your additions, alterations, improvements or repairs to the property location specified in the Declarations including materials and supplies, attachments, and fixtures which have been installed, or will be installed in the "existing buildings or structures". This does not include "existing buildings or structures".

**(e)** "Remodelers total estimated completed value" means the "actual cash value" of the "existing buildings or structures", plus the estimated cost of your "renovations and improvements" at the conclusion of the project. This does not include "overhead" or "profit".

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Remodelers Non-Reporting Endorsement



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

**A.** Section **E. ADDITIONAL CONDITIONS** is amended as follows:

1. Paragraph **e.** in Additional Condition **3. When Coverage Begins And Ends** is replaced by the following:

   **e.** Upon expiration of the policy period.

2. Additional Condition **4. Reporting Provisions** is deleted.

3. Additional Condition **6. Waiver Of Coinsurance** is deleted.

4. Additional Condition **7. Coinsurance** is replaced by the following:

   **Coinsurance**

   If the sum of the Renovations and Improvements limit of insurance plus the Existing Buildings or Structures limit of insurance is less than the "remodelers total estimated completed value" of the property insured, you will bear a portion of any loss or damage.  The amount we will pay is determined by the following steps:

   **a.** Add the Renovations and Improvements limit of insurance to the Existing Buildings or Structures limit of insurance;

   **b.** Divide the sum of paragraph **a.** by the "remodelers total estimated completed value" of the Covered Property;

   **c.** Multiply the amount of the covered loss or damage, before the application of any deductible, by the percentage determined in paragraph **b.**;

   **d.** Subtract the deductible from the figure determined in paragraph **c.**

   **Example No. 1**

   (This example assumes there is <u>no</u> penalty for underinsurance)

   | | |
   |---|---|
   | Renovations and Improvements Limit | $200,000 |
   | Existing Buildings or Structures Limit | $100,000 |
   | "Remodelers total estimated completed value" | $300,000 |
   | Deductible | $1,000 |
   | Amount of "renovations and improvements" covered loss or damage | $50,000 |
   | Amount of "existing buildings or structures" covered loss or damage | $40,000 |

   **a.** Renovations and Improvements Limit plus Existing Buildings or Structures Limit

   $200,000 + $100,000 = $300,000

   **b.** Sum from paragraph **a.** divided by "remodelers total estimated completed value

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

$300,000/$300,000 = 100\%$

**c.** Amount of covered loss or damage multiplied by the percentage determined in paragraph **b.**

$50,000 + $40,000 = $90,000  x 100\% = $90,000

**d.** Subtract the deductible from the amount of covered *loss*

$90,000 - $1,000 = $89,000

Total amount of loss or damage payable = $89,000.

**Example No. 2**

(This example assumes there <u>is</u> a penalty for underinsurance)

| | |
|---|---|
| Renovations and Improvements Limit | $200,000 |
| Existing Buildings or Structures Limit | $50,000 |
| "Remodelers total estimated completed value" | $300,000 |
| Deductible | $1,000 |
| Amount of "renovations and improvements" covered loss or damage | $50,000 |
| Amount of "existing buildings or structures" covered loss or damage | $40,000 |

**a.** Renovations and Improvements Limit plus the Existing Buildings or Structures Limit

$200,000 + $50,000 = $250,000

**b.** Sum from paragraph **1.** divided by the "remodelers total estimated completed value"

$250,000/$300,000 = 83\%

**c.** Amount of covered loss or damage multiplied by the percentage determined in paragraph **2.**

$50,000 + $40,000 = $90,000 x 83\% = $74,700

**d.** Subtract the deductible from the amount of covered *loss*

$74,700 - $1,000 = $73,700

Total amount of loss or damage payable = $73,700.

**B.** The following are added to Section **F. DEFINITIONS**:

"Actual cash value" means the cost to repair or replace the lost or damaged Covered Property reduced by each of the following:

**a.** Physical deterioration;

**b.** Depreciation;

**c.** Obsolescence;

**d.** Depletion;

**e.** Non-conformity to codes, regulations, or statutes; and

**f.** The cost to reconstruct or remodel undamaged portions of property.

But in no event will "actual cash value" be more than the market value of the property excluding land as determined by the price which the property excluding land might be expected to realize prior to loss or damage if offered for sale in a fair market on the date of the loss or damage.

HBIS-79 (04-09)
Page 2 of 3

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

"Existing buildings or structures" means a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation.  "Existing buildings or structures" only includes those parts of standing buildings or structures that are intended to become a permanent part of buildings or structures during renovation or rehabilitation.  This does not include "renovations and improvements".

"Renovations and improvements" means your additions, alterations, improvements or repairs to the Property Location specified in the Declarations including materials and supplies, attachments, and fixtures which have been installed, or will be installed in the "existing buildings or structures".  This does not include "existing buildings or structures".

"Remodelers total estimated completed value" means the "actual cash value" of the "existing buildings or structures", plus the estimated cost of your "renovations and improvements" at the conclusion of the project.  This does not include overhead or profit.

All other terms, conditions, provisions and exclusions of this policy remain the same.

HBIS-79 (04-09)
Page 3 of 3

Includes copyrighted material of Insurance Services Office, Inc. with its permission.



# Windstorm Deductible

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Marine Model Home Contents Coverage Form**
**Miscellaneous Property Coverage Form**

| | Schedule |
|---|---|
| 1 | 1943 Fowler St, Fort Myers, FL 33901 |
| Loc. # | Address |

Windstorm Deductible Percentage: ____3____ %, subject to a minimum Deductible of $ 1,500

For loss or damage caused by windstorm, Section **D. DEDUCTIBLE** is replaced by the following:

The Windstorm Deductible applies to loss or damage to Covered Property caused directly or indirectly by windstorm. If loss or damage from a covered weather condition other than windstorm occurs, and that loss or damage would not have occurred but for the windstorm, such loss or damage shall be considered to be caused by windstorm and, therefore, part of the windstorm occurrence.

**WINDSTORM DEDUCTIBLE CLAUSE**

1. **Non Reporting Form**

   **a.** The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the Limit of Insurance applicable to the property described in the Declarations that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above. This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure, if two or more buildings or structures sustain loss or damage.

   **b.** We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible, up to the "total estimated completed value" for the building or structure that sustained loss or damage. In no event will we pay more than the Limit of Insurance in the Declarations. If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

2. **Reporting Form**

   **a.** The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the "total estimated completed value" of the location reported to us that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above. This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure reported to us, if two or more buildings or structures sustain loss or damage.

   **b.** We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible, up to the "total estimated completed value" reported to us for that Covered Property. If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

3. **Deposit Premium Form**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a.**  The Deductible amount will be determined by multiplying the Windstorm Deductible Percentage shown in the Schedule above by the "total estimated completed value" of the location that has sustained loss or damage subject to the minimum Deductible stated in the Schedule above.  This Windstorm Deductible is calculated separately for, and applies separately to, each building or structure, if two or more buildings or structures sustain loss or damage.

**b.**  We will not pay for loss or damage to Covered Property until the amount of loss or damage exceeds the applicable Windstorm Deductible. We will then pay the amount of loss or damage in excess of the Windstorm Deductible up to the "total estimated completed value" for the building or structure that sustained loss or damage. In no event will we pay more than the Limit of Insurance in the Declarations.  If two or more Deductibles apply in any one occurrence, the total deducted will not exceed the largest applicable Deductible.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Deductible Amendatory Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Miscellaneous Property Coverage Form**

Section **D. DEDUCTIBLE** is replaced by the following:

**D.  DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of covered loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of covered loss or damage which exceeds the Deductible, up to the Limit of Insurance. This Deductible applies separately to each building or structure, described in the Declarations or reported to us, if two or more buildings or structures sustain loss or damage.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes Copyrighted material of Insurance Services Office, Inc., with its permission



# Florida Notice To Policyholder – Coinsurance Contract

**THIS IS A COINSURANCE CONTRACT:**

The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.

HBIS-65 (04-09)
Page 1 of 1

# Changes In Cancellation Condition



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**
**Common Policy Conditions**

Section **A. Cancellation**, Paragraph **5.** is replaced with the following:

The premium for this coverage is fully earned and no refund is due when the policy is cancelled.

All other terms, conditions, provisions and exclusions of the policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Changes In Valuation Condition



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**BUILDERS RISK COVERAGE FORM**

The **Valuation** General Condition in Commercial Inland Marine Conditions is replaced by the following:

**Valuation**

In the event of loss or damage, the value of the property will be determined as of the time of the loss or damage.

1.  The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the loss or damage.

2.  If the loss or damage involves building materials which have not been installed, the value of the property will not be more than the amount necessary to replace the materials with like kind and quality.

All other terms, conditions, provisions and exclusions of the policy remain the same.

HBIS-84 (04-09)
Page 1 of 1



# Mortgage Holders Clause – Non Reporting Form

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Builders Risk Coverage Form**

<div align="center">

**Schedule**

**Mortgage Holder**

</div>

Sanibel Captiva Community Bank ISAOA

PO Box 187

Sanibel, FL 33957

Section **E. ADDITIONAL CONDITIONS**, **5.b.** is replaced with the following:

We will pay for covered loss or damage to Covered Property to the mortgage holder(s) designated in the Schedule above.

All other terms, conditions, provisions and exclusions of this policy remain the same.

HBIS-30 (06-17)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Insured Name:
Policy Number:
Effective Date:



**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
|---|
| **$0** |

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, the United States Government may pay up to 80% of insured losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-630-E CW (01/20)
Page 1 of 2

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-630-E CW (01/20)
Page 2 of 2



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|---|
| | | | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.  Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.**  To be an act of terrorism;

**2.**  To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.**  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.**  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.  Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-767-B CW (01/15)
Page 1 of 1

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

        CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
        COMMERCIAL AUTOMOBILE COVERAGE PART
        COMMERCIAL GENERAL LIABILITY COVERAGE PART
        COMMERCIAL INLAND MARINE COVERAGE PART
        COMMERCIAL PROPERTY COVERAGE PART
        CRIME AND FIDELITY COVERAGE PART
        EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
        EQUIPMENT BREAKDOWN COVERAGE PART
        FARM COVERAGE PART
        LIQUOR LIABILITY COVERAGE PART
        MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
        OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
        POLLUTION LIABILITY COVERAGE PART
        PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
        RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2. We will not pay you more than your financial interest in the Covered Property.

3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

**6.** We will not be liable for any part of a loss that has been paid or made good by others.

**F. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**G. Pair, Sets Or Parts**

**1. Pair Or Set**

In case of loss or damage to any part of a pair or set we may:

**a.** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

**b.** Pay the difference between the value of the pair or set before and after the loss or damage.

**2. Parts**

In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**H. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**I. Reinstatement Of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

**J. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property.

**2.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance; or

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you.

This will not restrict your insurance.

**GENERAL CONDITIONS**

**A. Concealment, Misrepresentation Or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all the terms of this Coverage Part; and

**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

Copyright, ISO Properties, Inc., 2006 **Page 1 of 1**

Wolters Kluwer Financial Services | Uniform Forms™

COMMERCIAL INLAND MARINE
CM 01 16 05 22

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.** Paragraph **5.** of Loss Condition **E. Loss Payment** in the Commercial Inland Marine Conditions is replaced by the following:

  **5.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage within:

    **a.** 20 days after we receive the sworn proof of loss and reach written agreement with you; or

    **b.** 30 days after we receive the sworn proof of loss and:

      **(1)** There is an entry of final judgment; or

      **(2)** There is a filing of an appraisal award with us.

Paragraph **A.** does not apply to the Mail Coverage Form.

