UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SWAMP CAT HOLDINGS, LLC,

    Plaintiff,

v.                                      Case No.:   2:23-cv-739-JLB-KCD

AMERICAN ZURICH
INSURANCE COMPANY,

    Defendant.
_____/

## **HURRICANE IAN SCHEDULING ORDER**

    Pursuant to Rule 16 and consistent with Rule 1's commitment to the prompt, fair, and efficient resolution of this action, this order implements a case management plan tailored to the circumstances of an insurance dispute about property damage caused by Hurricane Ian. At any time, the parties may consent to proceed—for all purposes—before the assigned Magistrate Judge by filing an AO 85 form available on the court's website. [1] *See* Rule 73(b)(2). And should the parties resolve the dispute at any time, they shall immediately file an appropriate paper to terminate this action.[2]

    Within **14 days** of filing a Response to the Complaint, the parties shall jointly file a certification they are familiar with and will abide by the court's local rules and the orders entered as of their certification date in this matter.

    Except as stated in this order, all disclosure obligations, and discovery are **STAYED**.[3] By stipulation, the parties may extend or narrow the scope of automatic discovery set forth in sections IV and V below. *See* Fed. R. Civ. P. 29(b).

---

[1] The presiding judges' webpages also disclose judge-specific preferences and requirements.

[2] *See also* Local Rule 3.09 (requiring notice of any agreement to resolve any part of the action even if contingent or unwritten).

[3] The stay encompasses the Rule 26(f) discovery conference.

### I. Appraisal

Any motion for appraisal must be filed no later than **21 days** after a Response to the Complaint is filed. Filing a motion for appraisal tolls the deadlines in this order. **If the parties agree that appraisal is appropriate, they should stipulate, and the case will be stayed**.

When conferring about appraisal, the parties should consider the "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means . . . for which the parties have themselves contracted." *McGowan v. First Acceptance Ins. Co., Inc.*, 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (quoting *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-1202 (Fla. 3d DCA 1995)). When an insurance policy contains an appraisal provision, "the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, 'neither party has the right to deny that demand.'" *McGowan*, 411 F. Supp. 3d at 1296 (quoting *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. 3d DCA 1994)). And like other stipulations about dispute resolution, the court enforces contractual appraisal provisions by non-dispositive order. *See Positano Place at Naples II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-181-SPC-MRM, 2022 WL 714809, *2 (M.D. Fla. Mar. 10, 2022) ("[B]ecause appraisal will not dispose of any claims or defenses, the Court does not treat the motion to compel appraisal as one for summary judgment.") (citing *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38-NPM, 2019 WL 3852731, *2 (M.D. Fla. Aug. 16, 2019)).

Motions to compel appraisal, to appoint an umpire for an appraisal, or to compel discovery to inform an appraisal may be governed by the Federal Arbitration Act. *See Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (appraisal constitutes an arbitration for purposes of the FAA); *Martinique Properties, LLC v. Certain Underwriters at Lloyd's London*, 567 F. Supp. 3d 1099, 1106 (D. Neb. 2021), *aff'd sub nom.*, 60 F.4th 1206 (8th Cir. 2023) (same); *Register v. Certain Underwriters At Lloyd's*, No. 5:20-cv-52-TKW-MJF, 2020 WL 6106624, *3 (N.D. Fla. Apr. 20, 2020) (same for another federal arbitration statute); *Liberty Mut. Grp., Inc. v. Wright*, No. CIV.A. DKC 12-0282, 2012 WL 718857, *6 (D. Md. Mar. 5, 2012) (requests to appoint an appraisal umpire are processed as motions under the FAA); *see also Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004) (an agreed method to reach a binding resolution by a third-party neutral about a fact in dispute constitutes an arbitration for purposes of the FAA).

## II.   Motions to Amend

Any motion to amend a pleading or join a party must be filed no later than **60 days** after a Response to the Complaint has been filed.

## III.   Automatic Discovery

### A.   Initial Disclosures

To facilitate the parties' necessary evaluation and potential resolution of this action before the court's initial case management conference, this order requires the automatic disclosure of certain information and documents in an expedited manner. These requirements are limited to information and documents not subject to objection. But unlike disclosures under Rule 26(a)(1) these automatic disclosures include favorable as well as unfavorable information and documents. The provisions of this order replace the initial-disclosure requirements of Rule 26(a)(1).[4]

### B.   Definitions

1. "Any" means "all" and refers to every one of the available items rather than a subset of them.

2. "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer.

3. "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in Rule 34(a)(1)(A). A draft of a document or a nonidentical copy is a separate document.