**B.** The following provisions are added to Loss Condition **C. Duties In The Event Of Loss** in the Commercial Inland Marine Conditions:

  **1.** A claim or reopened claim for loss or damage caused by any peril is barred unless notice of claim is given to us in accordance with the terms of this Coverage Part within two years after the date of loss. A reopened claim means a claim that we have previously closed but that has been reopened upon an insured's request for additional costs for loss or damage previously disclosed to us.

A supplemental claim is barred unless notice of the supplemental claim was given to us in accordance with the terms of the Policy within three years after the date of loss. A supplemental claim means a claim for additional loss or damage from the same peril which we have previously adjusted or for which costs have been incurred while completing repairs or replacement pursuant to an open claim for which timely notice was previously provided to us.

For claims resulting from hurricanes, tornadoes, windstorms, severe rain or other weather-related events, the date of loss is the date that the hurricane made landfall or the tornado, windstorm, severe rain or other weather-related event is verified by the National Oceanic and Atmospheric Administration.

This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Coverage Part under the Legal Action Against Us Condition, including any amendment to that condition.

  **2.** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. **Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. **Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

Page 1 of 2

Copyright, Insurance Services Office, Inc., 1998

IL 00 17 11 98

F.  **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

IL 02 55 03 16        © Insurance Services Office, Inc., 2015        **Page 1 of 3**

Wolters Kluwer Financial Services | Uniform Forms™

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

  **a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** The policy was obtained by a material misstatement;

   **(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

   **(4)** There has been a substantial change in the risk covered by the policy;

   **(5)** The cancellation is for all insureds under such policies for a given class of insureds;

   **(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   **(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

   **(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

  **b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

   **(2)** 45 days before the effective date of cancellation if:

    **(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

    **(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

   **(3)** 120 days before the effective date of cancellation if:

    **(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

    **(b)** This policy covers a residential structure or its contents.

  **c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

 **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

  **a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.**; or

  **b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

 **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 **3.** We may not refuse to renew this policy:

  **a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

   **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

   **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

  **a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

  **b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** Material misstatement or fraud related to the claim;

   **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

   **(4)** We have paid the policy limits.

  If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.



# Non-Renewal Notice

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

    **Builders Risk And Installation Coverage Form**
    **Builders Risk Coverage Form**
    **Marine Model Home Contents Coverage Form**
    **Miscellaneous Property Coverage Form**

Due to the specialized nature of the risk insured and the limited term of the coverage provided under this policy, it is agreed that this policy expires on date specified.  A nonrenewal notice will not be sent to you.  Any requests to extend the policy period must be made in writing prior to the expiration date.  However, we have no obligation to extend the policy period.

All other terms, conditions, provisions and exclusions of this policy remain the same.

1001NR (01-20)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

U-GU-1191-A CW  (03/15)
Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| ER74033179 | From 07/20/2022 To 01/20/2023 | American Zurich Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Swamp Cat Holdings Company, LLC<br>1943 Fowler St<br>Fort Myers, FL 33901 | US ASSURE INSURANCE SERVICES OF FLORIDA, INC.<br>P.O. BOX 10197<br>JACKSONVILLE, FL 32247-0197<br>#A0209259 |

**COVERAGE PARTS AFFECTED**

Builders Risk Coverage

<div align="center">

**CHANGES**

</div>

Amending the Named Insured to now read as follows:
Swamp Cat Holdings Company, LLC
1943 Fowler St
Fort Myers, FL 33901

The following changes were made to the policy:
Additional Premium:  $0.00
Total policy premium is unchanged:  $5,980.26
The 'Policy Premium' shown in the Declarations is unchanged. $5,980.26

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85                                                                              Page 1  of  1

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

vs.

                                    Case No.: 23-CA-005362

AMERICAN ZURICH INSURANCE
COMPANY,

      Defendant.

_____/

### **DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY, by and through its undersigned counsel, and responds to Plaintiff, SWAMP CAT HOLDINGS, LLC's First Request for Production, served with the Complaint, as follows:

1.     A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

        **RESPONSE:** **AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the certified copy of the policy number ER74033179 contemporaneously produced with this response.**

2.     Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

        **RESPONSE:** **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.**

        **AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected by carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm*

EXHIBIT
**1-M**

*Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* **No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

**AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable.** *See Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986).**

3.    Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, not limited in time or scope, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.**

**AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected as carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* **No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

**AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable.** *See Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986).**

**Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.**

2

4.    Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the documents produced contemporaneously with this response.**

5.    Any and all correspondence or written communications from the Insured, or their representatives to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the documents produced contemporaneously with this response.**

6.    Any and all photographs taken by the Insurance Company of the Property.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, not limited in time or scope, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.**

**AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected as carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); see also *Blanchard v. State Farm Mutual Automobile Insurance Company,* 575 So.2d 1289 (Fla. 1991); *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

**AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986).**

**Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.**

3

7.  All documents containing information regarding any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insured.  If you claim privilege over any of these documents, please provide redacted documents showing only any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as seeking documents protected under the attorney/client privilege, as attorney work product, and/or carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); see also *Blanchard v. State Farm Mutual Automobile Insurance Company,* 575 So.2d 1289 (Fla. 1991); *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* No. 2:10-cv-753-FtM- 36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

**AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986).**

**Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.**

8.  Any and all bills or estimates for repairs to the Property submitted to the Insurance Company.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as vague, overbroad, not limited in time or scope, and as seeking documents protected under the carrier work product protection, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); see also *Blanchard v. State Farm Mutual Automobile Insurance Company,* 575 So.2d 1289 (Fla. 1991); *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,***

4

421 So.2d 783 (Fla. 2d DCA 1982); *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).

AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986).

Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.

9. Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

**RESPONSE**: None.

10. All reports which in any manner pertain to the Insured's loss, including reports by any expert retained by the insurance company.

**RESPONSE**: AMERICAN ZURICH INSURANCE COMPANY objects to this Request as seeking documents protected as attorney/client privilege, as attorney work product, and/or carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued. *State Farm Florida Ins. Co. v. Gallmon,* 835 So.2d 389 (Fla. 2d DCA 2003); see also *Blanchard v. State Farm Mutual Automobile Insurance Company,* 575 So.2d 1289 (Fla. 1991); *State Farm Fire & Casualty Co. v. Valido* 662 So.2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. 2d DCA 1982); *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).

AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986).

Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.

5

11. All Proof of Loss forms pertaining to the subject loss that were sent or received by you or your representatives to or from the Insured or the Insured's representative.

   **RESPONSE**: **None.**

12. All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

   **RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as seeking documents protected as attorney/client privilege, as attorney work product, and/or carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* **No. 2:10-cv-753-FtM- 36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

   **AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable.** *See Ruiz v. Brea,* **489 So.2d 1136 (Fla. 3d DCA 1986).**

   **Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY refers Plaintiff to the discoverable documents produced contemporaneously with this response.**

13. All applications for insurance submitted by or on behalf of the Insured to you or your representatives in connection with obtaining or renewing the subject Policy.

   **RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.**

   **AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected as carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm*

6

*Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* **No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

14.    All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, and seeking information not reasonably calculated to lead to the   discovery of admissible evidence.**

**AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected as carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Ins. Co.,* **No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).**

15.    The complete underwriting file for the Insured.

**RESPONSE**: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as overly broad, vague, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.**

**AMERICAN ZURICH INSURANCE COMPANY also objects to this Request as seeking documents protected as carrier work product, documents which are not discoverable in this first-party breach of contract action as no claim for statutory bad faith has accrued.** *State Farm Florida Ins. Co. v. Gallmon,* **835 So.2d 389 (Fla. 2d DCA 2003); see also** *Blanchard v. State Farm Mutual Automobile Insurance Company,* **575 So.2d 1289 (Fla. 1991);** *State Farm Fire & Casualty Co. v. Valido* **662 So.2d 1012 (Fla. 3d DCA 1995);** *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* **421 So.2d 783 (Fla. 2d DCA 1982);** *Pepperwood of Naples*

7

*Condo. Ass'n v. Nationwide Mut. Ins. Co.,* No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060 (M.D Fla. Oct. 3, 2011).

16.    A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

   <u>RESPONSE</u>: **AMERICAN ZURICH INSURANCE COMPANY objects to this Request as vague and ambiguous.**

   **AMERICAN ZURICH INSURANCE COMPANY further objects to this Request in that it seeks the identity of and documents from its consulting experts, information which is not discoverable. *See Ruiz v. Brea,* 489 So.2d 1136 (Fla. 3d DCA 1986).**

   **Notwithstanding and without waiving these objections, AMERICAN ZURICH INSURANCE COMPANY states that it has not yet determined its experts who will testify at trial.**

17.    All affidavits or sworn statements in your possession pertaining to the subject loss.

   <u>RESPONSE</u>: **None in the possession, custody, or control of Defendant.**

   BUTLER WEIHMULLER KATZ CRAIG LLP

   WILLIAM B. COLLUM, ESQ.
   Florida Bar No.:  106316
   wcollum@butler.legal
   Secondary:   ttyler@butler.legal
   KRISTINA F. HARRIS, ESQ.
   Florida Bar No:1025014
   kharris@butler.legal
   Secondary:   apendino@butler.legal
   400 N. Ashley Drive, Suite 2300
   Tampa, Florida  33602
   Telephone:   (813) 281-1900
   Facsimile:     (813) 281-0900
   *Counsel for American Zurich Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL  33145-3057
csanti@pclawgroup.com
*Counsel for Plaintiff*

by ePortal on June 20, 2023.

KRISTINA F. HARRIS, ESQ.

9

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

     Plaintiff,

                                            Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

     Defendant.
_____/

### DEFENDANT'S NOTICE OF SERVING ANSWERS
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

TO:    Carlos L. Santi, Esq.
        Property & Casualty Law Group
        2307 Douglas Road, Suite 302
        Miami, FL  33145-3057
        csanti@pclawgroup.com
        Counsel for Plaintiff

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY, by

and through its undersigned counsel, and files this Notice of Serving its Answers to

Plaintiff, SWAMP CAT HOLDINGS, LLC's First Set of Interrogatories served with the

Complaint, numbered one (1) through nine (9).

                            BUTLER WEIHMULLER KATZ CRAIG LLP

_____
WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary:  ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No:1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
400 N. Ashley Drive, Suite 2300

**EXHIBIT
1-N**

Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for American Zurich Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing <u>Notice</u> has been furnished by e-Portal and that the

foregoing <u>Notice</u> and <u>Answers</u> have been furnished to the above-named addressee via

e-mail on June 20, 2023.

KRISTINA F. HARRIS, ESQ.

2

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

       Plaintiff,

                                Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

       Defendant.

_____/

### **DEFENDANT'S PRIVILEGE LOG IN SUPPORT OF RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

       COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY ("ZURICH"), by and through its undersigned counsel and serves its Notice of Filing Privilege Log. This Privilege Log will be used in support of Defendant's Response to Plaintiff's First Request to Produce. ZURICH reserves the right to amend this Privilege Log as Discovery is ongoing.

| Date | Bates[1] | Author | Recipients | Summary | Privilege |
|------|----------|--------|------------|---------|-----------|
| Various | 000001 - 000009 | Zurich | | Claim information screen with reserves and claim notes | Proprietary; Carrier Work Product[2]; Attorney-Client; Attorney-Work Product |

---

[1] The Bates numbers correspond to the following Bates label prefix: ZURICHCLAIMFILE-

[2] As used herein, the phrase "Carrier Work Product" refers to the protection established by, but not necessarily limited to, the following cases:  *See Nationwide Ins. Co. of Fla. v. Demmo,* 57 So. 3d 982 (Fla. 2d DCA 2011); *Seminole Cas. Ins. Co. v. Mastrominas,* 6 So. 3d 1256, 1258 (Fla. 2d DCA 2009); *State Farm Florida Ins. Co. v. Ramirez,* 86 So. 3d 1198 (Fla. 3d DCA 2012); *State Farm Fire and Cas. Co. v. Valido,* 662 So. 2d 1012 (Fla. 3d DCA 1995); *State Farm Florida Ins. Co. v. Aloni,* 101 So. 3d 412 (Fla. 4th DCA 2012); *State Farm Mutual Automobile Insurance Co. v. Tranchese,* 49 So. 3d 809, 810 (Fla. 4th DCA 2010); *Travelers Indem. Co. of Connecticut v Attorney's Title Ins. Fund, Inc.,* 2015 WL 6869365 (M.D. Fla. Nov. 9, 2015).