4. "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

5. When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s),

---

[4] Nothing in this Hurricane Scheduling Order shall be construed as precluding a party from offering additional information that the party may reasonably consider helpful for evaluating the legal and factual contentions at issue in the litigation.

3

according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

6. When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) present or last known email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified under this subparagraph, only the name of that person need be listed in response to later requests to identify that person.

7. When referring to a corporation, company, partnership, or association, to "identify" means to give the: (i) entity name and, if known, the trade or other names under which it has done business during the relevant time; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified under this subparagraph, only the name of that entity needs to be listed in response to later requests to identify that entity.

8. "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation or asserting a claim under an assignment.

9. "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

10. "Loss" means damage to the Property alleged to have been caused by the Event.

11. "Meet and Confer" means to discuss issues during a real-time dialogue. An exchange of emails or other correspondence may complement the discussion but alone does not suffice.

12. "NFIP Claim" means a claim the Insured asserts in the litigation for coverage under a National Flood Insurance Program insurance policy.

13. "Other Insurance" means any insurance policy, other than the Policy, in force on the date of the Event that covers or potentially covers the Property or the Claimed Loss.

14. "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

15. "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

16. "Relating to" means concerning, referring, describing, evidencing, or constituting.

17. "Response to the Complaint" means the later of either an answer, Rule 12 motion, or notice of removal.

## C. Instructions

1. The relevant period for the Automatic Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different period is indicated regarding a specific production obligation as explained in Parts IV or V below.

2. The Automatic Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to Rule 26(b)(5) or applicable state rules. A detailed privilege log is not required. Instead, documents withheld as privileged, or work-product protected communications may be described briefly by category or type. Withholding documents on this basis alleviates no obligation to produce the withheld documents or additional information about them later if the court orders or the applicable rules require.

3. If a partial, incomplete, or "unknown at this time" answer or production is supplied for any requirement in this order, the disclosing party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

4. For the Automatic Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. The Automatic Discovery is subject to Rule 26(e) on supplementation and Rule 26(g) on certification of responses. The Automatic Discovery precludes neither party from seeking additional discovery under the rules after the discovery stay is lifted.

5. The Automatic Discovery is subject to Rule 34(b)(2)(E) on the form of production.

6. The Automatic Discovery is subject to the contemporaneously docketed Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place unless the parties agree to, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to discovery conducted after the stay of discovery is lifted.

7. Production: Within **14 days** after a Response to the Complaint is filed and as appropriate thereafter, the attorneys must Meet and Confer about the method and format (e.g., TIFF/text, searchable PDF, or Excel) of production, including whether the production will occur through electronic means. All produced documents must be Bates-stamped.

8. Electronically stored information (ESI): If ESI is implicated, the parties shall first Meet and Confer in good faith to narrow or resolve any ESI issues. Thereafter, any disputes may be brought to the court by motion. Any requests for

        electronically stored information must address, with specificity, the standard in Rule 26(b)(1).

9. Failure to Disclose: To the extent any party asserts that the adversary has failed to make appropriate disclosures, the party shall first make a written request setting forth, with specificity, the documentation and/or other information the party believes has not been disclosed. The adversary must provide a written response within five days from receipt of the initial correspondence. The parties shall then Meet and Confer to engage in a good-faith effort to narrow or resolve the dispute. Thereafter, any dispute shall be brought to the court by motion.

10. When the inadvertent or mistaken disclosure of any information, document, or thing protected by privilege or work-product immunity is discovered by the producing party and brought to the attention of the receiving party, the receiving party's treatment of such material shall be under Rule 26(b)(5)(B). Inadvertent or mistaken disclosure of such information, document, or thing shall not by itself constitute a forfeiture by the producing party of any claims of privilege or work-product immunity. And nothing here restricts the right of the receiving party to appropriately challenge the producing party's claims of privilege or work-product within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

11. Discovery motions: The court expects that discovery motions will be rare if not nonexistent. All discovery motions about written discovery (as provided in Part VII below) and about fact-witness depositions (as provided in Part VIII below) must be filed within **150 days** of a Response to the Complaint.

## IV.  Insured's Automatic Discovery

A. Timing: The Insured's Automatic Discovery responses must be provided within **45 days** after a Response to the Complaint has been filed.