**EXHIBIT**
**1-O**

| Date | Bates[1] | Author | Recipients | Summary | Privilege |
|------|----------|--------|------------|---------|-----------|
| Various | 000010 - 000012 | Zurich | | Claim information screen with reserves and claim notes | Proprietary; Carrier Work Product; Attorney-Client; Attorney-Work Product |
| 5/22/23 | 000013 - 000017 | LaVee McCrea | kstanley@jsheld.com; USZ_Zurich_Claims_ Documents | Email | Carrier Work Product |
| 5/22/23 | 000018 - 000022 | Kevin Stanley | lavee.mccrea@zurich na.com; USZ_Zurich_Claims_ Documents | Email | Carrier Work Product |
| 5/1/23 | 000036 - 000173 | Rimkus Consulting Group, Inc. | Zurich | Report **(Redacted)** | Carrier Work Product; Attorney-Client; Attorney Work Product |
| 5/22/23 | 000174 - 000177 | LaVee McCrea | kstanley@jsheld.com | Email | Carrier Work Product |
| 5/15/23 | 00017- 000180 | LaVee McCrea | USZ_Zurich_Claims_ Documents | Email | Carrier Work Product; Attorney-Client; Attorney Work Product |
| 5/12/23 | 000181 - 000183 | Rimkus Consulting Group, Inc. | Zurich | Bill Analysis Report | Carrier Work Product |
| 5/12/23 | 000184 - 000186 | Rimkus Consulting Group, Inc. | Zurich | Bill Analysis Report | Carrier Work Product |
| 4/24/23 | 000191 - 000212 | Zurich | Butler Weihmuller Katz Craig, LLP | Letter | Attorney-Client; Attorney Work Product |
| 4/25/23 | 000213 - 000214 | LaVee McCrea | USZ_Zurich_Claims_ Documents | Email | Carrier Work Product; Attorney-Client; Attorney Work Product |
| 4/24/23 | 000215 - 000236 | Zurich | Butler Weihmuller Katz Craig, LLP | Letter (Duplicate) | Attorney-Client; Attorney Work Product |

| Date | Bates[1] | Author | Recipients | Summary | Privilege |
|---|---|---|---|---|---|
| 4/25/23 | 000237 - 000241 | LaVee McCrea | USZ_Zurich_Claims_ Documents | Email (Duplicate) | Carrier Work Product; Attorney-Client; Attorney Work Product |
| 12/19/22 | 000250 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 12/23/22 | 000251 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 12/28/22 | 000252 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 12/24/22 | 000253 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 12/26/22 | 000254 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 12/3/22 | 000264 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 12/12/22 | 000265 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 12/12/22 | 000266 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 12/16/22 | 000267 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 12/5/22 | 000268 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 11/28/22 | 000269 - 000270 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 12/6/22 | 000271 - 000273 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 11/28/22 | 000274 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 11/30/22 | 000275 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 11/13/22 | 000276 - 000277 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 11/22/22 | 000278 - 000279 | Rac Adjustments, Inc. | Zurich | Bill Analysis Report | Carrier Work Product |
| 11/7/22 | 000280 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 11/4/22 | 000281 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 10/31/22 | 000282 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 11/7/22 | 000283 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 10/31/22 | 000284 - 000285 | Serrala | Captx, Inc | Invoice | Carrier Work Product |

| Date | Bates[1] | Author | Recipients | Summary | Privilege |
|---|---|---|---|---|---|
| 10/28/22 | 000286 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 11/2/22 | 000297 - 000367 | Rac Adjustments, Inc. | Zurich | Photographs **(Redacted)** | Carrier Work Product **(Redacted)** |
| 11/5/22 | 000368 - 000370 | Rac Adjustments, Inc. | Zurich | Report | Carrier Work Product |
| 10/17/22 | 000371 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 10/14/22 | 000372 - 000373 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 10/24/22 | 000374 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 10/10/22 | 000375 - 000377 | Serrala | Sedgwick Claims Management Services | Invoice | Carrier Work Product |
| 10/28/22 | 000378 | Serrala | AllCat Claims Service, LLC | Invoice | Carrier Work Product |
| 10/24/22 | 000379 - 000381 | Serrala | Captx, Inc | Invoice | Carrier Work Product |
| 10/24/22 | 000382 | Rac Adjustments, Inc. | Zurich | Report | Carrier Work Product |
| 10/15/22 | 000391 - 000393 | Acord | | Property Loss Notice | Carrier Work Product |
| 00/00/00 | 000396 - 000398 | Zurich | | First Notice of Loss | Carrier Work Product |
| Various | 000399 - 000402 | Zurich | | Claim information screen with document list and fax logs | Carrier Work Product |
| Various | 000457 - 000466 | Zurich | | Claim information screen with payment transaction notes | Carrier Work Product |
| Various | 000467 - 000555 | Zurich | | Claim information screen with reserves and claim notes | Proprietary; Carrier Work Product; Attorney-Client; Attorney-Work Product |
| 4/5/23 | 000556 - 000571 | XactAnalysis; | | XactAnalysis claim screen with notes and document list | Carrier Work Product |

| Date | Bates[1] | Author | Recipients | Summary | Privilege |
|---|---|---|---|---|---|
| 11/5/22 | 000580 - 000582 | Rac Adjustments, Inc. | | Report | Carrier Work Product |
| 11/2/22 | 000583 - 000653 | Rac Adjustments, Inc. | | Photo Sheet **(Redacted)** | **Redacted** (Carrier Work Product) |
| 4/5/22 | 000660 - 000677 | XactAnalysis | | XactAnalysis claim screen with notes | Carrier Work Product |
| 10/24/22 | 000681 - 000716 | XactAnalysis; | Zurich | XactAnalysis claim screen with notes and document list | Carrier Work Product |
| 11/5/22 | 000717 - 000720 | Rac Adjustments, Inc. | | Audit Estimate | Carrier Work Product |
| 11/2/22 | 000745 | Rac Adjustments, Inc | | Loss Recap | Carrier Work Product |
| 11/2/22 | 000746 - 000816 | Rac Adjustments, Inc | | Photo Sheet **(Redacted)** (Duplicate) | **Redacted** (Carrier Work Product) |
| 11/2/22 | 000817 - 000887 | Rac Adjustments, Inc | | Photo Sheet **(Redacted)** (Duplicate) | **Redacted** (Carrier Work Product) |
| 11/5/22 | 000898 - 000900 | Rac Adjustments, Inc. | | Report | Carrier Work Product |
| 11/5/22 | 000897 | Rac Adjustments, Inc | | Statement of Loss | Carrier Work Product |
| 10/24/22 | 000901 | Rac Adjustments, Inc | | Loss Report | Carrier Work Product |
| Undated | 000902 - 000903 | Bing Maps | | Directions | Carrier Work Product |
| 11/5/22 | 000904 - 000909 | Rac Adjustments, Inc | | Price List Variation Usage Report | Carrier Work Product |

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary:   ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No:1025014
kharris@butler.legal
Secondary:   apendino@butler.legal

400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Counsel for American Zurich Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL  33145-3057
csanti@pclawgroup.com
Counsel for Plaintiff

by ePortal on June 21, 2023

KRISTINA F. HARRIS, ESQ.

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

     Plaintiff,

                                     Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

     Defendant.

_____/

### **DEFENDANT'S MOTION TO COMPEL DISCOVERY**

     Defendant, AMERICAN ZURICH INSURANCE COMPANY ("ZURICH"), by and through its undersigned counsel and pursuant to Rules 1.340, and 1.380, Florida Rules of Civil Procedure, moves this Court to compel Plaintiff, SWAMP CAT HOLDING, LLC[1] ("Plaintiff"), to respond to ZURICH's First Set of Interrogatories, and in support thereof, ZURICH states the following:

     **1.**     On May 10, 2023, ZURICH served Plaintiff with ZURICH's First Set of Interrogatories, consisting of two (2) interrogatories. *See attached* **Exhibit 1.**

     2.     Plaintiff's answers to the First Set of Interrogatories were due on June 9, 2023. Having received no answer, counsel for ZURICH sent email correspondence to counsel for Plaintiff on June 13, 2023, in a good faith attempt to obtain the answers to the First Set of Interrogatories without the need for court intervention.

     3.     Plaintiff's counsel failed to respond to the undersigned counsel's June 13,

---

[1] The Policy was originally issued with Plaintiff's corporate name identified as "Swamp Cat Holdings LLC", which later was amended by endorsement to Plaintiff's correct legal corporate name, "Swamp Cat Holdings Company, LLC".  Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

**EXHIBIT**

**1-P**

2023 email correspondence.

4.      As of the date of filing this Motion to Compel, Plaintiff has failed to file any answers to ZURICH's First Set of Interrogatories or request any additional time to respond.

5.      Plaintiff's failure to provide responses and/or file any appropriate objection to the discovery outlined in this Motion to Compel has hindered ZURICH's right to discovery of relevant information and caused further prejudice to ZURICH.

6.      Pursuant to Rule 1.380, Fla. R. Civ. P., ZURICH requests this Court enter an order requiring Plaintiff to respond to ZURICH's First Set of Interrogatories within seven (7) days of the order being entered.

7.      Additionally, in accordance with Rule 1.380(4), Fla. R. Civ. P., ZURICH also requests this Court award ZURICH's attorney's fees and costs for having to bring this Motion to Compel.

WHEREFORE, the Defendant, AMERICAN ZURICH INSURANCE COMPANY respectfully requests this Court grant this Motion to Compel, award attorney's fees and costs, and award any and all other relief this Honorable Court deems just and proper.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary:   ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No:1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602

Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for American Zurich Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been furnished to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL  33145-3057
csanti@pclawgroup.com
Counsel for Plaintiff

by e-Portal on this 26th day of June, 2023.

KRISTINA F. HARRIS, ESQ.

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

        Plaintiff,

                                 CASE NO.:   23-CA-005362

 vs.

AMERICAN ZURICH INSURANCE COMPANY,

        Defendant.
_____/

### DEFENDANT'S NOTICE OF SERVING
### <u>FIRST SET OF INTERROGATORIES TO PLAINTIFF</u>

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY, by

and through its undersigned counsel, and pursuant to Florida Rule of Civil Procedure

1.340, requests that the Plaintiff[1] answer the attached Interrogatories numbered one (1)

through two (2), inclusive, within thirty (30) days after service hereof.

                         BUTLER WEIHMULLER KATZ CRAIG LLP

                        _____
                        WILLIAM B. COLLUM, ESQ.
                        Florida Bar No.:  106316
                        wcollum@butler.legal
                        KRISTINA F. HARRIS, ESQ.
                        Florida Bar No.:  1025014
                        kharris@butler.legal
                        Secondary:   ttyler@butler.legal
                                       nsahadeo@butler.legal
                        400 N. Ashley Drive, Suite 2300
                        Tampa, Florida  33602
                        Telephone:   (813) 281-1900
                        Facsimile:    (813) 281-0900

_____

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

**DEFENDANTS'
EXHIBIT**

**01**
_____

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served to:

      Carlos L. Santi, Esq.
      Property & Casualty Law Group
      2307 Douglas Road, Suite 302
      Miami, Florida 33145
      CSanti@pclawgroup.com
      *Counsel for Plaintiff*

by ePortal on May 10, 2023.