7

B. The Insured will provide the following information about the Property:

1. the current address of each Insured;

2. the address of the Property;

3. a description of the Insured's ownership or other interest in the Property;

4. the name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured and/or the Property on the date of the Loss, including relevant claim numbers for any claims;

5. a detailed and itemized statement of claimed damages, including content claims if in dispute;

6. any mortgagee or other known lienholder for the Property;

7. a statement of any amounts paid or offered to be paid under the Policy, the source of the payment, and a detailed itemization of those items for which insured claims underpayment with citation to the supporting documentation;

8. the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss;

9. any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss;

10. the name of any public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss;

8

11. as for any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured about the Property;

12. a general description of any known preexisting damage to the Property relating to the Claimed Loss;

13. a general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property;

14. a statement setting forth any sale, transfer, or foreclosure of the Property after the Event;

15. a statement setting forth prior attempts at arbitration or mediation for any portion of the Loss, if any; and

16. for any portion of the Loss, the Identity of any other Hurricane Ian related lawsuits, including the caption, court, docket number, and a general description of the case.

C. The Insured must provide these documents about the Property:

1. all documents supporting or evidencing the Claimed Loss, including, without limitation: loss estimates from other insurers, any adjuster's reports, engineering reports, contractor's reports or estimates; photographs, claim log notes, and any other documents relating to repair work performed, planned, in progress, or completed as a result of Hurricane Ian, including contracts, bids, estimates, invoices, or work tickets; videos; or any other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss;

2. all documents reflecting any payments received to date from any Insurer, or from any federal, state, or local government program including, without limitation, the United States

9

       Small Business Administration;

3. all proofs of loss for the Claimed Loss;

4. all documents relied upon by Insured in generating any proof of loss for the Claimed Loss;

5. all written communications exchanged between the Insured and Insurer about the Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim;

6. all photographs and videos of the Property taken to document the condition of the Property, including photographs and videos of the Loss;

7. all written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event;

8. the insurance policy regarding any Other Insurance, and any claim numbers for claims made to recover Loss to the Property relating to the Event;

9. all appraisals or surveys of the Property condition within five years before, or any time after, the Event;

10. if there has been an appraisal under the Policy, documents relating to the appraisal process;

11. to the extent in Insured's custody, control, or possession, the entire nonprivileged file of any expert, estimator, or contractor hired by the Insured or counsel to inspect the property and/or render a report, estimate, or opinion;

12. **for NFIP claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed;

13. **for NFIP claims**, documents relating to an administrative appeal under 44 C.F.R. § 62.20; and

      14.    all other document(s) on which the Insured relies in support of the Claimed Loss.

## V. Insurer's Automatic Discovery

A. Timing: The Insurer's Automatic Discovery responses must be provided within **45 days** after a Response to the Complaint has been filed.

B. Insurer must provide the following information about the Property and the Claimed Loss:

    1. **If there is a dispute over coverage**, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including, without limitation:

        a.    any exclusions or exceptions, or other coverage or legal defenses;

        b.    the factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

        c.    whether there is also a dispute over the value or amount of the Claimed Loss;

        d.    whether nonpayment of premiums resulted in the denial of coverage;

        e.    whether the dispute and/or declination concerns the nature of the damage incurred and its coverage under the Policy;

        f.    whether the dispute and/or declination concerns the value of the Claimed Losses; and

        g.    whether the dispute and/or declination concerns any other legal basis.

    2. **If there is a dispute over all or part of the valuation**, an explanation of the Insurer's basis for disputing the value

or amount of the Claimed Loss, including:

a. the Insurer's understanding of the nature of the dispute;

b. the amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes relate to this dispute;

c. the amount the Insurer agrees to pay, if any, regarding any undisputed part of the Claimed Loss;

d. whether any post-loss conditions remain to be satisfied;

e. if an examination under oath is needed, a proposal for when and where the examination will occur;

f. any Policy terms or conditions that the Insurer alleges the Insured violated, including conditions precedent or other terms;

g. any payments previously made under the Policy relating to the Event;

h. a general description of any other basis for nonpayment of the Claimed Loss;

i. the identity of the adjuster(s) who handled the Claim;

j. the identity of the individual(s) who recommended, made, approved, or rejected the claim decision;

k. the identity of the estimators, inspectors, contractors, engineers, or other persons who participated in the claims process or on whom the insurer relied in making its claim decision;

l. if preexisting damage is at issue, a general description of any prior claims in the past ten years for the

        Property;

    m.    if payment on the Policy has been made and/or offered, Insurer's position about the remaining amount of loss disputed; and

    n.    a statement setting forth prior attempts at arbitration or mediation, if any.