KRISTINA F. HARRIS, ESQ.

2

## **INSTRUCTIONS**

1.      You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Interrogatory. Documents are to be produced in full and unexpurgated form.

2.      If any documents covered by this Interrogatory are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (e.g., letter, memorandum, etc.) together with the following information with respect to any such document withheld:  author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Interrogatory to which such document relates.

3.      If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

4.      In the event that any document called for by this Interrogatory has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

5.      All objections to any category of documents to be produced pursuant to this Interrogatory or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

6.      Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

7.      Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiff, if any.

## **DEFINITIONS**

1.  "Plaintiff", means Plaintiff, its affiliates, agents, employees and representatives.

2.  "ZURICH" means Defendant, AMERICAN ZURICH INSURANCE COMPANY, its agents, employees and representatives.

3.  The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

4.  The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded. It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

5.  The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

6.  The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

7.    "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

8.    The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

9.    All other words have their plain and ordinary meaning.

5

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

        Plaintiff,

                                       CASE NO.:   23-CA-005362

 vs.

AMERICAN ZURICH INSURANCE COMPANY,

        Defendant.
_____/

### DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF[2]

1.    Please identify all of the former and current members of SWAMP CAT HOLDINGS COMPANY, LLC, since the purported date of loss of September 28, 2022.  Please also identify each member's current primary residential address.

    **ANSWER:**

2.    Please state with specificity the total amount of the damages that you are seeking in this action.

    **ANSWER:**

---

[2] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".

6

SWAMP CAT HOLDINGS COMPANY, LLC

By: _____

Print Name: _____

Title: _____

## **ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared _____ on behalf of SWAMP CAT HOLDINGS COMPANY, LLC, who is personally known to me **OR** who has produced _____* as identification, and who, after first being duly sworn, deposes and says that he/she has read the foregoing Answers to said Interrogatories which were propounded to him/her by the Defendant and are true and correct.

SWORN TO AND SUBSCRIBED before me, this _____ day of _____, 2023.
      *List type of identification produced or "N/A," whichever is applicable.*

(SEAL)

_____
NOTARY PUBLIC

State of _____ at Large

My Commission Expires:

7

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN
AND FOR LEE COUNTY,
FLORIDA

CASE NO.: 23-CA-005362

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.
_____/

## PLAINTIFF'S MOTION FOR EXTENSION
## OF TIME TO RESPOND TO DEFENDANT'S DISCOVERY REQUESTS

Plaintiff, Swamp Cat Holdings, LLC, by and through the undersigned counsel, hereby moves this Court for an Order of extension of time to respond to Defendant's discovery requests, and in support thereof, states the following:

1.      This action involves a first party property insurance claim.

2.      Defendant served discovery requests on  May10, 2023

3.      Plaintiff requires additional time to gather responsive documentation and information.

WHEREFORE, Plaintiff respectfully requests an extension of thirty (30) days to respond to Defendant's discovery requests.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by email on June 27, 2023, to Kristina F. Harris and William B. Collum, Esquire, wcollum@butler.legal, and we electronically filed the foregoing with the Clerk of Miami-

EXHIBIT

1-Q

Dade County by using the Florida Courts eFiling Portal.

Property & Casualty Law Group
Counsel for the Insured(s)
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038

**/s/ Carlos Santi**

_____

Carlos L. Santi, Esq.
Florida Bar No. 70529
csanti@pclawgroup.com

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDINGS, LLC

      Plaintiff,

                                CASE NO.:   23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

      Defendant.

_____/

**AGREED ORDER [1] GRANTING PLAINTIFF'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO DEFENDANT'S DISCOVERY REQUESTS AND
[2] DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY AS MOOT**

      THIS CAUSE came before the Court upon the agreement of the parties to
Plaintiff's Motion for Extension of Time to Respond to Defendant's Discovery Requests
(filed June 27, 2023) (the "Motion for Extension of Time") and Defendant's Motion to
Compel Discovery (filing date June 26, 2023). The Court, having reviewed the Motion for
Extension of Time, being advised of the parties' agreement to the terms of this Agreed
Order, and being otherwise fully advised in the premises, it is hereby,

      ORDERED and ADJUDGED as follows:

      1.      The Motion is **GRANTED**. Plaintiff shall file its verified answers to
Defendant's First Set of Interrogatories no later than July 28, 2023.

      2.      Defendant's Motion to Compel Discovery is **DENIED** as moot.

      DONE AND ORDERED in Chambers, in Fort Myers, Lee County, Florida.

eSigned by James Shenko  06/29/2023 16:19:05 Ts2UKwBi

**EXHIBIT
1-R**

CASE NO.: 23-CA-005362

Electronic Service List
Carlos L Santi <csanti@pclawgroup.com>
Carlos L Santi <e-service@pclawgroup.com>
Carlos L Santi <caponte@pclawgroup.com>
Kristina F Harris <kharris@butler.legal>
Kristina F Harris <apendino@butler.legal>
Kristina F Harris <nsahadeo@butler.legal>
William B. Collum <wcollum@butler.legal>
William B. Collum <ttyler@butler.legal>
William B. Collum <nsahadeo@butler.legal>

2

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

                                    Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

      Defendant.

_____/

### MOTION FOR ORDER TO SHOW CAUSE
### AND FOR ATTORNEYS' FEES AND COSTS

COMES NOW, the Defendant, AMERICAN ZURICH INSURANCE COMPANY ("Zurich"), by and through its legal counsel, pursuant to Florida Rule of Civil Procedure 1.380(b), and files this Motion for Order to Show Cause and for Attorney's Fees and Costs, and requests this Court issue an Order to Show Cause why sanctions should not be imposed upon Plaintiff for failure to comply with this Court's Order dated July 14, 2023. In support thereof, Zurich would state as follows:

      1.      On May 10, 2023, Zurich propounded discovery to Plaintiff in the form of two interrogatories ("Discovery").

      2.      Responses to the Discovery were due on June 9, 2023.

      3.      On June 27, 2023, after Zurich filed a motion to compel the interrogatories, Plaintiff filed a Motion for Extension of Time to respond to the Discovery

      4.      Following an agreement of counsel for the parties, this Court, on June 29, 2023, entered an Agreed Order Granting Plaintiff's Motion for Extension of Time to

EXHIBIT
1-S

Respond to Defendant's Discovery Requests, ordering Plaintiff to serve discovery responses on or before July 28, 2023. *See* **Exhibit "1"**.

5.    To date, Plaintiff has not filed answers to the Discovery.

6.    Zurich requests this Court enter an Order compelling Plaintiff to show cause for their failure to comply with the June 29, 2023 Order and respond to Zurich's Discovery.

7.    Additionally, Zurich respectfully requests, pursuant to Rule 1.380(f), Fla. R. Civ. P., this Court award Zurich attorney's fees and costs in having to bring this motion.

## <u>MEMORANDUM OF LAW</u>

The Court has broad discretion in controlling discovery and the inherent authority and wide ranging discretion to award sanctions for violations and abuses of the discovery process.  *See Mercer v. Raine,* 443 So. 2d 944, 946 (Fla. 1983); *Tramel v. Bass,* 672 So. 2d 78, 82 (Fla. 1st DCA 1996); *Griefer v. DiPietro,* 708 So.2d 666 (Fla. 4th DCA 1998). Florida Rule of Civil Procedure 1.380(b) provides that where a party "fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this Rule", the Court may enter any of the following orders: (A) an order that the matter of facts be established in accordance with the claim of the party obtaining the order: (B) an order refusing to allow the non-obeying party to oppose certain claims or prohibiting the party from introducing certain matters into evidence; or (C) an order striking pleading or parts thereof, dismissing the proceeding, or rendering a default judgment against the disobedient party; (D) Instead of any of the foregoing orders or in addition to them, an order treating as a contempt of court the failure to obey any orders except an order to submit to an examination made pursuant to rule 1.360(a)(1)(B) or subdivision (a)(2) of this rule."

2

Under subsection b(2)(D), the Court may hold a party in contempt for failing to comply with its orders. Here, Plaintiff has failed to comply with the Court's June 29, 2023 Order by completely failing to respond to Zurich's Discovery.

WHEREFORE, the Defendant, ZURICH AMERICAN INSURANCE COMPANY respectfully requests this Honorable Court enter an Order to Show Cause why Plaintiff should not be held in contempt for failure to comply with this Court's June 29, 2023 Order, compel Plaintiff to provide responses to discovery within ten (10) days of the entry of the Order, award Zurich attorney's fees and costs in having to bring this motion, and for any and all other such relief this Court deems just and proper.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
Secondary: ttyler@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   apendino@butler.legal
                    nsahadeo@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for American Zurich Insurance Company*

3

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

      Carlos L. Santi, Esq.
      Property & Casualty Law Group
      2307 Douglas Road, Suite 302
      Miami, Florida 33145
      CSanti@pclawgroup.com
      *Attorneys for Plaintiff*

by e-Portal on July 31, 2023.

      WILLIAM B. COLLUM, ESQ.

4

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDINGS, LLC

      Plaintiff,

                                CASE NO.:   23-CA-005362

vs.

AMERICAN ZURICH INSURANCE COMPANY,

      Defendant.

_____/

**AGREED ORDER [1] GRANTING PLAINTIFF'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO DEFENDANT'S DISCOVERY REQUESTS AND
[2] DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY AS MOOT**

THIS CAUSE came before the Court upon the agreement of the parties to

Plaintiff's Motion for Extension of Time to Respond to Defendant's Discovery Requests

(filed June 27, 2023) (the "Motion for Extension of Time") and Defendant's Motion to

Compel Discovery (filing date June 26, 2023). The Court, having reviewed the Motion for

Extension of Time, being advised of the parties' agreement to the terms of this Agreed

Order, and being otherwise fully advised in the premises, it is hereby,

ORDERED and ADJUDGED as follows:

1.      The Motion is **GRANTED**. Plaintiff shall file its verified answers to

Defendant's First Set of Interrogatories no later than July 28, 2023.

2.      Defendant's Motion to Compel Discovery is **DENIED** as moot.

DONE AND ORDERED in Chambers, in Fort Myers, Lee County, Florida.

*James A. Shenko*

eSigned by James Shenko  06/29/2023 16:19:05 Ts2UKwBi

EXHIBIT
**1**

CASE NO.: 23-CA-005362

Electronic Service List
Carlos L Santi <csanti@pclawgroup.com>
Carlos L Santi <e-service@pclawgroup.com>
Carlos L Santi <caponte@pclawgroup.com>
Kristina F Harris <kharris@butler.legal>
Kristina F Harris <apendino@butler.legal>
Kristina F Harris <nsahadeo@butler.legal>
William B. Collum <wcollum@butler.legal>
William B. Collum <ttyler@butler.legal>
William B. Collum <nsahadeo@butler.legal>

2

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

                                     Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

      Defendant.

_____/

**<u>NOTICE OF TELEPHONIC HEARING</u>**[1]
JACS Confirmation # 869314

TO:    Counsel of Record:

             Carlos L. Santi, Esq.
             Property & Casualty Law Group
             2307 Douglas Road, Suite 302
             Miami, Florida 33145
             CSanti@pclawgroup.com
             *Attorneys for Plaintiff*

      PLEASE TAKE NOTICE that a virtual hearing will be held before The Honorable

James R. Shenko, the Judge of the above-styled Court, by CourtCall, on **Monday,**

**October 2, 2022** at **3:00 p.m.,** or as soon thereafter as same may be heard, on:

      1.      **Defendant's Motion for Order to Show Cause and for Attorneys' Fees**
            **and Costs (Filed July 31, 2023)**

      TIME RESERVED:  15 minutes.