C.    Insurer must provide these documents about the Property and the Claimed Loss:

    1.    the complete Policy in effect at the time of the Event;

    2.    all non-privileged documents in the claims file about the Policy, including any declination letters and notices of nonpayment of premiums;

    3.    all documentation relating to an assessment of the Claimed Loss, including all loss reports and damage assessments, adjuster's reports, engineering reports, contractor's reports, expert reports, photographs taken of the damage or claimed losses, and any other evaluations of the Claim;

    4.    all photographs and videos of the Property taken to document the condition of the Property, including photographs and videos of the Claimed Loss;

    5.    any other evaluations of the Claimed Loss;

    6.    all documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event;

    7.    any claim log, journal, or diary maintained by the Insurer relating to the Claimed Loss;

    8.    the complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage;

    9.    if there has been an appraisal under the Policy, documents

        relating to the appraisal process;

10. all claim log notes;

11. all expert reports and/or written communications that contain any description or analysis of the scope of loss or any defenses under the Policy;

12. all emails within the claim file or specific to that Claim;

13. to the extent in Insurer's custody, control, or possession, the entire nonprivileged file of any expert, estimator, or contractor hired by the insurer or its counsel to inspect the Property and/or render a report, estimate, or opinion;

14. **for NFIP Write Your Own Claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed;

15. **for NFIP Direct Claims**, written communications exchanged between the Insured and FEMA claims-handling personnel referring to the Insured's claimed loss, property, or damages, or otherwise relating to the Insured's claim;

16. **for all NFIP Claims**, documents relating to an administrative appeal under 44 C.F.R. § 62.20; and

17. any other document(s) on which the Insurer relies to supports its defenses.

## VI. Statements of Contentions

Not later than **75 days** after a Response to the Complaint has been filed, the parties must exchange statements of contentions that specifically address, without limitation, each party's legal, factual, and/or monetary contentions regarding the litigation. These Statements of Contentions are not to be filed with the court.

## VII. Additional Written Discovery

In addition to the Automatic Discovery, the parties may conduct the

following discovery after exchange of the Statement of Contentions. All such additional discovery must be served no later than **90 days** after a Response to the Complaint has been filed.

    A.    Interrogatories: Each party may serve one set of no more than ten interrogatories under Rule 33.

    B.    Requests for Production: Each party may serve one set of no more than ten requests for production under Rule 34.

    C.    Requests for Admissions: Each party may serve no more than 20 requests for admissions under Rule 36.

## VIII. Depositions of Fact Witnesses

    A.    In addition to the Automatic Discovery, each party may take no more than three fact-witness depositions under Rules 30 and 31 without leave of court. Such depositions must be noticed within **120 days** after a Response to the Complaint has been filed and must conclude no later than **150 days** after a Response to the Complaint has been filed.

    B.    The parties must work cooperatively and in a conscientious fashion to promptly schedule any requested depositions. They need not take place in any particular sequence.

## IX. Expert Witnesses and Other Opinion Testimony

    A.    All expert reports and expert disclosures under Rule 26(a)(2) on behalf of either the Insured or the Insurer must be served no later than **180 days** after a Response to the Complaint has been filed and must be accompanied by the curriculum vitae for every 26(a)(2) witness.

    B.    Within **180 days** after a Response to the Complaint has been filed, the parties shall also exchange written statements identifying all opinion testimony that the parties anticipate presenting at trial under Federal Rule of Evidence 701.

## X. Mediation

This action is **REFERRED** to mediation. The mediation must be conducted as provided in this order.

A. *Mediation Deadline*: The parties must complete their mediation conference no later than **210 days** after a Response to the Complaint has been filed. Without leave of court, no party may unilaterally cancel or reschedule a mediation conference. Motions to extend the mediation deadline are strongly disfavored and will be granted only in extraordinary circumstances. Unless otherwise agreed, the parties must bear the mediation expenses equally and pay immediately after the mediation.

B. *General Rules on Mediation*: (1) within **45 days** after a Response to the Complaint is filed, the parties must file a Notice of Selection of Mediator identifying a court-certified mediator or justifying the use of a non-certified mediator; (2) lead counsel must confirm a date and location for an in-person mediation conference; (3) at least **14 days** before the mediation conference, the parties must file a Notice of Mediation; (4) lead counsel, the parties (or a party's surrogate satisfactory to the mediator), and any necessary insurance carrier representative(s) must attend mediation; (5) any unexcused absence or departure from mediation is sanctionable; (6) the substance of the mediation is confidential and no party, lawyer, or other participant is bound by, may record, or may disclose any event, including any statement confirming or denying a fact – except settlement – that occurs during the mediation.