      The parties need to contact CourtCall 3 business days in advance to schedule your

telephonic appearance at 888-882-6878 or online via www.courtcall.com

---

[1] Unilaterally scheduled due to no response from Plaintiff's counsel following multiple attempts to coordinate.

EXHIBIT
1-T

I HEREBY CERTIFY that a) I have made a good faith attempt to resolve this matter prior to my noticing this motion for hearing, and b) the issues before the Court may be heard and resolved by the court within fifteen (15) minutes.

The undersigned attorney ☒ will be / ☐ will *not* be securing the services of a court reporter.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   ttyler@butler.legal
                    apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
*Attorneys for American Zurich Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to the above-named addressee(s) by e-Portal on August 22, 2023.

_____

WILLIAM B. COLLUM, ESQ.

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

     Plaintiff,

                                 Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

     Defendant.
_____/

### **AMENDED NOTICE OF TELEPHONIC HEARING**[1]
JACS Confirmation # 869314

TO:   Counsel of Record:

          Carlos L. Santi, Esq.
          Property & Casualty Law Group
          2307 Douglas Road, Suite 302
          Miami, Florida 33145
          CSanti@pclawgroup.com
          *Attorneys for Plaintiff*

PLEASE TAKE NOTICE that a virtual hearing will be held before The Honorable

James R. Shenko, the Judge of the above-styled Court, by CourtCall, on **Monday,**

**October 2, 2023** at **3:00 p.m.,** or as soon thereafter as same may be heard, on:

    **1.**    **Defendant's Motion for Order to Show Cause and for Attorneys' Fees**
          **and Costs (Filed July 31, 2023)**

TIME RESERVED:   15 minutes.

The parties need to contact CourtCall 3 business days in advance to schedule your

telephonic appearance at 888-882-6878 or online via www.courtcall.com

---

[1] Unilaterally scheduled due to no response from Plaintiff's counsel following multiple attempts to coordinate.

<div style="border:1px solid black; display:inline-block; padding:4px;">**EXHIBIT**<br>**1-U**</div>

I HEREBY CERTIFY that a) I have made a good faith attempt to resolve this matter prior to my noticing this motion for hearing, and b) the issues before the Court may be heard and resolved by the court within fifteen (15) minutes.

The undersigned attorney ☒ will be / ☐ will *not* be securing the services of a court reporter.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.:  1025014
kharris@butler.legal
Secondary:   ttyler@butler.legal
                    apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for American Zurich Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to the above-named addressee(s) by e-Portal on August 22, 2023.

WILLIAM B. COLLUM, ESQ.

2

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

                                     Case No.: 23-CA-005362

vs.

AMERICAN ZURICH INSURANCE
COMPANY,

      Defendant.

_____/

## <u>NOTICE OF CANCELLATION OF HEARING</u>

TO:   Counsel of Record:

         Carlos L. Santi, Esq.
         Property & Casualty Law Group
         2307 Douglas Road, Suite 302
         Miami, Florida 33145
         CSanti@pclawgroup.com
         *Attorneys for Plaintiff*

      PLEASE TAKE NOTICE that the hearing regarding **Defendant, American Zurich Insurance Company's Motion for Order to Show Cause and for Attorneys' Fees and Costs (filed July 31, 2023)** scheduled to be held before The Honorable James R. Shenko, the Judge of the above-styled Court, by courtcall, on **Monday, October 2, 2023 at 3:00 p.m.**, has been <u>**cancelled**</u> given Plaintiff's compliance with the Order that was the subject of the Motion.

                BUTLER WEIHMULLER KATZ CRAIG LLP

                WILLIAM B. COLLUM, ESQ.
                Florida Bar No.: 106316
                wcollum@butler.legal
                KRISTINA F. HARRIS, ESQ.

**EXHIBIT
1-V**

Florida Bar No.:  1025014
kharris@butler.legal
Secondary:    ttyler@butler.legal
                       apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for American Zurich Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to the above-named addressee(s) by e-Portal on August 31, 2023.

_____

WILLIAM B. COLLUM, ESQ.

2

Case 2:23-cv-00739-JLB-K_D Document 1-1 Filed 09/15/23 Page 218 of 252 PageID 228

IN THE CIRCUIT COURT FOR THE 20TH
JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA

CASE NO.: 23-CA-005362

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

_____/

### PLAINTIFF'S NOTICE OF FILING RESPONSES TO INTERROGATORIES

Plaintiff, Swamp Cat Holdings. LLC hereby gives notice of filing the Responses to

Interrogatories.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by email on
August 31, 2023, to      Kristina  F.  Harris  and  William  B.  Collum,  Esquire,
wcollum@butler.legal, and we electronically filed the foregoing with the Clerk of Miami-Dade
County by using the Florida Courts eFiling Portal.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, FL 33145
Tel.: 305-961-1038

**/s/ Carlos Santi**
_____
CARLOS L. SANTI
Florida Bar No. 70529
csanti@pclawgroup.com

EXHIBIT
1-W

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.: 23-CA-005362

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

## PLAINTIFF'S RESPONSES
## TO DEFENDANT'S INTERROGATORIES

Plaintiff, Swamp Cat Holdings, LLC, responds to Defendant's Interrogatories by stating the following:

## GENERAL OBJECTIONS

In responding to these Interrogatories, it has been assumed that Defendant does not seek information or documents protected by the attorney/client privilege or the work product doctrine and this responding party, by answering this discovery, Plaintiff does not waive said privileges.

Plaintiff objects to these Interrogatories as unduly burdensome and oppressive insofar as they seek information or documents already in Defendant's possession or documents equally available to Defendant. Plaintiff further objects to Defendant's Interrogatories as overly broad, unduly burdensome and irrelevant to the extent that they, or any portion thereof, relate to properties, claims, and or policies other than the subject of the instant lawsuit.

Neither the failure to specifically mention a general objection in any response nor the specification of any other objection shall be deemed a waiver of any objection to that discovery request. Without waiving the foregoing objections, Plaintiff responds to Defendant's Interrogatories subject to the following preliminary statement:

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of this litigation. These responses represent this responding party's diligent and best efforts to respond to written discovery based on

EXHIBIT
1-X

the investigations which this responding has thus far been able to carry out in connection with the facts relevant to this litigation. There may exist further information responsive to the discovery that is not within this responding party's present knowledge or reasonably available to this party. There may exist documents relating to the subject matter of written discovery which this responding party has not yet located, identified or reviewed, despite its best efforts to do so. There may exist persons with knowledge relating to the subject matter of written discovery of whom this responding party is not presently aware of or of whom this responding party has not yet conducted interviews. Accordingly, these responses are based upon the facts and information now known to this responding party as well as its present analysis of this litigation and does not constitute an admission or representation that additional facts, documents or witnesses having knowledge relevant to the subject matter of discovery does not exist.

The fact that Plaintiff responded to any of the Interrogatories is not an admission that it accepts or admits the existence of facts set forth or assumed by any interrogatory or that such response is constituted admissible. As this litigation proceeds, this responding party anticipates other facts, documents, or witnesses may be discovered or identified by it. This responding party reserves the right to alter, supplement, amend or otherwise modify these responses, as appropriate, in any way at any time.

**<u>PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES</u>**

1.  . All of the former and current members of SWAMP CAT HOLDINGS COMPANY, LLC,
    since the Date of Loss of September 28, 2022:

    Christian Xavier Gutierrez, 11347 Bluff Oak Lane, Fort Myers, Florida 33912
    Matthew Leger, 9706 Blue Stone Circle, Fort Myers, Florida 33913
    Brian Chevalier, 7748 Cypress Walk Drive, Fort Myers, Florida 33966
    Wesley Sprecher, 17717 Oakmont Ridge Circle, Fort Myers, Florida 33966

2.  Plaintiff Insured is seeking Damages of Eighty-Five Thousand Five Hundred Dollars
    ($85,500.00), which amount includes Pre-Suit Attorney's Fees, as per the attached
    Property Insurance Notice of Intent to Initiate Litigation.  Please see also the attached
    Florida R Group Corporation's Proposal Contract for Sixty-Six Thousand Four Hundred
    Dollars ($66,400.00) for the estimated itemization of the majority of these expenses.
    Please be advised that labor and materials costs may have increased since Plaintiff
    Insured's receipt of this Proposal Contract.  Please also be advised that Plaintiff Insured
    has incurred Taxable Court Costs and additional Attorney's Fees with the Filing and
    Prosecution of this Action.  As such, the total amount of Damages, Taxable Court Costs,
    and Attorney's Fees, has increased.



## Property Insurance Notice of Intent to Initiate Litigation

Notice Number:       **81311**

Notice Accepted:     **2/4/2023 6:13:57 PM**

☑ The submitter hereby states that The Property Insurance Intent to Initiate Litigation Notice is provided pursuant to Section 627.70152, Florida Statutes.

| Claimant (Insured filing suit under a residential or commercial insurance policy) |
|---|
| Name: **Swamp Cat Holdings** |
| Street Address: **1943 Fowler Street** |
| City, State Zip: **Fort Myers, FL 33901** |
| Email Address: **csanti@pclawgroup.com** |
| Policy Number: **ER74033179** |
| Claim Number: **5630086260** |

| Attorney |
|---|
| Name: **Carlos Santi** |
| Street Address: **2307 Douglas Rd. Suite 302** |
| City, State Zip: **Miami, FL 33157** |
| Email Address: **csanti@pclawgroup.com** |
| Florida Bar #: **70529** |
| Firm Name: **Property & Casualty Law Group** |
| Role on Claim: **Represent Insured** |
| * Pursuant to Section 627.70152, Florida Statutes, the Attorney filing this Notice must provide a copy of this Notice to the Claimant. The Claimant's email address is a required field as this Notice will be transmitted to the Claimant upon submission. |

DFS-10-1600
Rev. 07/01/2021

## Notice Details

Insurer Name:

**AMERICAN ZURICH INSURANCE COMPANY(40142)**

\* Make sure to reference the declarations page on the insurance policy to confirm the legal name of the insurance company. If you are unsure about the correct legal name of the underwriting company, please check with the Secretary of State, Division of Corporations, at www.sunbiz.org, or the Office of Insurance Regulation website at www.companysearch.myfloridacfo.gov to search for an insurer's name.

The Department of Financial Services (Department) does not review entries for accuracy, determine the validity of the allegations, nor verify that the proper insurance company has been selected on the Property Insurance Intent to Initiate Litigation Notice (Notice). This system determines whether a filing is accepted based on whether it contains a response in all required fields necessary to submit a complete Property Insurance Intent to Initiate Litigation Notice. No determination is made as to the legal sufficiency of the information provided by the consumer or their counsel in the submission.