C. *Global Mediation*: For actions in which plaintiff did not file all claims pertaining to the same property or insured (including, without limitation, wind, flood, fire, or any combination thereof) in the same suit, state or federal, the Court encourages the parties to engage in a global mediation of all claims at the mediation conference.

Within **7 days** after concluding the mediation conference, counsel shall jointly file a Report Regarding Settlement notifying the court whether:

A. the parties settled;

B. the parties wish to defer an initial case management conference for **30 additional days** to complete settlement discussions;

C. a party requests a settlement conference before a United States Magistrate Judge who, upon the consent of the parties, will have the authority to approve the settlement or otherwise terminate this action; or

D. the parties have exhausted all settlement efforts.

## XI. Initial Case Management Conference

If the parties impasse at mediation, an initial case management conference will be held approximately **240 days** after a Response to the Complaint has been filed. The parties must appear in-person before the assigned Magistrate Judge on a date that the court will set.

In anticipation of the initial case management conference, the parties must Meet and Confer and then submit a joint status report to the court **7 days** before the scheduled conference. The joint status report must address, without limitation: (1) the discovery completed to date; (2) any additional and/or outstanding discovery; (3) the timeline for completing any additional and/or contemplated discovery; (4) a statement of the disputed factual and/or legal contentions and the remaining amount in controversy; (5) any other Hurricane Ian related lawsuits filed or contemplated about the Property or the Insured (including, without limitation, claims related to wind damage, flood damage, fire damage, or any combination thereof); and (6) a statement setting forth the status of settlement discussions (including the propriety of mediation, arbitration, and/or a settlement conference).

At the conference with the court, all parties not appearing pro se must be represented by counsel familiar with the file and have full authority to bind their clients in all pretrial matters. Counsel shall also be prepared to discuss settlement.

The court will issue a scheduling order after the initial case management conference, which will address, without limitation, deadlines for any remaining discovery or dispositive motions and dates for the final pretrial conference and trial term.

## XII. Dispositive Motions

Filing any dispositive motion(s) does not toll any deadline and does not serve as a basis for a request to extend or stay any deadline.

## XIII. Notice and Opportunity to Inspect

Before the demolition of any existing real property during the litigation, Insured must provide to Insurer sufficient written notice of Insured's intent to destruct, remediate, and/or demolish any relevant evidence. Insurer shall then be afforded a full and fair opportunity to inspect and memorialize by photograph or otherwise the relevant evidence for a period not to exceed 60 days.

## XIV. Consolidation with other Hurricane Ian cases

All claims pertaining to the same property or insured (including, without limitation, wind, flood, fire, or any combination thereof) may be reassigned to the same District Judge and Magistrate Judge and consolidated for discovery purposes. For actions in which plaintiff did not file all claims pertaining to the same property or insured (including, without limitation, wind, flood, fire, or any combination thereof) in the same suit, plaintiff must advise the Magistrate Judge of all such cases as soon as practicable, but no more than **30 days** after a Response to the Complaint has been filed. Thereafter, any Judicial Officer may reassign related cases and consolidate actions for discovery purposes under Local Rule 1.07.

## XV. Critical Date Table

The following table summarizes the critical dates in this order. All deadlines run from the filing of a Response to the Complaint.

| Event | Deadline |
|---|---|
| Joint Certification of Familiarity with Local Rules and Orders Entered to Date | 14 days |
| Meet and Confer about Document Production Methods | 14 days |
| Motion for Appraisal | 21 days |
| Plaintiff's Notice of Related Cases | 30 days |

| | |
|---|---|
| Parties Exchange Automatic Discovery | 45 days |
| Joint Notice of Selection of Mediator | 45 days |
| Motions to Add or Join Parties or Amend Pleadings | 60 days |
| Statements of Contentions | 75 days |
| Serve any Additional Written Discovery | 90 days |
| Notice any Fact-Witness Depositions | 120 days |
| Complete Depositions of any Fact Witnesses | 150 days |
| Motions to Compel Discovery | 150 days |
| Exchange all Rule 26(a)(2) Disclosures | 180 days |
| Complete Mediation Conference<br>    Notice of mediation at least 14 days before<br>    Report of mediation no later than 7 days after | 210 days |
| Rule 16 Conference<br>    Status report at least 7 days before | ~240 days |

Motions to extend the above deadlines are **strongly disfavored.**

**ORDERED** in Fort Myers, Florida this September 18, 2023.

_Kyle C. Dudek_
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

19