Alleged Acts or Omissions of the Insurer:

**The insurance company failed to comply with its policy obligations by 1) failing to conduct an adequate investigation of the loss dated September 28, 2022, 2) failing to adjust all losses, and 3) failing to fully indemnify the insured for all covered damages which include but are not limited to the roofing system, trusses, flooring, walls, and ceiling.**

This Notice is being provided following alleged acts or omissions by the insurer other than the denial of coverage.

| | |
|---|---|
| Presuit Settlement Demand: | **$85,500.00** |
| Damages: | **$80,000.00** |
| Attorney Fees: | **$5,000.00** |
| Costs: | **$500.00** |
| Disputed Amount: | **UNKNOWN** |

## Attachments

No attachments uploaded

DFS-10-1600
Rev. 07/01/2021

# FLORIDA R GROUP, CORP

State General Contractor #1517796

Serving State of Florida since 1992

*7935 NW 16Th ave Miami FL 33147  Off.* **786-554-7926**  *Fax 786-463-6500*

## PROPOSAL CONTRACT

| Name: | SWAMP CAT HOLDINGS COMPANY LLC | | |
|---|---|---|---|
| Job Site | 1943 FOWLER ST FORT MYERS FL 33901 | | |
| Phone: | 831-264-3998 | Date: | December 21, 2022 |
| Mailing Address | 11347 BLUFF OAK LN FORT MYERS FL 33912 | | |
| EMAIL | | | |

## SCOPE OF WORK AND SPECIFICATIONS

1) FRG Corp will obtain a roofing city permit, and file the Notice of commencement as per chapter 713 part I

| | | |
|---|---|---|
| window rafter & roof ( building)permit fee & Permitting/ Plans processing/ Lic fee | $ | 3,800 |
| General Conditions/ /Mobilization/ Dumpster/ Equipment | $ | 6,500 |

### INTERIOR DAMAGES

| | | |
|---|---|---|
| Repair damage rafters beams suppor due water damage leak from roof. Replace the exisitng strap | $ | 14,500 |
| Replace 4 Windows 37X72 impact glass rated | $ | 4,800 |
| Clean floors | $ | 3,500 |
| Re do the insulation in the affected area | $ | 6,800 |
| Replace the exisitng shingle roof with #30 felt and GAF dimentional Aphalt Shingles | $ | 26,500 |
| | $ | 66,400 |

## OTHER SPECIFICATIONS

owner or owner agent initials:_____          **Contractor initials**_____

*Page 1 of 3*

# FLORIDA R GROUP, CORP

State General Contractor #1517796

Serving State of Florida since 1992

*7935 NW 16Th ave Miami FL 33147  Off.* **786-554-7926**  *Fax 786-463-6500*

The owner agrees to provide water, electricity, access to trucks, trailers, cranes or other equipment's to job site

**Delays:** FRG no held responsible for delays due weather conditions, permit approval, inspections, and material availability

**Roof to wall connections**: As per FBC 553.844 F.S. if the property is having insured value or ad valorem taxation for the structure of $300,000 or more, and is not constructed in compliance with FBC nor with SFBC. A registered professional FL engineer inspection is need it (no included in the contract price)If the visual roof strap inspection determines that existing roof to wall connection requires upgrade, any permit, material and labor will be added to the contract price

**Open ceiling:** The roof deck in the exposed ceiling areas need to be renailed as per FBC see the HVHZ form required by  Bld. department. In addition FRG Corp is not responsible for any wood damages caused by nails, debris, asphalt, hot tart smells or particles entering the property. FRG strongly recommend to cover furniture, floor and other items. In the event the nail used go through wood and appear inside, the owner is resposible for any cosmetic work

**Gutters, downspout, Screens:** Are not included in the contract price. Removal and reinstallation is additional charge

**Fascia and overhang soffit with plaster**: No painting, stucco, plastering, ceiling work, crack repair are included in this contract unless is mentioned in specifications

**Deck defects:** Any structural distress indicating ponding condition in the roof deck may not be evident until the existing roof is removed, Rafter corrections due flexing or termite damages additional charge will be applied $180 per L.F. if owner want

**Trade:** All  boilers, water heater, A/C, solar panels and gas pipes not considered incidental work by roofing contractor at the time of re-roof all permit , repair, reinstallation, plumbing, electrical or mechanical permit are not included in this proposal. See Florida Building Code section 301.1(g), 4001.4(a), and 4703.1 using other trade contractor

*Deteriorated wood is included in the contract price* up to 100 Sq Ft.(Roof deck) Ft of 1"X6", 1"X8" tongue & Grove, or up to **3** plywood 8"x4" sheets 1/2" or 5/8". Additional charges: SHEETING will be 1x6, 1x8 T&G at $4 per Ln. Ft. Plywood 1/2", 5/8" at $90 per sheet and $100 per 3/4", T111 plywood $155 per sheet.

**RAFTER ENDS** (2"x4,6,8,10) $15.85 L.F. FURRING $1.60 L.F.

**SOFFIT**:(1/4", 3/8", 1/2")$135 X sheet. (1X4,6,8,10) $12 per L.F. Screens $8 L.F. Framed (4X12)$28 each **FASCIA:**(1"x,6,8,10,12) $12.50 per L.F. (2"X4,6,8,10) $18.65 L.F  **(unless is in "other specification section 1st page")**

Rafters or trusses are structural work and permit is required to modify or replace. FRG, Corp reinforce the the damage area need to be change a change order will be added to this contract

 FRG, Corp guarantee that all materials furnished will be of premium quality, type and condition. FRG guarantees its work **against any workmanship defects** for a period of 5 years from the starting date. This warranty is not assignable or transferible and is not subject to alterations except by a written agreement by the company officer

**Hurricanes**: In the event FRG, Corp need to remove roof materials and re position to complete the scope of work. FRG, Corp  hire a truck delivery company and the owner is responsible for the fees

**Existing roof over roof or double roof system,:** In the event the contractor find shingle roof system over shingle roof, or hot moped over the wood deck additional $ 1.95 per square foot will be applied over contract price

**FB&A void the warranty** Other trade work over the roof,. Utilities companies, A/C, Plumbing, Electrical contractors. Or by footwear traffic, lack of maintenance, termite infestation, hail, tempest, lighting, gale winds any weather condition and by

hurricanes when NHC issue a hurricane warning for you area check the www.nhc.noaa.gov

Permit fees are include on residential re roof, commercial are subject to bld dept rates

**Interruptions:** If the scope of work is interrupted  by other construction trades, owner decision, HOAs or other events FRG, Corp will charge $350  per day in addition due materials storage, dump, labor, gubenamental fees variances.

FRG, Corp no held any responsibililty for sudden rain, driveways, landscape,septic tanks,awnings,fences,screens, delivery company damages, antennas, utilities wires, a/c units, wires& pipes running by attic or past illegal work by other trades etc.

**Attic concealed**: FRG, Corp no held any responsibility for any electric wire, water, gas, A/C lines, or lines in the attic.

the owner is responsible for any damages. The lines must be properly installed 6" below roof deck see  FBC 305.6

**Advertising**: FRG, Corp sign will be posted on the job site until final payment is received, pictures, and or survey comment will be used in the web site or other advertising material

Rigth to hire: FRG corp. reserve the rigth ti hire others subcontractorsto complete the scope of work

**owner or owner agent initials:**_____                    **Contractor initials**_____

*Page 2 of 3*

## FLORIDA R GROUP, CORP

State General Contractor #1517796

Serving State of Florida since 1992

*7935 NW 16Th ave Miami FL 33147  Off.* **786-554-7926**  *Fax 786-463-6500*

**Estimate & pricing:** estimates are good for 15 days in regular season and good for 5 days in hurricane season

**Changes and/ or alterations:**In the event ther are any change in the scope of work described above in this proposal
a writing change of order will be produced and added to the contract price

**Roof permit revision:** if the owner or agent owner need to change after the roof permit is submitted to the Building Dep.
 an additional $295 processing fee will be added to the contract price

**Roof permit Holds:** In the event the roof permit is on hold status by building department due code violations, fines, open
expired, revoked permits or other code compliance issues, ($125 per visit will be applied to the contract price)
Roof Permit belongs to FRG Corp. we provide a copy of permit if the owner need the original a $250 fee charged

**Legal expenses:**All legal expenses incurred by FRG Corp for collection of the contract price, any installments due there under
shall be paid by the owner whether suit be filed or not, as well attorney fees, court cost, collection agencies, or liquid damages
for interruptions in supply accounts due lack of payments FRG also reserves the right to cancel the warranty and stop work

**Lien Law: According to Florida construction lien law section 713.001-713.37 Florida statutes, Those who work on your
property or provide materials and are not paid in full have right to enforce  their claim for payment against you property. Th
claim is known as a  _construction lien_ , This means if a lien is filed your property could be sold against you will
to pay forlabor materials, or other services the contractor may have filed to pay. Florida construction Law
is complex and it is recommended consult an attorney**

**Cancellation:** The owner can cancel this contract within 48 hrs, after may be achieved by paying 50% of the contract price or
insurance claim for work

**Payments:** The contract price is net cash. Credit card payment is accepted with a 3% fee charge over the contract price
for convenience fee. On all accounts over 30 days past billing date, interest will be charges at the rate of 5% monthly

Each  payments needs to be paid before we proceed with next phase and are not refundable including any extra fee

**Roof Materials suppliers:**The suppliers will send you a notice to owner after delivery. Once you made the "final the payment to the
contractor, FRG, corp will provide the release of lien, This procedure is completely normal

The Materials cost are increasing monthly mainly due to high demand and low supply. The limited supply is due to Covid-19 and
issues combined with Foreign Trade Regulations have increased pricing.As a result, FRG corp will take a material quotation upon
sign the contract and when start the scope of work. The owner will assume the difference or variance in the price

| NET CASH - INVOICES ARE DUE WHEN RENDERED | | |
|---|---|---:|
| Upon | sign the contract | $9,400 |
| Upon | permit is ready | $35,000 |
| Upon | roof scope of work is complete | $12,000 |
| Upon | window scope of work is complete | $5,000 |
| Upon | | |
| Upon | final inspection signed | $5,000 |
| We propose to furnish labor & material, complete in accordance with the above specifications for the sum of: | | |
| | *SIXTY SIX  THOUSAND  FOUR HUNDRED  DOLLARS* | *$66,400* |

**Acceptance of contract**: The above prices, specifications and condition are satisfactory and are hereby accepted. FB&A Corp
is authorized to do the work as specified. Payments will be made as outlined above. This proposal bes the power of a
contract when is signed

| | |
|---|---|
| **Signature of Owner or Owner agent** | **Signature of Qualifier** |
| By: | By:    Luis Avendano |
| **Print Name** | **Qualifier name** |

*Page 3 of 3*

IN THE CIRCUIT COURT FOR THE 20TH
JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA

CASE NO.: 23-CA-005362

Swamp Cat Holdings, LLC,

Plaintiff,

v.

American Zurich Insurance Company,

Defendant.

_____/

## PLAINTIFF'S NOTICE OF FILING JURAT PAGE

Plaintiff,  Swamp Cat Holding,  hereby gives notice of filing the Jurat page to verify

interrogatories filed August 31, 2023.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by email on
September 6, 2023, to    Kristina   F.   Harris   and   William   B.   Collum,   Esquire,
wcollum@butler.legal, and we electronically filed the foregoing with the Clerk of Miami-Dade
County by using the Florida Courts eFiling Portal.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, FL 33145
Tel.: 305-961-1038

**/s/ Carlos Santi**
_____
CARLOS L. SANTI
Florida Bar No. 70529
csanti@pclawgroup.com

EXHIBIT
1-Y

I/WE HAVE READ THE FOREGOING RESPONSES TO INTERROGATORIES AND DO SWEAR THAT THEY ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Swamp Cat Holdings, LLC

By: Christian Gutierrez. CEO

STATE OF FLORIDA
COUNTY OF LEE

The foregoing Responses to Interrogatories were acknowledged before me by Swamp Cat Holdings, LLC who is personally known to me, or who produced as identification: FL D.L _____ , and who (X) did ( ) did not take an oath.

Dated this __1__ day of __Sept_____ , 2023

Notary Public, State of Florida

Angela J Nallihan
Printed/Typed Name of Notary

_____
Notary Serial Number

Notary Public State of Florida
Angela J Hallihan
My Commission GG 983915
Expires 08/30/2024

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

      Plaintiff,

                                Case No.:  23-CA-005362

v.

AMERICAN ZURICH INSURANCE
COMPANY,

      Defendant.

_____/

**<u>DEFENDANT'S CERTIFICATION AND NOTICE OF FILING NOTICE OF REMOVAL</u>**

      TO:    Clerk of the Court
             Twentieth Judicial Circuit
             Lee County, Florida
             2075 Dr. Martin Luther King Jr. Blvd.
             Fort Myers, Florida  33901

PLEASE TAKE NOTICE that on September 15, 2023, Defendant, AMERICAN

ZURICH INSURANCE COMPANY ("ZURICH"), in the above-styled action, submitted to

the office of the Clerk of the United States District Court for the Middle District of Florida,

Fort Myers Division, for filing a Notice of Removal pursuant to 28 U.S.C. § 1441-1452.  A

copy of the Notice of Removal is attached hereto as **Exhibit A**.

ZURICH respectfully requests that this Court proceed no further with this action,

unless this action is remanded to State Court.  Absent entry of a remand by the United

States District Court for the Middle District of Florida, Fort Myers Division, this court is

divested of jurisdiction in this case and is thereby requested to stay all further proceedings

in accordance with 28 U.S.C. § 1446 (d).

Dated this 15th day of September, 2023.

EXHIBIT

1-Z

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.: 106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.: 106316
kharris@butler.legal
Secondary: ttyler@butler.legal
              apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant, American Zurich Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL 33145
CSanti@pclawgroup.com
*Attorney for Plaintiff*

by ePortal on September 15, 2023.

WILLIAM B. COLLUM, ESQ.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SWAMP CAT HOLDING, LLC,

      Plaintiff,

vs.

AMERICAN ZURICH
INSURANCE COMPANY,

      Defendant.

_____/

CASE NO.: _____

### **NOTICE OF REMOVAL**

Defendant, AMERICAN ZURICH INSURANCE COMPANY ("ZURICH"), by and through its undersigned counsel, hereby files its Notice of the Removal of this cause to the United States District Court for the Middle District of Florida, Fort Myers Division, and states as grounds for such removal the following:

1.    On April 3, 2023, Plaintiff, SWAMP CAT HOLDING, LLC[1] ("Plaintiff"), filed this action in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, Case No. 23-CA-005362 ("State Action").

2.    On April 20, 2023, ZURICH was served with a Summons and copy of the Complaint in connection with the State Action.  Pursuant to 28 U.S.C § 1446(a), a copy of all process and pleadings are attached hereto as **Composite Exhibit "1"** as

---

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".



EXHIBIT
A

follows:

A.    Civil Cover Sheet;

B.    Notice of Service of Process and Summons;

C.    Plaintiff's Complaint;

D.    Plaintiff's First Request for Production;

E.    Plaintiff's Notice of Serving First Set of Interrogatories;

F.    Standing Order in Circuit Civil Cases;

G.    Judicial Memorandum;

H.    Return of Service;

I.    Defendant's Motion for Extension of Time to Respond to Plaintiff's Complaint;

J.    Defendant's Motion for Extension of Time to Respond to Plaintiff's Discovery;

K.    Defendant's Notice of Serving Interrogatories to Plaintiff and Defendant's First Set Of Interrogatories to Plaintiff, Swamp Cat Holding, LLC;

L.    Defendant's Answer, Affirmative Defenses, and Demand for Jury Trial;

M.    Defendant's Response to Plaintiff's First Request for Production;

N.    Defendant's Notice of Serving Answers to Plaintiff's First Set of Interrogatories;

O.    Defendant's Privilege Log;

P.    Defendant's Motion to Compel Discovery;

Q.      Plaintiff's Motion for Extension of Time to Respond to Defendant's
        Discovery Requests;

R.      Agreed Order (1) Granting Plaintiff's Motion for Extension of Time to
        Respond to Defendant's Discovery Requests and (2) Denying
        Defendant's Motion to Compel Discovery as Moot;

S.      Defendant's Motion for Order to Show Cause and for Attorneys' Fees
        and Costs;

T.      Notice of Telephonic Hearing;

U.      Amended Notice of Telephonic Hearing;

V.      Notice of Cancellation of Hearing;

W.      Plaintiff's Notice of Filing Responses to Interrogatories;

X.      Plaintiff's Responses to Defendant's Interrogatories;

Y.      Plaintiff's Notice of Filing Jurat Page;

Z.      Defendant's Certification and Notice of Filing Notice of Removal; and

AA.     Defendant's Notice of Removal to Opposing Counsel.

3.      This Notice of Removal is filed in the United States District Court for the
Middle District of Florida, Fort Myers Division, the court for the district and division
which embraces the state court where the removed State Action was pending, and is
filed within the time provided for the removal of actions to the United States District
Court.  *See* 28 U.S.C § 1446(b).

3

## TIMELY NOTICE OF REMOVAL

4.      This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b)(3) because ZURICH was initially unable to ascertain whether diversity of citizenship existed between the parties and whether the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

5.      ZURICH did not know whether the case was removable when it was served with the Complaint because ZURICH was unaware of the identity of all the members of Plaintiff and the Complaint was silent as to the identity and citizenship of all the members of Plaintiff, which is a limited liability company.

6.      Further, the identity and citizenship of all the members of Plaintiff was not revealed in the public records.

7.      Additionally, the Complaint did not state the specific amount of damages sought by Plaintiff, only stating that the lawsuit was an action for damages that exceed $30,000.00.

8.      ZURICH therefore served Plaintiff with limited discovery requests on May 10, 2023, to determine the identity and citizenship of the members of Plaintiff for the purpose of determining whether diversity exists between the parties as well as to determine whether the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

9.      On August 31, 2023, ZURICH discovered that the case was removable under federal diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) as diversity exists

between the parties and the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

10.    On August 31, 2023, Plaintiff answered ZURICH's written interrogatories and identified the members of Plaintiff, who are all citizens of Florida, as further set forth below. *See* Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

11.    ZURICH is permitted 30 days to remove a case from the receipt of the first post-suit paper that provides the basis for removal. *See* 28 U.S.C. §1446(b)(3); *see also Lowery v. AL. Power Co.*, 483 F.3d 1184, 1214 (11th Cir. 2007) (discussing that a party must remove within 30 days of receiving the document that provides the basis for removal). Interrogatory answers constitute 'other paper' for the purposes of 28 U.S.C. §1446(b)(3). *See Del Rio v. Scottsdale Ins. Co.*, No. 605CV1429ORL19JGG, 2005 WL 3093434 at *4 (M.D. Fla., Nov. 18, 2005); *Field v. Nat'l Life Ins. Co.*, No. 8:00-CV-989-T-24TBM, 2001 WL 77101 at *9 (M.D. Fla., Jan. 22, 2001).

12.    Therefore, pursuant to 28 U.S.C. §1446(b)(3), ZURICH timely files this Notice of Removal within 30 days after ZURICH's receipt of Plaintiff's interrogatory answers from which it first ascertained that the case is one which is removable.

## DIVERSITY OF CITIZENSHIP

13.    At the time of the lawsuit and the filing of this Notice of Removal, there was and still is complete diversity between Plaintiff (citizen of Florida) on the one hand and Defendant (not a Florida citizen) on the other.

5

14.     A corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C § 1332(c)(1); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1183 (2010)("The phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's actions i.e. its 'nerve center'").

15.     At all times material to this action, ZURICH was and is incorporated in State of Illinois, having its principal place of business in the State of Illinois. Accordingly, at all times material to this action, ZURICH was and is a citizen of the State of Illinois for purposes of determining diversity under 28 U.S.C. § 1332(c)(1). ZURICH is not a citizen of or incorporated in any other state.

16.     Plaintiff is and was at the time the Complaint was filed, a limited liability company. For purposes of determining diversity of citizenship, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). An individual is a citizen of the state in which he or she is domiciled, which is the state where the individual maintains his or her "true, fixed, and permanent home." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002)(per curiam).

17.     Plaintiff is a Florida limited liability company with its principal place of business in Lee County, Florida 33901. Plaintiff has four (4) members: Christian Xavier Gutierrez, Matthew Leger, Brian Chevalier, and Wesley Sprecher, all of whom are identified as domiciled in the State of Florida. *See* Exhibit 1-X, Plaintiff's Responses to Defendant's Interrogatories.

6

18.    Accordingly, Plaintiff is a citizen of the State of Florida for purposes of determining diversity under 28 U.S.C. § 1332(c)(1) because all of Plaintiff's members are citizens of the State of Florida, and only the State of Florida.

19.    Thus, because Plaintiff is a citizen of Florida and ZURICH is a citizen of Illinois, complete diversity exists between the parties in accordance with 28 U.S.C. §1332.

## AMOUNT IN CONTROVERSY

20.    In this case, the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.    ZURICH issued an insurance Policy, No. ER74033179, to Plaintiff to insure the Property located at 1943 Fowler Street, Fort Myers, Florida 33901. *See* Complaint ¶¶ 6 and 7.

22.    Plaintiff brought this action against ZURICH for breach of contract pursuant to the terms of the subject policy of insurance.

23.    Specifically, Plaintiff contends that ZURICH failed to pay insurance proceeds to Plaintiff for damages sustained to the subject property. *See* Complaint ¶¶ 10 and 11.

24.    Plaintiff's Complaint asserts a cause of action for breach of contract related to ZURICH's adjustment of Plaintiff's claim and alleges that its damages exceed $30,000.00 exclusive of attorney's fees and costs.

25.    Prior to filing suit, Plaintiff filed a Property Insurance Notice of Intent to Initiate Litigation, notice number 81311, which included a pre-suit settlement

demand of $85,500.00. Therein, Plaintiff identified $80,000.00 as the damages claimed, exclusive of attorney's fees and costs. *See* Property Insurance Notice of Intent to Initiate Litigation, notice number 81311, attached to Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

26.     Prior to the filing of the State Action, ZURICH found coverage for Plaintiff's claim in the amount of $18,484.59, however no payment was issued to Plaintiff as the amount of the damages fell below the applicable $35,250.00 deductible.

27.     On August 31, 2023, Plaintiff answered ZURICH's written interrogatories and identified $85,500.00 as the amount of damages sought by Plaintiff, for the subject property as a result of the loss referenced in the Complaint. *See* Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

28.     Thus, based upon Plaintiff's representation in their Responses to Defendant's Interrogatories, the amount in controversy herein exceeds the jurisdictional requirement of $75,000.00, exclusive of interests and costs.

## CONCLUSION

29.     This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, as Plaintiff and ZURICH are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

30.     ZURICH has noticed the adverse party, Plaintiff, of this Removal by notifying Plaintiff's attorney of record. *See* **Exhibit 2.**

31.    ZURICH has filed a written notice with the Clerk of the Court of the Twentieth Judicial Circuit in and for Lee County, Florida in compliance with 28 U.S.C § 1446 (d). *See* **Exhibit 3.**

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.:  106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.: 106316
kharris@butler.legal
Secondary: ttyler@butler.legal
            apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Zurich American Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2023, the foregoing was filed with the Clerk of the Court via the CM/ECF system.  I further certify that a true and correct copy of the foregoing has been furnished this day via Electronic Mail to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL 33145
CSanti@pclawgroup.com
*Attorney for Plaintiff*

WILLIAM B. COLLUM, ESQ.

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

SWAMP CAT HOLDING, LLC

     Plaintiff,

                             Case No.:  23-CA-005362

v.

AMERICAN ZURICH INSURANCE
COMPANY,

     Defendant.

_____/

## DEFENDANT'S NOTICE OF REMOVAL TO OPPOSING COUNSEL

TO:    Carlos L. Santi, Esq.
         Property & Casualty Law Group
         2307 Douglas Road, Suite 302
         Miami, FL 33145
         CSanti@pclawgroup.com
         *Attorney for Plaintiff*

YOU ARE HEREBY NOTIFIED that Defendant, AMERICAN ZURICH INSURANCE COMPANY, in the above-styled action has, on this day, filed a Notice of Removal to the United States District Court for the Middle District of Florida, Fort Myers Division.  A copy of the Notice of Removal is attached hereto as **Exhibit A**.  The removal of the above-styled action to the United States District Court for the Middle District of Florida has been effectuated thereby.

Please serve the undersigned with copies of all pleadings that may be filed by you in the United States District Court for the Middle District of Florida pursuant to the removal of this cause and in accordance with the Federal Rules of Civil Procedure.

Dated this 15th day of September, 2023.

EXHIBIT
1-AA

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.: 106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.: 106316
kharris@butler.legal
Secondary: ttyler@butler.legal
            apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant, American Zurich Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL 33145
CSanti@pclawgroup.com
*Attorney for Plaintiff*

by ePortal on September 15, 2023.

WILLIAM B. COLLUM, ESQ.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SWAMP CAT HOLDING, LLC,

      Plaintiff,

vs.

AMERICAN ZURICH
INSURANCE COMPANY,

      Defendant.

_____/

CASE NO.: _____

## <u>NOTICE OF REMOVAL</u>

Defendant, AMERICAN ZURICH INSURANCE COMPANY ("ZURICH"), by and through its undersigned counsel, hereby files its Notice of the Removal of this cause to the United States District Court for the Middle District of Florida, Fort Myers Division, and states as grounds for such removal the following:

1.    On April 3, 2023, Plaintiff, SWAMP CAT HOLDING, LLC[1] ("Plaintiff"), filed this action in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, Case No. 23-CA-005362 ("State Action").

2.    On April 20, 2023, ZURICH was served with a Summons and copy of the Complaint in connection with the State Action.  Pursuant to 28 U.S.C § 1446(a), a copy of all process and pleadings are attached hereto as **Composite Exhibit "1"** as

---

[1] Zurich understands that Plaintiff's correct corporate legal name is "Swamp Cat Holdings Company, LLC". Zurich is willing to enter into an agreed order amending the complaint by interlineation to correct all references to Plaintiff as "Swamp Cat Holdings Company, LLC".



follows:

    A.    Civil Cover Sheet;

    B.    Notice of Service of Process and Summons;

    C.    Plaintiff's Complaint;

    D.    Plaintiff's First Request for Production;

    E.    Plaintiff's Notice of Serving First Set of Interrogatories;

    F.    Standing Order in Circuit Civil Cases;

    G.    Judicial Memorandum;

    H.    Return of Service;

    I.    Defendant's Motion for Extension of Time to Respond to Plaintiff's Complaint;

    J.    Defendant's Motion for Extension of Time to Respond to Plaintiff's Discovery;

    K.    Defendant's Notice of Serving Interrogatories to Plaintiff and Defendant's First Set Of Interrogatories to Plaintiff, Swamp Cat Holding, LLC;

    L.    Defendant's Answer, Affirmative Defenses, and Demand for Jury Trial;

    M.    Defendant's Response to Plaintiff's First Request for Production;

    N.    Defendant's Notice of Serving Answers to Plaintiff's First Set of Interrogatories;

    O.    Defendant's Privilege Log;

    P.    Defendant's Motion to Compel Discovery;

Q.     Plaintiff's Motion for Extension of Time to Respond to Defendant's Discovery Requests;

R.     Agreed Order (1) Granting Plaintiff's Motion for Extension of Time to Respond to Defendant's Discovery Requests and (2) Denying Defendant's Motion to Compel Discovery as Moot;

S.     Defendant's Motion for Order to Show Cause and for Attorneys' Fees and Costs;

T.     Notice of Telephonic Hearing;

U.     Amended Notice of Telephonic Hearing;

V.     Notice of Cancellation of Hearing;

W.     Plaintiff's Notice of Filing Responses to Interrogatories;

X.     Plaintiff's Responses to Defendant's Interrogatories;

Y.     Plaintiff's Notice of Filing Jurat Page;

Z.     Defendant's Certification and Notice of Filing Notice of Removal; and

AA.    Defendant's Notice of Removal to Opposing Counsel.

3.     This Notice of Removal is filed in the United States District Court for the Middle District of Florida, Fort Myers Division, the court for the district and division which embraces the state court where the removed State Action was pending, and is filed within the time provided for the removal of actions to the United States District Court.  *See* 28 U.S.C § 1446(b).

## TIMELY NOTICE OF REMOVAL

4.      This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b)(3) because ZURICH was initially unable to ascertain whether diversity of citizenship existed between the parties and whether the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

5.      ZURICH did not know whether the case was removable when it was served with the Complaint because ZURICH was unaware of the identity of all the members of Plaintiff and the Complaint was silent as to the identity and citizenship of all the members of Plaintiff, which is a limited liability company.

6.      Further, the identity and citizenship of all the members of Plaintiff was not revealed in the public records.

7.      Additionally, the Complaint did not state the specific amount of damages sought by Plaintiff, only stating that the lawsuit was an action for damages that exceed $30,000.00.

8.      ZURICH therefore served Plaintiff with limited discovery requests on May 10, 2023, to determine the identity and citizenship of the members of Plaintiff for the purpose of determining whether diversity exists between the parties as well as to determine whether the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

9.      On August 31, 2023, ZURICH discovered that the case was removable under federal diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) as diversity exists

between the parties and the amount in controversy exceeds the jurisdictional requirement of $75,000.00.

10.    On August 31, 2023, Plaintiff answered ZURICH's written interrogatories and identified the members of Plaintiff, who are all citizens of Florida, as further set forth below. *See* Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

11.    ZURICH is permitted 30 days to remove a case from the receipt of the first post-suit paper that provides the basis for removal. *See* 28 U.S.C. §1446(b)(3); *see also Lowery v. AL. Power Co.*, 483 F.3d 1184, 1214 (11th Cir. 2007) (discussing that a party must remove within 30 days of receiving the document that provides the basis for removal). Interrogatory answers constitute 'other paper' for the purposes of 28 U.S.C. §1446(b)(3). *See Del Rio v. Scottsdale Ins. Co.*, No. 605CV1429ORL19JGG, 2005 WL 3093434 at *4 (M.D. Fla., Nov. 18, 2005); *Field v. Nat'l Life Ins. Co.*, No. 8:00-CV-989-T-24TBM, 2001 WL 77101 at *9 (M.D. Fla., Jan. 22, 2001).

12.    Therefore, pursuant to 28 U.S.C. §1446(b)(3), ZURICH timely files this Notice of Removal within 30 days after ZURICH's receipt of Plaintiff's interrogatory answers from which it first ascertained that the case is one which is removable.

## DIVERSITY OF CITIZENSHIP

13.    At the time of the lawsuit and the filing of this Notice of Removal, there was and still is complete diversity between Plaintiff (citizen of Florida) on the one hand and Defendant (not a Florida citizen) on the other.

5

14.    A corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C § 1332(c)(1); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1183 (2010)("The phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's actions i.e. its 'nerve center'").

15.    At all times material to this action, ZURICH was and is incorporated in State of Illinois, having its principal place of business in the State of Illinois. Accordingly, at all times material to this action, ZURICH was and is a citizen of the State of Illinois for purposes of determining diversity under 28 U.S.C. § 1332(c)(1). ZURICH is not a citizen of or incorporated in any other state.

16.    Plaintiff is and was at the time the Complaint was filed, a limited liability company. For purposes of determining diversity of citizenship, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). An individual is a citizen of the state in which he or she is domiciled, which is the state where the individual maintains his or her "true, fixed, and permanent home." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002)(per curiam).

17.    Plaintiff is a Florida limited liability company with its principal place of business in Lee County, Florida 33901. Plaintiff has four (4) members: Christian Xavier Gutierrez, Matthew Leger, Brian Chevalier, and Wesley Sprecher, all of whom are identified as domiciled in the State of Florida. *See* Exhibit 1-X, Plaintiff's Responses to Defendant's Interrogatories.

6

18.     Accordingly, Plaintiff is a citizen of the State of Florida for purposes of determining diversity under 28 U.S.C. § 1332(c)(1) because all of Plaintiff's members are citizens of the State of Florida, and only the State of Florida.

19.     Thus, because Plaintiff is a citizen of Florida and ZURICH is a citizen of Illinois, complete diversity exists between the parties in accordance with 28 U.S.C. §1332.

## AMOUNT IN CONTROVERSY

20.     In this case, the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     ZURICH issued an insurance Policy, No. ER74033179, to Plaintiff to insure the Property located at 1943 Fowler Street, Fort Myers, Florida 33901. *See* Complaint ¶¶ 6 and 7.

22.     Plaintiff brought this action against ZURICH for breach of contract pursuant to the terms of the subject policy of insurance.

23.     Specifically, Plaintiff contends that ZURICH failed to pay insurance proceeds to Plaintiff for damages sustained to the subject property. *See* Complaint ¶¶ 10 and 11.

24.     Plaintiff's Complaint asserts a cause of action for breach of contract related to ZURICH's adjustment of Plaintiff's claim and alleges that its damages exceed $30,000.00 exclusive of attorney's fees and costs.

25.      Prior to filing suit, Plaintiff filed a Property Insurance Notice of Intent to Initiate Litigation, notice number 81311, which included a pre-suit settlement

demand of $85,500.00. Therein, Plaintiff identified $80,000.00 as the damages claimed, exclusive of attorney's fees and costs. *See* Property Insurance Notice of Intent to Initiate Litigation, notice number 81311, attached to Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

26.    Prior to the filing of the State Action, ZURICH found coverage for Plaintiff's claim in the amount of $18,484.59, however no payment was issued to Plaintiff as the amount of the damages fell below the applicable $35,250.00 deductible.

27.    On August 31, 2023, Plaintiff answered ZURICH's written interrogatories and identified $85,500.00 as the amount of damages sought by Plaintiff, for the subject property as a result of the loss referenced in the Complaint. *See* Plaintiff's Responses to Defendant's Interrogatories, included in Composite Exhibit 1-X.

28.    Thus, based upon Plaintiff's representation in their Responses to Defendant's Interrogatories, the amount in controversy herein exceeds the jurisdictional requirement of $75,000.00, exclusive of interests and costs.

## CONCLUSION

29.    This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, as Plaintiff and ZURICH are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

30.    ZURICH has noticed the adverse party, Plaintiff, of this Removal by notifying Plaintiff's attorney of record. *See* **Exhibit 2.**

31.    ZURICH has filed a written notice with the Clerk of the Court of the Twentieth Judicial Circuit in and for Lee County, Florida in compliance with 28 U.S.C § 1446 (d). *See* **Exhibit 3.**

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM B. COLLUM, ESQ.
Florida Bar No.: 106316
wcollum@butler.legal
KRISTINA F. HARRIS, ESQ.
Florida Bar No.: 106316
kharris@butler.legal
Secondary: ttyler@butler.legal
          apendino@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Zurich American Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2023, the foregoing was filed with the Clerk of the Court via the CM/ECF system. I further certify that a true and correct copy of the foregoing has been furnished this day via Electronic Mail to:

Carlos L. Santi, Esq.
Property & Casualty Law Group
2307 Douglas Road, Suite 302
Miami, FL 33145
CSanti@pclawgroup.com
*Attorney for Plaintiff*

WILLIAM B. COLLUM, ESQ.